UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CITY OF SEATTLE, a municipal corporation located in the County of King, State of Washington,

Plaintiff,

v.

MONSANTO COMPANY, *et al*.,

Defendants.

Case No. C16-107RSL

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

This matter comes before the Court on defendants' motion to dismiss. Dkt. # 34. Plaintiff, the City of Seattle ("Seattle"), alleges that defendant Monsanto Company ("Monsanto") contaminated city water with toxic chemicals and argues that Monsanto – along with its successor corporations, also named as defendants – should bear the cost of cleaning up that contamination. Defendants move to dismiss, contending that Seattle's claims are procedurally and substantively deficient. Having reviewed the materials submitted by the parties,[1] and having heard oral argument on the motion, the Court finds as follows.

[1] Defendants ask the Court to consider a number of documents outside the pleadings on the grounds that they are incorporated by reference in the complaint, or that, as matters of public record, they are appropriate for judicial notice under Federal Rule of Evidence 201. See Dkt. # 35 & Ex. 1–23. Seattle does not oppose defendants' request, though it asks the Court not to take notice of "conclusions in them that are subject to reasonable dispute." Dkt. # 42 at 2. Because the contents of Exhibits 10, 11,

**BACKGROUND**

Polychlorinated biphenyls ("PCBs") are synthetic chemical compounds that were used in the production of a wide variety of industrial and commercial products – ranging from capacitors to paint to potato chip fryers – until January 1979, when Congress banned their manufacture and use through the Toxic Substances Control Act. Dkt. # 31, ¶¶ 1, 3, 4, 76–77. By that time, PCBs were known to be toxic to humans and animals and known to contaminate the environment by readily leaching into surrounding materials, as well as air, soil, and water. Dkt. # 31, ¶¶ 3, 4, 41, 61–67, 72–75.

Since then, evidence of PCBs' toxicity has only increased: PCBs appear to affect the immune system, the nervous system, the reproductive system, and the endocrine system; most recently, research has linked PCBs to human cancer. Dkt. # 31, ¶¶ 42–53. Humans are exposed to PCBs by eating, breathing, or touching contaminated matter. Dkt. # 31, ¶ 43. Children are particularly vulnerable to the toxic effects of PCBs. Dkt. # 31, ¶ 52.

From 1935 to 1979, Monsanto[2] was the sole manufacturer of PCBs in the United States. Dkt. # 31, ¶¶ 3, 29, 38. Monsanto trademarked its PCBs as "Aroclor," Dkt. # 31, ¶¶ 3, 38, and promoted them for use in a wide range of industrial and household goods, including electrical

---

21, 22, and 23 were alleged in Seattle's complaint and no party questions their authenticity, the Court find that those documents are incorporated by reference and includes them in its consideration of this motion to dismiss. See Knieval v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). Because the other Exhibits are all public government documents and the parties do not contest their authenticity, the Court takes judicial notice of them pursuant to Federal Rule of Evidence 201. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (permitting courts ruling on motions to dismiss to consider materials of which they have taken judicial notice).

[2] The original Monsanto Company operated within three main industries: agricultural products, chemical products, and pharmaceuticals. In the late 1990s, Monsanto Company spun off into three separate corporations, each responsible for a different industry: Monsanto Company retained the agricultural products business; Solutia, Inc. assumed the chemical products business; and Pharmacia Corporation assumed the pharmaceutical business. Each assumed certain assets and liabilities from the original Monsanto Company, and all are defendants in this case. Dkt. # 31, ¶¶ 26–33. In this order, the Court refers to all three defendants as "Monsanto."

equipment, paint, sealants, food cookers, furnaces, floor wax, insecticides, lubricants, moisture-proof coatings, papers, asphalt, leather adhesive, and stucco. Dkt. # 31, ¶¶ 39, 76–78. Though Monsanto was aware of PCBs' toxicity and propensity to leach, it denied or misrepresented those facts to government investigators. Dkt. # 31, ¶¶ 80–83. Monsanto continued to manufacture, promote, and profit from its PCBs. Dkt. # 31, ¶¶ 54–72, 76–78.

Today, PCBs contaminate streets, drainage systems, and waterways within Seattle. Dkt. # 31, ¶¶ 5–14. In particular, PCBs have been detected in the drainage systems connected to the East and Lower Duwamish Waterways; due to their contamination, those waterways are listed on the U.S. Environmental Protection Agency's ("EPA") National Priorities List as Superfund Sites. Dkt. # 31, ¶¶ 10–14. Since the late 1990s, the EPA, the Washington Department of Ecology, King County, private entities, and Seattle itself have conducted a number of investigations to determine the extent of the contamination. In December 2000, several of these entities voluntarily entered into an Administrative Order on Consent requiring investigation and development of remedial alternatives. Dkt. # 35-2, Ex. 11 at 4. To date, Seattle has already dredged 10,000 cubic yards of PCB-contaminated sediment from the Lower Duwamish Waterway, and additional clean-up and remedial construction is underway. Dkt. # 35-2, Ex. 11 at 5.

In March 2013, pursuant to a consent decree with the EPA and the Washington Department of Ecology, Seattle agreed to construct an improved storm- and wastewater treatment facility to reduce sewer overflows into its waterways. Dkt. # 31, ¶ 9; Dkt. # 35-8, Ex. 21 at 4. This consent decree aims to reduce contamination from a number of pollutants, including PCBs. Dkt. # 35-8, Ex. 20, ¶ 49; Dkt. # 35-8, Ex. 21 at 19.

In November 2014, the EPA issued a Record of Decision selecting a remedy for the Lower Duwamish Waterway Superfund Site; that remedy will require Seattle to take further steps to reduce contamination in the waterway. Dkt. # 31, ¶¶ 10–11; Dkt. # 35-2, Ex. 11.

Seattle filed this lawsuit in January 2016. Dkt. # 1. The city claims that Monsanto's production and promotion of a chemical that it knew to be toxic and that now contaminates Seattle's drainage systems and waterways renders Monsanto liable under the tort theories of public nuisance, defective design, failure to warn, negligence, and equitable indemnity. Monsanto moves to dismiss all claims on the grounds that they are preempted by Washington's Product Liability Act, time-barred, and insufficiently pled. Dkt. # 34.

**DISCUSSION**

Federal pleading rules require a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement serves to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (internal marks and citation omitted). Although the complaint's factual allegations need not be detailed, they must sufficiently state a "plausible" ground for relief. Id. at 544. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plausibility standard is met when a complaint alleges "more than a sheer possibility that a defendant has acted unlawfully." Id. "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Taylor v. Yee, 780 F.3d 928, 935 (9th Cir. 2015).

When deciding a Rule 12(b)(6) motion to dismiss, the Court may not consider any materials other than the pleadings, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). All well-pleaded allegations of material fact are accepted as true and construed in the light most favorable to the non-moving party. Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).

**I. Preemption**

Monsanto argues that all of Seattle's claims are preempted by Washington's Product Liability Act, RCW 7.72, *et seq*. ("WPLA"). The WPLA "creates a single cause of action for product-related harms that supplants previously existing common law remedies." Wash. Water Power Co. v. Graybar Elec. Co., 112 Wn.2d 847, 860 (1989). The WPLA's statutory cause of action preempts all product-related common-law claims based on any substantive legal theory except fraud, intentionally caused harm, or claims under Washington's Consumer Protection Act. RCW 7.72.010(4). The WPLA does not, however, preempt common-law claims that arose before the WPLA's effective date of July 26, 1981. Macias v. Saberhagen Holdings, Inc., 175 Wn.2d 402, 408 (2012) (citing RCW 4.22.920(1)). As explained below, none of Seattle's claims are preempted.

Seattle's claims for public nuisance and equitable indemnity are not preempted because they are not common-law product liability claims. Seattle's public nuisance claim is grounded on statutory causes of action, see RCW 7.48.010, -.130, not common law, so it is not preempted by the WPLA. See Graybar, 112 Wn.2d at 853. Seattle's indemnity claim is a common-law claim predicated on Monsanto's equitable duty to Seattle, see Fortune View Condo. Ass'n v. Fortune Star Dev. Co., 151 Wn.2d 534, 539 (2004); Seattle grounds this duty in Monsanto's liability for Seattle's other claims, see Dkt. # 31, ¶¶ 138–42. Though this piggybacking arguably converts Seattle's equitable indemnity claim into a "product-related" claim, it just as arguably saves the indemnity claim from preemption by virtue of the nuisance claim's statutory basis. Viewing the allegations in the complaint in the light most favorable to Seattle, the Court concludes that Seattle's equitable indemnity claim is not preempted.

Seattle's claims for product liability and negligence, however, are common-law claims based on allegations of "product-related harms" – here, harm to Seattle caused by Monsanto's chemical products. See Dkt. # 31, ¶¶ 113–17 (defective design), 121–28 (failure to warn),

132–36 (negligence). Accordingly, those claims appear to fall within the WPLA's definition of "product liability claim[s]," RCW 7.72.010(4), which are preempted, Graybar, 112 Wn.2d at 860.

Seattle argues that its product liability claims are exempted from the WPLA's preemptive scope because they are based on allegations of intentional conduct. RCW 7.72.010(4) (carving out exception for claims based on a substantive legal theory of "intentionally caused harm"). It is true that the WPLA does not preempt claims based on allegations of intentional conduct. Bylsma v. Burger King Corp., 176 Wn.2d 555, 560 (2013) (acknowledging that the WPLA "does not preempt claims based on intentional conduct"); see also Louisiana-Pacific Corp. v. ASARCO Inc., 24 F.3d 1565, 1584 (9th Cir. 1994) (same). Seattle's first amended complaint plausibly alleges that Monsanto knew that its chemical products were toxic, yet chose not to modify its toxic chemical products, or to warn of their toxicity, in order to maximize its profits. Dkt. # 31, ¶¶ 54–83. Such a conscious decision constitutes intentional wrongdoing. See Bradley v. Am. Smelting & Refining Co., 104 Wn.2d 677, 682–83 (1985) (holding that an "intentional" tort encompasses "an act that the actor undertakes realizing that there is a high probability of injury to others and yet the actor behaves with disregard of those likely consequences"); cf. Birklid v. Boeing Co., 127 Wn.2d 853, 865 (1995) (holding that employer who knowingly exposed workers to toxic chemical fumes had "deliberate intention" to harm employees where employer had "actual knowledge that an injury was certain to occur and willfully disregarded that knowledge").

But Seattle seeks relief for this conduct through product liability causes of action for "defective design" and "failure to warn," Dkt. # 31 at 23–25, common-law claims which sound in either strict liability or negligence, see Novak v. Piggly Wiggly Puget Sound Co., 22 Wn. App. 407, 410–12 (1979). Both claims are now clearly contemplated by the WPLA's "liability of manufacturer" cause of action. RCW 7.72.030(1) ("A product manufacturer is subject to

liability . . . if . . . the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided."). Accordingly, Seattle's product liability claims fall within the WPLA's preemptive scope.[3]

Nonetheless, those product liability claims – along with Seattle's claim for negligence – are preempted by the WPLA only to the extent they arose on or after July 26, 1981. See Macias, 175 Wn.2d at 408–09; Graybar, 112 Wn.2d at 853 (quoting RCW 7.72.010(4)). A claim arises before July 26, 1981 if "substantially all" of the events that caused the harm underlying the claim occurred before that date. Macias, 175 Wn.2d at 409. Seattle's claims are grounded on Monsanto's manufacturing and marketing of the toxic chemical, Dkt. # 31, ¶¶ 132–34, 142, which ceased in 1979 when the federal Toxic Substances Control Act was enacted, Dkt. # 31, ¶¶ 3, 29, 38. Thus, substantially all of the events that caused the harm underlying Seattle's claims occurred before the WPLA was enacted, and the WPLA does not preempt those claims.

**II. Timeliness**

Monsanto next argues that all of Seattle's claims are barred by the applicable statutes of limitations. For the reasons that follow, the Court does not agree.

All but one of Seattle's claims are subject to a three-year limitation period, see RCW 4.16.080(2), -(3); Seattle's nuisance claim has a limitations period of two years, see RCW 4.16.130. The limitations period on each claim began to run when Seattle discovered (or had reason to discover) its injury. See Giraud v. Quincy Farm & Chemical, 102 Wn. App. 443, 449 (2000). Seattle filed this lawsuit on January 25, 2016; accordingly, to meet the statute of limitations, Seattle must not have had reason to discover its injuries before January 25, 2013 (for products liability, negligence, and equitable indemnity) or January 25, 2014 (for nuisance).

Seattle's claims for public nuisance, product liability, and negligence are all grounded on the financial loss that Seattle has suffered (and continues to suffer) due to the costs of

---

[3] If it chooses, Seattle may move to amend its complaint to add claims for intentional torts.

investigating and cleaning up PCB contamination in its waterways. Dkt. # 31, ¶¶ 104–06, 118, 128, 137. As early as December 2000, Seattle voluntarily entered into an Administrative Order on Consent requiring it to investigate the nature and extent of contamination in the Waterway. Dkt. # 35, Ex. 10. Thus, Seattle had reason to discover its injuries due to toxic contamination – including injuries due to the cost of investigating and remedying that contamination – over fifteen years before filing this suit.

To overcome this bar, Seattle argues that its claims are not subject to the applicable limitations periods because Washington law exempts local governments from such limitations when they bring suit for the benefit of the state. RCW 4.16.160; Wash. Pub. Power Supply System v. General Electric Co., 113 Wn.2d 288, 293 (1989). Municipal actions are brought for the benefit of the state when those actions "arise out of the exercise of powers traceable to the sovereign powers of the state which have been delegated to the municipality." Wash. Pub. Power Supply System, 113 Wn.2d at 293. When a municipality "assists in the government of the state as an agent of the state to promote the public welfare generally," that municipality acts in a sovereign capacity. But when a municipality "regulates and administers the local and internal affairs of the territory which is incorporated, for the special benefit and advantage of the urban community embraced within the boundaries of the municipal corporation, it acts in a proprietary capacity." City of Moses Lake v. United States, 430 F. Supp. 2d 1164, 1171–72 (E.D. Wash. 2006). Operating a city drainage system,[4] contracting for the production of electricity,[5] and declaring a public health emergency due to contaminated drinking water[6] have

[4] City of Algona v. City of Pacific, 35 Wn. App. 517, 520 (1983).

[5] Wash. Pub. Power Supply System, 113 Wn.2d at 301.

[6] City of Moses Lake, 430 F. Supp. 2d. at 1177–78.

all been found to constitute proprietary municipal actions; administering a public school system,[7] leasing property for logyards,[8] and maintaining facilities for public recreation[9] have been held to be sovereign municipal actions.

In this action to restore the purity of its waterways, Seattle acts in its sovereign capacity. Seattle is authorized by statute to prevent "the defilement or pollution of all streams running through or into its corporate limits," as well as to "declare what shall be a nuisance, and to abate the same." RCW 35.22.280(29), -(30). This authority derives from the state's duty to hold all navigable waters within the state in trust for the public. See City of New Whatcom v. Fairhaven Land Co., 24 Wash. 493, 499, 503–04 (1901) (describing the common-law origins of the public trust doctrine). Accordingly, while these powers could be seen as authority to administer the internal affairs of the incorporated territory "for the special benefit and advantage of the urban community" within, City of Moses Lake, 430 F. Supp. 2d at 1171–72, the Court concludes that Seattle's efforts to rid its waterways of pollution is an act "for the common good," Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Const. Co., 165 Wn.2d 679, 687 (2009). Like the maintenance of public recreational facilities, maintenance of public waterways fulfills the city's delegated responsibility to act as steward of the land and waters within its boundaries for the benefit of the public at large, without regard to whether the beneficiaries are city residents. In suing to restore its waters, Seattle acts "for the public good, and not for private corporate advantage," Russell v. City of Tacoma, 8 Wash. 156, 159 (1894). Thus, Seattle's claims for nuisance, product liability, and negligence are not barred

---

[7] Bellevue Sch. Dist. No. 405 v. Brazier Const. Co., 103 Wn.2d 111, 116 (1984), superseded by statute as stated in Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Const. Co., 176 Wn.2d 502, 513 (2013).

[8] Louisiana-Pacific Corp., 24 F.3d at 1582.

[9] Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Const. Co., 165 Wn.2d 679, 690 (2009).

by the applicable two- or three-year limitations periods.[10]

Seattle's claim for equitable indemnity, however, does not promote the public welfare: it asks Monsanto to indemnify Seattle as a corporate entity. Accordingly, that claim is brought "for private corporate advantage" and is subject to the three-year statute of limitations. RCW 4.16.080(3). This indemnity claim is grounded on injuries flowing from Seattle's obligations under a consent decree with state and federal agencies. Dkt. # 31, ¶¶ 22, 140–41. Seattle entered into this consent decree in March 2013. Dkt. # 35-8 at 55. Thus, Seattle's claim was brought within the three-year limitations period and is not time-barred.

## III. Failure to State a Claim

Concluding that Seattle's claims are neither preempted nor time-barred, the Court turns to the question whether those claims have been sufficiently pled.

### A. Public Nuisance

Seattle alleges that Monsanto created a public nuisance by manufacturing, marketing, and distributing toxic chemicals that have contaminated the Duwamish River, as well as Seattle's streets and drainage lines. RCW 7.48.010 defines an "actionable nuisance" as anything "injurious to health" that "obstruct[s] the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property." An act that "obstructs or tends to obstruct" or "render[s] dangerous for passage, any lake or navigable river, bay, stream, canal or basin," is a nuisance. RCW 7.48.120. RCW 7.48.130 further defines a "public nuisance" as "one which affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal." RCW 7.48.140(2) specifically declares that it is a public nuisance to "in any manner . . . corrupt or render unwholesome or impure the water of any such spring, stream, pond, lake, or well, to the injury or prejudice of others." Seattle has sufficiently alleged

---

[10] Because the Court resolves the limitations issue on these grounds, it need not reach Seattle's argument that its nuisance, products liability, and negligence claims result from a "continuing tort" that tolls the claims' respective limitations periods.

that Monsanto produced and marketed certain toxic chemicals that now contaminate Seattle's streets, drainage systems, and the East and Lower Duwamish Waterways.

Monsanto does not dispute that it produced toxic chemicals or that those chemicals are present in Seattle water. Rather, Monsanto argues that Seattle lacks standing to bring a public nuisance claim, and moreover that it has failed to allege facts demonstrating proximate causation.

Contrary to Monsanto's assertions, Seattle does not need to own the contaminated water to bring a public nuisance claim. Seattle is injured when it suffers financial loss due to toxic contamination – contamination that it has a municipal interest in eradicating, see RCW 35.22.280(29), -(30) (vesting municipalities with authority to prevent "the defilement or pollution of all streams running through or into its corporate limits," and to "declare what shall be a nuisance, and to abate the same"). At the very least, this injury vests Seattle with Article III standing. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016).

A more difficult question is whether Seattle can bring a civil action for damages under either RCW 7.48.020 or RCW 7.48.210. RCW 7.48.020 provides that a civil action for damages may be brought "by any person whose property is, or whose patrons or employees are, injuriously affected or whose personal enjoyment is lessened by the nuisance." Additionally, RCW 7.48.210 provides that "[a] private person may maintain a civil action for public nuisance, if it is specially injurious to himself or herself but not otherwise." Monsanto argues that Seattle cannot assert a property interest in the East and Lower Duwamish Waterways and accordingly cannot seek damages for their contamination. But Washington courts have long recognized that owners of property *abutting* public land have a "special interest" in the public land that entitles them to maintain an action to remove a public nuisance on that public land. D'Ambrosia v. Acme Packing & Provision Co., 179 Wash. 405, 408 (1934); Reed v. Seattle, 124 Wash. 185, 188–89 (1923) (collecting cases); Brazell v. City of Seattle, 55 Wash. 180, 187–88 (1909) ("The

appellants, as owners of lots abutting on the portion of East Aloha street partially vacated and narrowed, suffered special injury and damages, different in kind and not simply in degree from that suffered by the community in general . . . ."). As the owner of property abutting the East and Lower Duwamish Waterways – not to mention as the operator of municipal wastewater and stormwater systems that facilitate the migration of PCBs into the river, see City of Spokane v. Monsanto Co., No. C15-201SMJ, 2016 WL 6275164, at *7 (E.D. Wash. Oct. 26, 2016) – Seattle has suffered injury to its property giving rise to an action under RCW 7.48.020, and a "special injury" giving rise to an action under RCW 7.48.210.

The Court further concludes that Seattle has successfully alleged facts showing proximate causation. In Washington, proximate causation has two elements: cause-in-fact and legal causation. Lowman v. Wilbur, 178 Wn.2d 165, 169 (2013). Cause-in-fact "refers to the 'but for' consequences of an act – the physical connection between an act and an injury." Wuthrich v. King County, 185 Wn.2d 19, 28 (2016). Legal causation depends on "policy determinations as to how far the consequences of a defendant's acts should extend." Id. (quoting Lowman, 178 Wn.2d at 169).

In this case, Seattle alleges that Monsanto was the sole producer of PCBs within the United States until production was outlawed in 1979. Dkt. # 31, ¶¶ 3, 29, 38–39. Seattle further alleges that Monsanto promoted the use of PCBs in a wide range of industrial and consumer products, and that PCBs were "ubiquitous" in the United States. Dkt. # 31, ¶¶ 74, 76–79. Finally, Seattle alleges that PCBs are the "most widespread contaminant" in the Duwamish River, at levels posing risks to health and safety, Dkt. # 31, ¶¶ 86–90, and that Seattle has spent (and continues to spend) money to investigate and eradicate that contamination, Dkt. # 31, ¶ 106. These allegations plausibly suggest that Monsanto's PCBs are the same PCBs that Seattle is paying to clean up – a "physical connection" demonstrating that Monsanto's production of PCBs is the cause-in-fact of Seattle's financial loss. Wuthrich, 185 Wn.2d at 28.

Evaluating the "mixed considerations of logic, common sense, justice, policy, and precedent," Lowman, 178 Wn.2d at 169, the Court finds that Seattle has successfully pled legal causation, as well. Legal causation is closely related to duty; both turn on the question of how far the legal consequences of the defendant's conduct should extend. Id. Seattle has alleged that Monsanto knew that its chemicals were dangerous, and that as early as 1969 Monsanto knew that "[t]hrough abrasion and leaching . . . nearly all [PCBs used in highway paint] wind[] up in the environment." Dkt. # 31, ¶ 66. Harm to the environment from the continued production, marketing, and routine use of PCBs was thus foreseeable to Monsanto, giving rise to a duty to avoid that harm. See McKown v. Simon Property Group, Inc., 182 Wn.2d 752, 762–63 (2015). Financial loss from efforts to combat that environmental damage was equally foreseeable. See Riblet v. Spokane-Portland Cement Co., 45 Wn.2d 346, 348–49, 352–53 (1954) (approving award of personal damages to compensate for cost of cleaning up fallen cement dust, citing "the idea that the law . . . will not require the occupant of premises to abandon them to avoid consequences to his person"). Seattle has sufficiently alleged facts suggesting that when PCBs foreseeably leached into Seattle's waterways *through the routine use of PCB products*, leading Seattle to pay for their removal, Monsanto's production of those PCBs was the legal cause.

Monsanto urges the Court to find that other PCB producers caused the contamination of Seattle's water, and/or that the intervening acts of third parties – namely, improper disposal of PCB products – cut off proximate causation. The Court is not persuaded. Monsanto does not argue that it is responsible for *none* of the PCBs in Seattle's water; the existence of other PCB sources merely creates a question of fact regarding the amount of damages for which Monsanto is responsible. And while the acts of third parties might have aggravated the contamination, Monsanto does not dispute Seattle's allegation that, as early as the 1960s, Monsanto was on notice that its PCBs were "uncontrollable pollutant[s]" that endangered the environment as a result of their *normal and intended* uses. Dkt. # 31, ¶¶ 63–79. Moreover, Seattle has alleged

facts suggesting that improper disposal of PCBs was foreseeable to (and even recommended by) Monsanto. Dkt. # 31, ¶ 72. Only unforeseeable intervening acts break the chain of causation. Washburn v. City of Federal Way, 178 Wn.2d 732, 761 (2013). The Court concludes that Seattle has successfully pled proximate causation.

Monsanto's motion to dismiss Seattle's claim for public nuisance is denied.

**B. Product Liability - Defective Design and Failure to Warn**

Seattle claims that Monsanto's production and promotion of toxic chemicals renders it liable for defective design and failure to warn. To succeed on defective design, Seattle must show that: (1) a defect existed in the product when it left Monsanto's hands; (2) the defect was unknown to the consumer or user; (3) the defect rendered the product's intended use unreasonably dangerous; and (4) the defect proximately caused Seattle's injury. Novak v. Piggly Wiggly Puget Sound Co., 22 Wn. App. 407, 410 (1979); Lunsford v. Saberhagen Holdings, Inc., 125 Wn. App. 784, 788–89 (2005). For failure to warn, Seattle must show that a product without a manufacturing defect is nonetheless unreasonably dangerous in the hands of the user absent adequate warnings. Novak, 22 Wn. App. at 412. These are both strict liability causes of action. Ulmer v. Ford Motor Co., 75 Wn.2d 522, 531–32 (1969).

Monsanto argues – and the Court agrees – that Seattle lacks standing to bring these product liability claims. Only a "user" or "consumer" of the allegedly defective product (or a member of that consumer's household) has standing to claim defective design or failure to warn. Lundsford, 125 Wn. App. at 788, 793. Seattle does not allege that it "used" or "consumed" Monsanto's toxic products, and the Court is not persuaded by Seattle's argument that, as a municipality, it is as foreseeable a "bystander" as a member of a consumer's household. Particularly as a federal court applying state law, the Court declines to impose strict liability so liberally. See Lunsford, 125 Wn. App. at 789–93 (reviewing dispute over merits of extending standing to allow household members to assert strict products liability).

Monsanto's motion to dismiss Seattle's claims for defective design and failure to warn is granted.

**C. Negligence**

Seattle further claims that Monsanto breached a duty to Seattle when it continued to manufacture and promote chemicals that it knew to be toxic, and that this breach caused Seattle's financial loss. See Keller v. City of Spokane, 146 Wn.2d 237, 242 (2002) ("The elements of negligence are duty, breach, causation, and injury."). Monsanto argues that Seattle has failed to allege facts showing that Monsanto owed any duty to Seattle. As discussed above, see supra Part III.A, the Court finds that Seattle has alleged facts plausibly suggesting that Monsanto owed Seattle a duty to avert foreseeable financial loss due to environmental damage caused by Monsanto's chemicals. See Keller, 146 Wn.2d at 243 (holding that duty is owed to "anyone foreseeably harmed by the defendant's conduct regardless of that person's own fault"); see also McKown, 182 Wn.2d at 763 (stating that foreseeable risk gives rise to a duty); Lowman, 178 Wn.2d at 169 (stating that duty, like legal causation, turns on the question of how far the legal consequences of the defendant's conduct should extend).

Monsanto's motion to dismiss Seattle's negligence claim is denied.

**D. Equitable Indemnity**

Finally, Seattle seeks equitable indemnity for the cost of complying with its 2013 consent decree with state and federal agencies. A cause of action for equitable indemnity "arises when one party incurs a liability the other should discharge by virtue of the nature of the relationship between the two parties." Fortune View Condo. Ass'n, 151 Wn.2d at 539 (quoting Cent. Wash. Refrigeration, Inc. v. Barbee, 133 Wn.2d 509, 513 (1997). As summarized above, see supra Part I, Seattle grounds Monsanto's responsibility for discharging Seattle's liability on Monsanto's liability for the other claims lodged in this action. Monsanto argues that this equitable cause of action was abolished by tort reform in 1981, see RCW 4.22.040(3) ("The common law right of

indemnity between active and passive tort feasors is abolished.”), and that in any event Seattle and Monsanto do not have the sort of relationship that might give rise to indemnity.

The Court concludes that Seattle has failed to allege facts supporting its claim for indemnity. Even assuming that the cause of action remains available to Seattle in light of RCW 4.22.040(3), Seattle has not alleged facts suggesting that Monsanto is responsible for *all* of the contamination that Seattle is obligated to remedy under its various agreements with regulatory authorities. Monsanto may very well be responsible for some of the contamination – and Seattle may seek damages from Monsanto for its efforts to combat *that* contamination – but Monsanto’s contribution to the contamination cannot give rise to a claim for full indemnity. See Stevens v. Security Pac. Mortgage Corp., 53 Wn. App. 507, 517 (1989) (“Indemnity requires full reimbursement and transfers liability from the one who has been compelled to pay damages to another who should bear the *entire loss*.” (emphasis added)).

Monsanto’s motion to dismiss Seattle’s equitable indemnity claim is granted.

**CONCLUSION**

For the foregoing reasons, defendants’ motion to dismiss plaintiff’s first amended complaint, Dkt. # 34, is GRANTED in part and DENIED in part. Seattle’s claims for defective design, failure to warn, and equitable indemnity are hereby DISMISSED.

DATED this 22nd day of February, 2017.

Robert S. Lasnik
United States District Judge