UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CITY OF SEATTLE,

              Plaintiff,

      v.

MONSANTO COMPANY, et al.,

              Defendants.

Case No. 2:16-CV-107-RSL

ORDER ON CITY OF SEATTLE'S MOTION TO DISMISS DEFENDANTS' COUNTER-CLAIMS AND STRIKE CERTAIN DEFENSES

This matter comes before the Court on plaintiff City of Seattle's "Motion to Dismiss Defendants' Counterclaims and to Strike Certain Defenses." Dkt. #95.[1]

## INTRODUCTION

### A. Background

This case concerns the presence of polychlorinated biphenyls ("PCBs") in water bodies in and around the City of Seattle ("Seattle"). PCBs are man-made environmental contaminants that cause harm to humans, wildlife and the environment. Dkt. #31 (Compl.) at ¶¶ 42–53. They are used in many industrial and commercial applications, including paint, transformers, sealants and inks. Id. at 4. On January 1, 1979, Congress enacted the Toxic Substances Control Act, which banned the manufacture and most uses of PCBs. Id.

---

[1] This matter can be decided on the excellent briefing filed by both parties. The City of Seattle's request for oral argument is accordingly denied. See Dkt. #95.

PCBs have contaminated Seattle's drainage systems, stormwater and water bodies. Compl. at ¶¶ 5, 7. The Duwamish River comprises the final 12 miles of Washington State's Green River, which runs through Seattle. Id. at ¶ 4; Dkt. #91 (Countercl.) at ¶ 33. Harbor Island is located at the mouth of the Duwamish, bounded on one side by the East Waterway and on the other side by the West Waterway. Beginning at the upstream end of Harbor Island and continuing for about six miles upstream is a section of the river known as the Lower Duwamish,[2] also designated as the Lower Duwamish Waterway Superfund Site ("LDW Site"). Id. at ¶ 6; Countercl. at ¶ 33. The East Waterway and the West Waterway empty into Elliott Bay, a bay of Puget Sound. Countercl. at ¶ 33. The Lower Duwamish and the East Waterway are listed on the Washington State Water Quality Assessment list of impaired water bodies, in accordance with the Clean Water Act ("CWA"). Id. at ¶ 86; see 33 U.S.C. § 1313(d)(1). They are also listed on the National Priorities List as Superfund sites. Id. at ¶¶ 10, 14; see 65 Fed. Reg. 75179, 75182 (Dec. 1, 2000).

Seattle, King County, the Port of Seattle and the Boeing Company entered into an Administrative Order on Consent ("AOC") under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") with the EPA and the Washington Department of Ecology ("Ecology") in December 2000. Countercl. at ¶ 40. The AOC parties formed the Lower Duwamish Waterway Group ("LDWG") and completed a Remedial Investigation in 2010 and a Feasibility Study in 2012 (collectively, "RI/FS"). Id. at ¶¶ 41–42. In November 2014, the EPA issued its Record of Decision ("ROD") for the LDW Site. Its planned cleanup includes dredging, capping, and enhanced natural recovery. Id. at ¶ 43; see Ex. 6; Dkt. #76-6. [3]

---

[2] Monsanto refers to the Lower Duwamish and the East Waterway collectively as the "Duwamish River." Countercl. at ¶ 33.

[3] The Court considers Monsanto's Exhibits to its Counterclaims on Seattle's motion to dismiss the Counterclaims. See Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y, 153 F. Supp. 3d 1291, 1319 (W.D. Wash. 2015) (citing Aagard v. Palomar Builders, Inc., 344 F. Supp. 2d 1211, 1214 (E.D. Cal. 2004)).

Seattle has three types of drainage systems: a municipal separated stormwater system ("MS4"), a partially separated system, and a combined sewer system that collects stormwater and sewage. Compl. at ¶ 18. Heavy rains cause the combined system to overflow through Combined Sewer Overflows ("CSOs"). Id. Seattle's MS4 system is subject to a Phase I Municipal Stormwater Permit ("MS4 Permit") issued by Ecology. Id. at ¶ 19; Countercl. at ¶ 81; see Ex. 17, Dkt. #76-19. Seattle's other systems are subject to a Waste Discharge Permit ("Waste Discharge Permit") WA0031682. Id. at ¶¶ 19–20; Countercl. at ¶ 64; see Ex. 8, Dkt. #76-10. Seattle also has a Construction Stormwater General Permit ("Construction Permit") for the stormwater discharges associated with construction activity. Countercl. at ¶ 182; see Ex. 49, Dkt. #76-51.

On April 16, 2013, the United States and the State of Washington jointly sued Seattle for violations of the CWA, see 33 U.S.C. § 1319(b), (d) and the Washington Water Pollution Control Act, see RCW §§ 90.48.037, 90.48.144 for the discharge of pollutants of raw sewage. Id. at ¶ 65; Ex. 11, Dkt. #76-13 at 2, 10-12. The suit was resolved by a consent decree ("Consent Decree") that requires Seattle to reduce its CSOs. Id. at ¶ 66; see Dkt. #100-1.[4] Seattle was also required to pay a civil penalty of $350,000. Id.; see Ex. 10, Dkt. #76-12 at 3.

---

[4] The Court takes judicial notice of Exhibits 1 and 2 to Monsanto's request for judicial notice in support of its opposition to Seattle's motion to dismiss. See Dkt. #100; see Lapidus v. Hecht, 232 F.3d 679, 682 (9th Cir. 2000) (The Court can consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.") (internal citation omitted); see Fed. R. Evid. 201(b). Part of the Consent Decree was annexed as an exhibit to Monsanto's counterclaims. Ex. 3; Dkt. #76-5. The Court also granted Seattle's request for judicial notice of the same Consent Decree. See Dkt. #115; see Ex. B, Dkt. #94-1.

Monsanto[5] was a manufacturer of PCBs in the United States until the 1970's.[6] From 1946 to 1986, Monsanto owned and operated a plant that manufactured adhesives and vanillin on a site adjacent to the Lower Duwamish. Ex. A, Dkt. #94-1 at 4–5.[7] On March 25, 2008, the EPA issued a Notice of Potential Liability Pursuant to Section 107(a) and a Request for Information Pursuant to Section 104(e) of CERCLA, for the LDW Site ("EPA Notice"). See id.

**B.  Procedural History**

On January 25, 2016, the City of Seattle ("Seattle") filed a complaint against Monsanto. Dkt. #1. A First Amended Complaint ("FAC") was filed on May 4, 2016. Dkt. #31. Seattle alleged that Monsanto, as the sole manufacturer of PCBs in the United States between 1935 and 1979, was responsible for the presence of these contaminants in the city waters. Id. at ¶ 3. It brought five claims against Monsanto: public nuisance, defective design, failure to warn, negligence, and equitable indemnity. Id. at ¶¶ 91–142. Monsanto filed a motion to dismiss on May 18, 2016. Dkt. #34. The Court granted it in part, dismissing Seattle's claims for defective design, failure to warn and equitable indemnity. Dkt. #60. Monsanto filed an answer to the FAC and counterclaims against Seattle on March 24, 2017. Dkt. #63.

On April 28, 2017, Seattle filed a "Motion to Dismiss Counterclaims and Strike Certain Defenses and Allegations." Dkt. #66. Monsanto filed a "Motion For Leave to Amend Answer and Counterclaims" on May 22, 2017. Dkt. #76. This was granted on September 6, 2017. Dkts.

---

[5] The original Monsanto Company ("Old Monsanto") operated an agricultural products business, a pharmaceutical and nutrition business, and a chemical products business. Through a series of transactions beginning in approximately 1997, Old Monsanto's business was spun off into three separate corporations. Monsanto operates the agricultural products business. Pharmacia operates the pharmaceutical business. Solutia operates the chemical products business. Compl. at ¶¶ 30-34. The Court refers to the three defendants/counterclaimants collectively as "Monsanto" in this order.

[6] Seattle alleges that Monsanto was the sole manufacturer of PCBs in the United States between 1935 and 1979. Compl. at ¶ 3. Monsanto admits that it began manufacturing PCVs in 1935, but states that it ceased all manufacturing of PCBs in 1977. Dkt. #91 (Answer) at ¶ 29.

[7] The Court granted Seattle's request for judicial notice of eight documents, Exs. A–I. See Dkt. #115.

#90, #91. Seattle filed a "Motion to Dismiss Defendants' Counterclaims and to Strike Certain

Defenses," Dkt. #92, along with a motion requesting judicial notice of certain documents. Dkt.

#94. Seattle then filed a "Praecipe to Substitute Corrected City of Seattle's Motion to Dismiss

Defendants' Counterclaims and to Strike Certain Defenses," Dkt. #95, including a corrected

version of the motion. Dkt. #95-1. Monsanto filed a response on October 30, 2017, Dkt. #99,

along with a request for judicial notice of certain documents. Dkt. #100. It also filed an

"Objection to Plaintiff's Request for Judicial Notice in Support of Motion to Dismiss

Counterclaims." Dkt. #101. On November 13, 2017, Seattle filed a "Reply in Support of the

Court Taking Judicial Notice of Exhibits C, D and E," Dkt. #102, and a reply in support of its

motion to dismiss. Dkt. #103.

## C. Monsanto's Counterclaims and Affirmative Defenses

Monsanto brings six counterclaims and asserts ninety affirmative defenses. Seattle's

motion to strike is directed at fifteen of them. Defenses 69–72, 74–79, 80–81 and 86 pertain to

provisions of CERCLA and the parallel state statute, the Model Toxics Control Act ("MTCA").

Dkt. #31 (Answer) at ¶¶ 69–72, 74–79, 80–81, 86; see RCW 70.105D.010 et seq. Defense 53

asserts that punitive damages are not available. Id. at ¶ 53. Defense 62 asserts that Seattle's

contingency fee arrangement with its outside counsel violates Washington state law. Id. at ¶62.

The counterclaims are based upon Seattle's discharge of pollutants into the Duwamish

River, the East Waterway, the West Waterway, Elliott Bay, Puget Sound and Lake Washington

("Affected Water Bodies"). Countercl. at ¶¶ 19–20.[8] First, Monsanto brings a CERCLA claim

for the recovery of necessary response costs and damages that it has incurred and will incur in

investigating, removing, and/or remediating the hazardous substances released by Seattle. Id. at

¶¶ 160–162; see 42 U.S.C. § 9607(a). Second, it brings a claim for declaratory relief under

CERCLA and the Declaratory Judgment Act. Id. at ¶¶ 164–165, 179; see 42 U.S.C. §

9613(g)(2); see 28 U.S.C. § 2201. Monsanto argues that it is entitled to a declaration that Seattle

---

[8] Paragraph numbering for the counterclaims continues from the preliminary statement.

is jointly and severally liable to Monsanto for future response costs and damages incurred by it in connection with the Lower Duwamish and the East Waterway. Third, Monsanto brings a claim alleging that Seattle has violated the MS4 Permit, Waste Discharge Permit and Construction Permit (collectively, "the National Pollutant Discharge Elimination System (NPDES) Permits"), as well as provisions of the CWA, resulting in contingent liability and past and future injury to Monsanto. It contends that its costs and contingent liabilities would be reduced or would stop increasing if Seattle fully complied with the CWA. Id. at ¶¶ 189, 196, 204–208.

Fourth, Monsanto brings a negligence claim, alleging a breach of the duties owed by Seattle to Monsanto. Id. at 211–221. Fifth, Monsanto brings an unjust enrichment claim, arguing that any costs incurred by Monsanto as part of a judgment rendered by the Court would confer a benefit upon Seattle that would be unjust and inequitable for it to retain. Id. at ¶¶ 227–230. Finally, Monsanto brings a contribution claim. It argues that the expenses it has incurred and will incur to address the contamination in the Affected Water Bodies are the result of Seattle's conduct and that it is entitled to contribution from Seattle for these expenses. See RCW 4.22.040. Seattle moves to dismiss all six counterclaims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[9]

[9] The City's motion includes a challenge to Monsanto's Third Counterclaim asserting that Monsanto lacks standing to bring a claim under the CWA. Lack of constitutional standing requires dismissal for lack of subject-matter jurisdiction, which is properly challenged under Federal Rule of Civil Procedure 12(b)(1), whereas lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6). Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011). For Monsanto's CWA claim, the statutory and constitutional inquiries are the same, because "[t]he CWA's citizen suit provision extends standing to the outer boundaries set by the 'case or controversy' requirement of Article III of the Constitution . . . [and] the statutory and constitutional standing issues therefore merge." Ecological Rights Found. v. Pac. Lumber Co., 230 F.3d 1141, 1147 (9th Cir. 2000).

# **DISCUSSION**

## A. Legal Standard

To survive a motion to dismiss, Monsanto's counterclaims "must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility if the party pleads factual content that "allows the Court to draw the reasonable inference that [the opposing party] is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). It must contain "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 545.

The Court must accept all material allegations in the counterclaims as true and construe them in the light most favorable to Monsanto. Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 889–90 (9th Cir. 1986) (citing North Star International v. Arizona Corporation Commission, 720 F.2d 578, 580 (9th Cir. 1983)). However, the "tenet that a court must accept as true all of the allegations contained in a [claim] is inapplicable to legal conclusions." Ashcroft, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

## B. Clean Water Act Counterclaims

### 1. Article III Standing

That a claimant must have standing to sue stems from the requirement in "Article III, § 2, of the Constitution, [that] the federal courts have jurisdiction over [a] dispute … only if it is a 'case' or 'controversy.'" Raines v. Byrd, 521 U.S. 811, 818 (1997). The elements for Article III standing are: (1) an injury in fact, (2) caused by the alleged wrongful conduct (3) that is likely to be redressed by a favorable decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (internal citations omitted). The party invoking federal jurisdiction bears the burden of establishing these elements. Id. (citing FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990), holding modified by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C., 541 U.S. 774

(2004)). Seattle argues that Monsanto lacks standing for its CWA counterclaims because it has impermissibly lumped them together and fails to demonstrate causation and redressability.

i. Standing for Each Counterclaim

First, Seattle argues that Monsanto has lumped together approximately 31 CWA claims. Dkt. #95-1 at 14–15. Its counterclaims pertain to three different NPDES permits, see Countercl. at ¶¶ 182, 188–202, and six different water bodies. See Countercl. at ¶¶ 184–189, 197, 201, 212–221, 229, 233. "A plaintiff must demonstrate standing for each claim that he or she seeks to press and for each form of relief sought." Ctr. For Biological Diversity v. U.S. E.P.A., 90 F. Supp. 3d 1177, 1186 (W.D. Wash. 2015) (citing DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006)). Seattle argues that Monsanto has failed to do so.

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting Defs. of Wildlife, 504 U.S. at 561) (internal quotation marks omitted). Monsanto's counterclaims address several activities by Seattle, including the operation of its sewage and stormwater conveyance systems and resultant CSO discharges into the Affected Water Bodies, its treatment of sewage, wastewater and stormwater at the West Point Treatment Plant ("West Point"), the operation of its separate sewer systems and resultant Separate Sewer Overflows ("SSOs"), construction and demolition activities, and the use of certain products containing PCBs. Countercl. at ¶ 22; see Dkt. #103 at 9. However, it would be unreasonable to require Monsanto to establish standing for each claimed discharge into each Affected Water Body at this stage. Sierra Club v. BNSF Ry. Co., No. C13-0967-JCC, 2014 WL 12029092, at *5 (W.D. Wash. Mar. 12, 2014). Monsanto has alleged multiple violations of the CWA, but it ultimately asserts "one central claim": that Seattle is responsible for the discharge of various pollutants into the Affected Water Bodies through its conveyance systems and other sources. Id. While not ideal, at the pleading stage, these generalized allegations suffice. Defs. of Wildlife, 504 U.S. at 561.

ii.  Injury-In-Fact

An injury-in-fact is an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Id. at 560. A claimant must allege an injury that is 'distinct and palpable,' as opposed to merely 'abstract.'" Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) (internal citations omitted).

Monsanto alleges that it has suffered injuries in the form of contingent liabilities, response costs and defense costs. Countercl. at ¶¶ 23, 139, 204. It argues that the contingent liability arises from lawsuits, including this one and an action instituted by the State of Washington, see State of Washington v. Monsanto Company et al., No. 2:17-cv-53 (W.D. Wash.),[10] as well as potential future federal, state, or local regulatory actions. Id. at ¶¶ 139–140; see Clinton v. City of New York, 524 U.S. 417, 430–31 (1998); San Diego Unified Port Dist. v. Monsanto Co., 309 F. Supp. 3d 854, 866 (S.D. Cal. 2018) ("The Supreme Court has held that a contingent liability is sufficient to confer Article III standing where it presents a 'significant immediate injury.'") (quoting Clinton, 524 U.S. at 430–31). The response costs arise in connection with CERCLA cleanup processes at the Lower Duwamish, the East Waterway, and neighboring uplands outside the scope of the EPA's ROD and AOC. Id. at ¶¶ 46–52, 141–143. Monsanto contends that these response costs are consistent with the National Contingency Plan ("NCP"), meet CERCLA's goals for cost-effective remedial action, and are not costs of litigation. Id. at ¶ 53; see Maya, 658 F.3d at 1069 (finding that the allegation that "plaintiffs spent money that, absent defendants' actions, they would not have spent … [was] a quintessential injury-in-fact."). Finally, Monsanto alleges that it has incurred defense costs in defending this lawsuit. Id. at ¶ 147. The lawsuit would not have been brought but for Seattle's discharge of contaminants into the Affected Water Bodies. Id. Alternatively, Seattle's activities

---

[10] This case has since been remanded to state court. See id. at Dkt. #36; see State of Washington v. Monsanto Company et al., No. 17-35641 (9th Cir. Sept. 21, 2018) (memorandum affirming district court's order remanding case).

have increased Monsanto's potential liability in this case and the State of Washington's lawsuit even if it would have been brought independent of the City's own conduct. Id. at ¶¶ 147-49.

While Seattle's motion to dismiss focuses on causation and redressability, it briefly argues that potential future regulatory action is speculative and cannot support Article III standing. Dkt. #95-1 at 15–16. The City points out that in San Luis & Delta-Mendota Water Auth. v. Haugrud, the Ninth Circuit found that an "allegation that third-party agencies [would] eventually impose more regulations on [a party] [was] speculative at best." 848 F.3d 1216, 1233 (9th Cir. 2017), as corrected (Mar. 23, 2017). The only evidence offered in that case was a declaration regarding past regulations, which the Court found "insufficient to show a 'credible threat' that third-party agencies [would] increase regulations … at some point in the future." Id. (quoting Hall v. Norton, 266 F.3d 969, 977 (9th Cir. 2001)). Similarly, Monsanto relies only on this lawsuit to argue that the City will be subjected to "more stringent future regulation" for its discharges that it may in turn seek to recover from Monsanto. Dkt. #99 at 19 n.8. That is not sufficient to show standing. An alleged harm must be actual or imminent, not conjectural or hypothetical. Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) (citing Los Angeles v. Lyons, 461 U.S. 95, 101–102 (1983)).

Seattle also argues that Monsanto's alleged response costs pertain only to the Lower Duwamish. Dkt. #95-1 at 15. Most of them do. However, Monsanto does contend that it incurred costs in connection with "neighboring uplands properties (outside of the EPA in-water sediment cleanup area in the LDW Site), including but not limited to the CERCLA cleanup process associated with the LDW Site and uplands source control." Countercl. at ¶ 46.[11] This

---

[11] In its response to the motion to dismiss, Monsanto also points to paragraphs 20, 23, 107, and 204–207 of its counterclaims. Dkt. #99 at 17 n.4. Paragraph 20 is irrelevant. Paragraph 23 pertains to contingent liabilities, not response costs. Paragraph 107 only accuses Seattle of "contribut[ing] to the alleged impairment of beneficial uses in the Affected Water Bodies." It does not mention costs incurred by Monsanto. The allegations in paragraphs 204–207 are either too vague or pertain to contingent liabilities.

included costs incurred from the "analysis of City drainage basins located outside of the RI/FS study area and AOC scope." Id. This is sufficient. See Twombly, 550 U.S. at 556.

### iii. Causation

To show causation, an injury-in-fact must be "fairly traceable" to the alleged wrongful conduct and "not the result of the independent action of some third party not before the court." Defs. of Wildlife, 504 U.S. at 560 (quoting Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 41 (1976)) (alterations omitted).

Seattle argues that Monsanto's injuries[12] are the result of actions taken by the EPA and the State of Washington. The EPA determined that Monsanto was a Potentially Responsible Party ("PRP") under CERCLA and demanded information on the manufacturing plant that Monsanto used to own. The State of Washington chose to sue Monsanto. These were actions independent of Seattle's alleged CWA violations. Dkt. #95-1 at 19–20. Monsanto need not show that Seattle's conduct is "the very last step in the chain of causation." Ass'n of Pub. Agency Customers v. Bonneville Power Admin., 733 F.3d 939, 953 (9th Cir. 2013) (quoting Bennett v. Spear, 520 U.S. 154, 169 (1997)). But it must show that there are no *independent* actions of third parties that break the causal link between … the allegedly unlawful act … and … the economic harm." Id. Put another way, it must "establish a 'line of causation' between [Seattle's] action and [its] alleged harm that is more than 'attenuated.'" Maya, 658 F.3d at 1070 (quoting Allen v. Wright, 468 U.S. 737, 759 (1984), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014)). "A causal chain does not fail simply

---

[12] The statute of limitations for citizen enforcement actions under the CWA is five years. Sierra Club v. Chevron U.S.A., Inc., 834 F.2d 1517, 1522 (9th Cir. 1987); see 28 U.S.C. § 2462. The counterclaims were filed on September 6, 2017. Monsanto clarifies that it does not seek relief for discharges that occurred on or before the Consent Decree. Id. at ¶ 208; see Ex. 1, Dkt. #100-1. The EPA Notice was issued on March 25, 2008. Ex. A, Dkt. 94-1 at 2. Seattle therefore argues that Monsanto's injuries are not "fairly traceable" to Seattle's conduct, because Monsanto began incurring them many years before the conduct complained of occurred. Dkt. #95-1 at 17. However, while that may be true of certain of Monsanto's injuries, it is not necessarily true of all of them. Dkt. #99 at 43–44; see Countercl. at ¶¶ 20, 46–47, 140–142, 219–220 (alleging that the discharges and incurred injuries are continuing).

because it has several 'links,' provided those links are 'not hypothetical or tenuous' and remain 'plausible.'" Id. (quoting Nat'l Audubon Soc., Inc. v. Davis, 307 F.3d 835, 849 (9th Cir. 2002)) (alterations omitted).

Monsanto argues that Seattle's activities resulted in the discharge of pollutants into the Affected Water Bodies, which in turn caused the EPA to issue its Notice and the State of Washington to sue Monsanto on the basis of that contamination. In this way, Seattle's CWA violations are the cause of Monsanto's increasing costs and contingent liabilities at the LDW Site and in the State of Washington litigation. See Dkt. #99 at 22. The Court accepts as true Monsanto's allegation that not all its response costs were incurred in researching and responding to the EPA Notice. Id. at 20; see 42 U.S.C. § 9601 (defining response costs); see Wickland Oil Terminals, 792 F.2d at 889–90. With regard to those that were, however, as well as Monsanto's alleged defense costs and contingent liabilities, it is speculative to hold that Seattle's compliance with the CWA would have prevented the EPA from issuing its Notice or the State of Washington[13] from suing Monsanto.[14] See Countercl. at ¶¶ 206–07; see Allen, 468 U.S. at 758. Monsanto's alleged causal connection depends on independent decisions made by the EPA and the State of Washington in response to Seattle's activities, and those decisions are "sufficiently uncertain to break the chain of causation between the … injury and the challenged … action." Allen, 468 U.S. at 759 (citing Simon, 426 U.S. at 40–46). Nor does Monsanto succeed in showing that Seattle itself would not have sued Monsanto but for its own conduct and activities. Dkt. #95-1 at 18–19. The lawsuit is based on actions that Monsanto committed long before Seattle's alleged CWA violations from 2012 to 2017. See for e.g. Compl. at ¶¶ 55–60; see Sierra

---

[13] The Court also notes that the scope of the State of Washington's suit is far broader. It has sued Monsanto for PCB contamination in "waterways, waterbodies, sediment, fish, and other land, water, and wildlife throughout the state of Washington." State of Washington, No. 2:17-cv-53 at Dkt. #1-1 at ¶ 5. The complaint also lists 117 contaminated water bodies. Id. at ¶ 6. It is, as Seattle argues, "implausible that recent CWA violations by the City caused the State to sue Monsanto." Dkt. #95-1 at 19.

[14] This is especially true given that Monsanto argues in its response that, "[h]ad the City fully complied with the CWA, [Monsanto]'s injuries would be *significantly less*." Dkt. #99 at 22 (emphasis added). Monsanto does not argue that it would not have incurred any costs at all.

<u>Club</u>, 834 F.2d at 1522 (holding that the statute of limitations for citizen enforcement actions under the CWA is five years). Monsanto fails to show that the costs incurred in response to the EPA Notice, defense costs, and contingent liabilities are "fairly traceable" to Seattle's CWA violations. <u>Defs. of Wildlife</u>, 504 U.S. at 560 (1992).

iv. <u>Redressability</u>

The redressability component requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Id.</u> at 561 (quoting <u>Simon</u>, 426 U.S. at 41) (internal quotation marks omitted). Monsanto seeks an injunction enjoining Seattle from violating the CWA and the NPDES Permits and requiring Seattle to remediate its discharges of pollutants. Countercl. at 86. On this prong, all the CWA counterclaims fail.

The only relief available in a CWA citizen suit is the enforcement of a standard, limitation or order, or the application of civil penalties paid to the Treasury of the United States. 33 U.S.C. § 1365(a). Monsanto argues that an injunction prohibiting future CWA violations would halt further costs and potential liability for Monsanto. Dkt. #99 at 22; <u>see</u> Countercl. at ¶¶ 206–07. An injunction compelling Seattle to comply with the CWA and remediate its discharges[15] would also result in updates to the City's systems and management practices that would mitigate all of Monsanto's liability in this case. <u>Id.</u> Finally, civil penalties "encourage defendants to discontinue current violations and deter them from committing future ones, [thus]

---

[15] Seattle argues that remediation is not an available remedy for this CWA citizen suit. Dkt. #95-1 at 20–22; <u>see</u> Countercl. at 86. However, this Court has previously upheld a plaintiff's request for injunctive relief in the form of restoration or remediation "in light of clear Ninth Circuit authority that permits district courts to fashion limited equitable relief in enforcing standards, limitations, or orders that have been violated." <u>Sierra Club v. BNSF Ry. Co.</u>, No. C13-0967-JCC, 2014 WL 12029092, at *8 (W.D. Wash. Mar. 12, 2014) (quoting 33 U.S.C. § 1365(a)). "[A] court's 'authority to 'enforce' an existing requirement is more than the authority to declare that the requirement exists and repeat that it must be followed.' Rather, 'so long as the district court's equitable measures are reasonably calculated to remedy an established wrong, [they] are permissible.'" <u>Id.</u> (quoting <u>Nat. Res. Def. Council</u>, 236 F.3d at 1000). The Court declines to strike this portion of Monsanto's prayer for relief. <u>See also</u> <u>Douglas Ridge Rifle Club v. St. Paul Fire & Marine Ins. Co.</u>, No. CV 08-29-AC, 2010 WL 98942, at *5 (D. Or. Jan. 8, 2010).

afford[ing] redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing unlawful conduct." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 186 (2000).

First, Monsanto's past costs cannot be redressed by this relief as any civil penalties would go to the United States Treasury. 33 U.S.C. § 1365(a); see Friends of the Earth, Inc., 528 U.S. at 175. Monsanto does not appear to argue otherwise. Dkt. #99 at 22–23. Second, it is very unlikely that the imposition of an injunction or civil penalties upon Seattle will redress Monsanto's future defense costs and contingent liabilities, because it will not have any bearing on Seattle's prosecution of this lawsuit, or the State of Washington's prosecution of its lawsuit. Defs. of Wildlife, 504 U.S. at 560 (1992). Third, Monsanto's future response costs, in so far as they are incurred as a consequence of Seattle's activities, can be recovered through cost recovery or contribution under CERCLA. See 42 U.S.C. §§ 9607, 9613(f). Indeed, Monsanto's First Counterclaim seeks precisely that. Countercl. at ¶¶ 150–62.

The Court concludes that Monsanto lacks standing for its CWA claims. The Court therefore need not address the remainder of Seattle's arguments on the merits regarding the Consent Decree, West Point, and Monsanto's Notice of Intent to Sue. See Dkt. #95-1 at 21–28.

## C. CERCLA Counterclaims

Monsanto argues that it is entitled to recover costs from Seattle under CERCLA. Countercl. at ¶¶ 150–162; see 432 U.S.C. § 9607(a). It also seeks a declaration from the Court that Seattle is jointly and severally liable to Monsanto for future response costs and damages incurred in connection with the Lower Duwamish and the East Waterway. Id. at ¶¶163–179; see 42 U.S.C. § 9613(g)(2); see 28 U.S.C. §§ 2201–02.

### 1. Necessity of the CERCLA Response Costs

To prevail in a private cost recovery action under CERCLA, "a plaintiff must establish that (1) the site on which the hazardous substances are contained is a 'facility' under CERCLA's definition of that term, … (2) a 'release' or 'threatened release' of any 'hazardous substance'

ORDER ON PLAINTIFF'S MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS AND STRIKE CERTAIN DEFENSES - 14

from the facility has occurred, … (3) such 'release' or 'threatened release' has caused the plaintiff to incur response costs that were 'necessary' and 'consistent with the national contingency plan,' … and (4) the defendant is within one of four classes of persons subject to the liability provisions …" 3550 Stevens Creek Assocs. v. Barclays Bank of California, 915 F.2d 1355, 1358 (9th Cir. 1990) (citing Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1152 (9th Cir. 1989)). Monsanto has alleged that Seattle is a liable and responsible party because it is an "owner" and/or "operator" of a "facility" from which there have been "releases" and threatened "releases" of "hazardous substances" into the Lower Duwamish, the East Waterway, conveyance systems, and neighboring upland properties. Countercl. at ¶ 158; see 42 U.S.C. §§ 9601, 9607(a). Seattle argues that Monsanto's response costs are not "necessary" or consistent with the NCP. See 42 U.S.C. § 9607(a) (providing for the recovery of "any … necessary costs of response incurred by [a person other than the United States Government, a State, or an Indian tribe] consistent with the [NCP].").

Monsanto has alleged that it has incurred recoverable response costs. Countercl. at ¶¶ 46–53; see Wickland Oil Terminals, 792 F.2d at 892 ("[The defendant] argues that [the plaintiff]'s action … is not ripe since [the plaintiff] has alleged only investigatory costs and has not alleged incurrence of actual, on-site cleanup costs. The distinction that [the defendant] attempts to manufacture between investigatory costs and on-site cleanup costs is immaterial under section 107(a) [of CERCLA]."). "The touchstone for determining the necessity of response costs is whether there is an actual threat to human health or the environment; that necessity is not obviated when a party also has a business reason for the cleanup." Carson Harbor Vill., Ltd. v. Unocal Corp., 270 F.3d 863, 867 (9th Cir. 2001). Response costs are "necessary" when there is a threat to human health or the environment and the response action is addressed to that threat. Id. at 872. Accepting Monsanto's allegations as true, see Twombly, 550 U.S. at 556, Seattle's activities have generated such a threat and Monsanto has attempted to address it through its investigations and analyses. Countercl. at ¶¶ 46, 52–53, 141-43; see Dkt. #99 at 31–33.

1    Seattle also argues that Monsanto's costs were not "necessary" because the EPA and

2   Ecology have been engaged in cleaning up the LDW Site since 2000. Dkt. #95-1 at 30–31; see

3   Countercl. at ¶ 38. The EPA issued its ROD for the LDW Site in November 2014. Id. at ¶ 43;

4   see Ex. 6; Dkt. #76-6. The costs Monsanto has incurred in its attempt to do better than the EPA

5   are therefore not recoverable. Dkt. #95-1 at 31. Seattle cites two cases for that proposition. Dkt.

6   #95-1 at 31–32. In United States v. Hardage, the Tenth Circuit affirmed the district court's

7   holding that a party's costs were not recoverable. 982 F.2d 1436, 1447 (10th Cir. 1992).

8   However, this was because the costs were litigation-related, and therefore were not "necessary."

9   Id. It was also on a motion for summary judgment. Id. at 1439. In United States v. Iron

10  Mountain Mines, Inc., the district court did hold that in general "'investigative costs incurred by

11  a private party after the EPA has initiated a remedial investigation, unless authorized by the

12  EPA' are not considered necessary because they are 'duplicative' of the work performed by

13  EPA." 987 F. Supp. 1263, 1272 (E.D. Cal. 1997) (quoting Louisiana-Pac. Corp. v. Beazer

14  Materials & Servs., Inc., 811 F. Supp. 1421, 1425 (E.D. Cal. 1993)). However, this too was on a

15  motion for summary judgment. Id. The district court found that the private party had only

16  introduced one letter in evidence to show that its monitoring and investigation were not

17  duplicative of the EPA's efforts. Id.; see United States v. Newmont USA Ltd., 504 F. Supp. 2d

18  1077, 1085 (E.D. Wash. 2007) ("The evidence is not sufficient to remove all genuine issues of

19  material fact as to 1) whether the particular response costs specifically objected to by the

20  Defendants can legitimately be characterized as duplicative and unnecessary, and 2) if so,

21  whether the EPA has articulated a satisfactory explanation for the action taken. Such questions

22  are an appropriate matter for the fact-finder to determine at trial.").

23      Monsanto's motive in incurring the costs is not relevant at this stage, either. See Dkt.

24  #95-1 at 32–34. Certainly, its attorney's fees in defending this or any other action are not

25  recoverable under CERCLA. Key Tronic Corp. v. United States, 511 U.S. 809, 819 (1994).

26  Monsanto does not appear to argue otherwise. Dkt. #99 at 36. However, not all payments that

27  happen to be made to a lawyer are unrecoverable. Key Tronic Corp, 511 U.S. at 820. "The issue

28

is not why the [party] decided to undertake the cleanup, but whether it was necessary." <u>Carson Harbor Vill., Ltd. v. Unocal Corp.</u>, 270 F.3d 863, 872 (9th Cir. 2001) (citing <u>Cadillac Fairview/Cal., Inc. v. Dow Chem. Co.</u>, 840 F.2d 691, 695 (9th Cir. 1988)). "To hold otherwise would result in a disincentive for cleanup. Indeed, the cleanup may be motivated by many factors, such as fear of a government enforcement action, landowner liability, and even self-serving economic reasons." <u>Id.</u> Whether the timing of the costs indicates that they were incurred only to defend Monsanto "against a potential EPA order and claims by other PRPs" is not a question that can be resolved at this stage. <u>See</u> <u>Hardage</u>, 982 F.2d at 1439, 1447.[16] "The question whether a response action is necessary and consistent with the criteria set forth in the contingency plan is a factual one to be determined at the damages stage of a section 107(a) [CERCLA] action." <u>Cadillac Fairview</u>, 840 at 695. Monsanto has made out a plausible CERCLA claim.

    2. <u>CERCLA Bar under Section 122(e)(6)</u>

"When either the President, or a potentially responsible party pursuant to an administrative order or consent decree …, has initiated a remedial investigation and feasibility study for a particular facility …, no [PRP] may undertake any remedial action at the facility

---

[16] The District Court of New Mexico dismissed claims for the recovery of costs for failure to state a claim in <u>Atl. Richfield Co. v. United States</u>, 181 F. Supp. 3d 898 (D.N.M. 2016). However, the district court in <u>Atl. Richfield</u> found that the private party failed to explain how or why the specific costs alleged in its complaint were necessary for the remediation of the cleanup site. It held that "it [was] simply not plausible to infer that the costs [the party] [sought] to recover [contributed or were] likely to contribute to containment or cleanup efforts." <u>Id.</u> at 916. It therefore concluded that the party's efforts primarily served its own interests in protecting itself from liability and that its costs were not recoverable under CERCLA. <u>Id.</u> at 918 (citation omitted). Monsanto, however, has specifically laid out how its costs are likely to contribute to the cleanup of the Affected Water Bodies. <u>See</u> Countercl. at ¶¶ 46–53. Similarly, the District Court for the Eastern District of Washington dismissed Monsanto's counterclaim for CERCLA costs against the City of Spokane because it found that "Monsanto [had] given no indication that it ha[d] undertaken [its] investigative activities for any purpose other than evaluating its liability and defending against legal claims." <u>City of Spokane v. Monsanto Company et al.</u>, No. 2:15-cv-00201-SMJ (E.D. Wash. Jul. 10, 2017) (order granting plaintiff's motion to dismiss amended counterclaims), Dkt. #87-1 at 11. That is not the case here.

unless such remedial action has been authorized by the President." 42 U.S.C. § 9622. Seattle argues that this provision bars Monsanto from recovering its costs.

Seattle, King County, the Port of Seattle and the Boeing Company entered into an AOC with the EPA and Ecology in December 2000. Countercl. at ¶ 40. They completed a Remedial Investigation in 2010 and a Feasibility Study in 2012. Id. at ¶¶ 41–42. In response to Seattle's Requests for Admission, Monsanto admitted that all the response costs that it seeks to recover were incurred after December 20, 2000; i.e., after the EPA began the process. See Ex. I, Dkt. #94-1 at 153. "The EPA's authority under Section 104 to allow a PRP to undertake remedial action pursuant to a settlement agreement dovetails under Section 122(e)(6) with the PRP's ability to recover costs under Section 107. … If, notwithstanding EPA involvement at the site, a PRP undertakes a remedial action, its action will be deemed inconsistent with the NCP." Allied Corp. v. Acme Solvents Reclaiming, Inc., 691 F. Supp. 1100, 1109 (N.D. Ill. 1988).

In its ROD, the EPA defined the LDW as follows:

> The LDW Site, located south of downtown Seattle, Washington, extends over the northern 5 miles of the Duwamish River to the southern tip of Harbor Island … and includes upland sources of contamination as well as the waterway.

Ex. A, Dkt. #76-6 at 18. Monsanto argues that the Section 122(e)(6) bar covers only remedial actions performed within the geographical scope of the EPA-authorized RI/FS. Dkt. #99 at 42. However, certain of its costs were incurred in relation to areas outside of the LDW Site, including upland areas identified as "facilities" from which Seattle released contaminants, see Countercl. at ¶¶ 46, 48–50, 52–53, 156–160, and certain of its activities fell outside of the in-water (sediment) portion of the LDW Site. See id. at ¶¶ 46, 48, 52. Therefore, even if some portion of the costs are deemed subject to the CERCLA bar, it is plausible that some of them are not, rendering it premature to dismiss Monsanto's CERCLA counterclaim.[17] Dkt. #99 at 43–44.

---

[17] Monsanto states that Seattle is the owner and operator of various facilities that have released and may continue to release pollutants, including, "but not limited to, Terminal 117, the South Service Center, Georgetown Steam Plant, and numerous substations around the Duwamish River and surrounding upland drainage basins." Countercl. at ¶ 156. The EPA's ROD states that Port of Seattle

The Court agrees. Seattle is correct to point out that the EPA's plan for the LDW Site includes activities in relation to the upland areas. Dkt. #103 at 22–23; see Ex. A, Dkt. #76-6 at 18, 24–25. However, Monsanto has not specified the exact geographical extent of its activities.[18] Construing the allegations in the light most favorable to Monsanto, see Wickland Oil Terminals, 792 F.2d at 889–90, the Court cannot conclude that all of Monsanto's activities were undertaken on the LDW Site.

### 3. Declaratory Relief

The Court finds that Monsanto has properly pled a CERCLA Section 107 counterclaim for the recovery of its costs. Countercl. at ¶ 161. Monsanto's claim for declaratory relief accordingly also survives. Id. at ¶ 179; see City of Colton v. Am. Promotional Events, Inc.-W., 614 F.3d 998, 1008 (9th Cir. 2010) ("Declaratory relief is available only if liability for past costs has been established under section 107.").

### D. Negligence

To recover in a common law negligence action in Washington, "a plaintiff 'must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury.'" Lowman v. Wilbur, 178 Wn. 2d 165, 176–77 (2013) (en banc) (quoting Crowe v. Gaston, 134 Wn. 2d 509, 514 (1998)).

"The existence of a duty and the scope of that duty are questions of law." Certification from the United States Court of Appeals for the Ninth Circuit in Centurion Properties III, LLC v. Chicago Title Ins. Co., 186 Wn. 2d 58, 65 (2016). Washington courts decide whether to

---

[18] Terminal 117 is under an EPA cleanup process, and the North Boeing Field/Georgetown Steam Plant is under agreed orders for investigation and cleanup administered by Ecology's Toxic Cleanup Program. Ex. A, Dkt. #76-6 at 25. There is no mention of a "South Service Center," see id., and Monsanto does not elaborate further in the remainder of its counterclaims.

[18] Monsanto also argues that the Section 122(e)(6) bar applies only during the pendency of the RI/FS. Dkt. #99 at 43. As the Court finds that it is plausible that some of Monsanto's activities took place outside of the LWD Site, it need not reach this issue.

impose a duty of care based on considerations of 'logic, common sense, justice, policy, and precedent.'" Isakson v. WSI Corp., 771 F. Supp. 2d 1257, 1263 (W.D. Wash. 2011) (quoting Christensen v. Royal Sch. Dist. No. 160, 156 Wn. 2d 62, 67 (2005)). Monsanto alleges that Seattle had duties to it, including with regard to the operation of its wastewater treatment system and sewer systems, its construction activities, the operation and maintenance of its own properties. Countercl. at ¶¶ 211-16. Seattle argues that it does not owe any duty to Monsanto. Dkt. #99 at 37.

The cases cited by Monsanto for the existence of these specific duties are distinguishable. Id. at 45. Monsanto does not allege that it is a customer of Seattle. See Kempter v. City of Soap Lake, 132 Wn. App. 155, 156, 158 (2006) (finding that "a municipality has a duty to exercise reasonable care in the repair and maintenance of the municipal sewage system" where plaintiffs sued for damages caused by a sewer backflow into their house). Nor does it allege that it owns natural resources that were damaged by Seattle's activities. See Sea Farms, Inc. v. Foster & Marshall Realty, Inc., 42 Wn. App. 308, 314 (1985) ("RCW 90.48.080 makes it unlawful for any person to 'permit or suffer' pollution of state waters. This language indicates the legislative intent to prohibit landowners from polluting their own waters as well as that of others. [It is a] duty to refrain from acts which will pollute waters on another's land …"); Pruitt v. Douglas Cty., 116 Wn. App. 547, 558 (2003) (plaintiffs sued for water damage caused by road improvements made by the county); Rothweiler v. Clark Cty., 108 Wn. App. 91, 94, 104 (2001), as amended (Oct. 16, 2001) (plaintiffs alleged that the flooding at their residence was caused by the county's failure to maintain and improve the drainage system); Borden v. City of Olympia, 113 Wn. App. 359, 362 (2002) (plaintiffs sued for property damage caused by flooding).

However, whether "a municipality owes a duty in a particular situation … generally includes a determination of whether the incident that occurred was foreseeable." Keller v. City of Spokane, 146 Wn. 2d 237, 243 (2002) (internal citations omitted). The individuals to whom the duty is owed "generally include[] anyone foreseeably harmed by the defendant's conduct regardless of that person's own fault." Id. (citing Hansen v. Friend, 118 Wn. 2d 476, 484 (1992).

"In order to establish foreseeability the harm sustained must be reasonably perceived as being within the general field of danger covered by the specific duty owed by the defendant." McKown v. Simon Prop. Grp., Inc., 182 Wn. 2d 752, 763 (2015) (quoting Christen v. Lee, 113 Wn. 2d 479, 492 (1989)). Foreseeability is normally an issue for the trier of fact. Hansen, 118 Wn. 2d at 484 (citing Christen, 113 Wn. 2d at 492). At this stage, Monsanto has plausibly alleged that it was foreseeable to Seattle that an individual or entity would eventually be forced to address its contamination of the Affected Water Bodies. Countercl. at ¶¶ 218, 221.

Seattle also argues that Monsanto has failed to plausibly allege that its injuries were caused by the City's activities. The statute of limitations for negligence actions is three years, RCW 4.16.080, but Monsanto began incurring its costs prior to that.[19] See Ex. I, Dkt. #94-1 at 153 (Monsanto admitted that all the response costs it seeks to recover were incurred after December 20, 2000); see Ex. A, Dkt. 94-1 at 2 (the EPA Notice to Monsanto was issued on March 25, 2008). Seattle argues that it is implausible that Monsanto's injuries were caused by Seattle's activities if those injuries began accruing prior to the conduct complained of. Id. at 26–27; see Dkt. #95-1 at 38. However, Monsanto has alleged that its injuries are continuing. Countercl. at ¶¶ 220-21. It is therefore plausible that some of those injuries were caused by Seattle's conduct in the last three years. Twombly, 550 U.S. at 556.

---

[19] It is unclear whether Seattle is advancing a statute of limitations argument in its reply brief. See Dkt. #103 at 26–27 ("Monsanto's own allegations demonstrate it knew many years ago about City actions that Monsanto now claims were negligent. … Monsanto had sufficient awareness for a negligence claim. … If Monsanto was surprised to be sued after decades of the world ignoring its responsibility for PCB contamination, that does not delay running of the statute of limitations on its negligence claim."). To the extent that it does so, the Court declines to consider that argument, because it was not raised in the City's original motion to dismiss. See Dkt. #95-1 at 37–38; see Tile Tech, Inc. v. Appian Way Sales, Inc., No. C17-1660JLR, 2018 WL 2113958, at *4 (W.D. Wash. May 8, 2018) ("A district court cannot 'consider arguments raised for the first time in a reply brief.'") (quoting Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007)).

**E.  Unjust Enrichment**

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." <u>Young v. Young</u>, 164 Wn. 2d 477, 484 (2008) (citing <u>Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.</u>, 61 Wn. App. 151, 160 (1991)). There are three elements: "[1] a benefit conferred upon the defendant by the plaintiff, [2] an appreciation or knowledge by the defendant of the benefit; and [3] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." <u>Id.</u> (quoting <u>Bailie Commc'ns</u>, 61 Wn. App. at 159–60).

Monsanto's unjust enrichment claim is based on its assertion that, "to the extent [Seattle] prevails on any of its claims, it would be unjust and inequitable for the City to retain any portion of that judgment for which its conduct was a substantial cause." Countercl. at ¶ 228. The benefit consists of the costs that Seattle seeks to impose upon and the damages it seeks to recover from Monsanto in its FAC. <u>Id.</u> at ¶¶ 224–28.

The Court already has mechanisms for addressing this concern. <u>See</u> RCW 4.22.005 ("In an action based on fault seeking to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery.").

More importantly, the cases cited by Monsanto involve benefits that have already accrued and that are not predicated on an unfair judgment by a court. In <u>Young</u>, the plaintiff brought an action to quiet title. <u>Young</u>, 164 Wn. 2d at 480. The defendants counterclaimed for unjust enrichment based on improvements they made to the property. <u>Id.</u> In <u>D'Amato v. Lillie</u>, one of the issues on appeal was the jury instruction on unjust enrichment. 401 F. App'x 291, 293 (9th Cir. 2010). But the claim itself pertained to work performed by the defendants outside of the scope of a contract. <u>Id.</u> at 294. Similarly, <u>Walpert v. Jaffrey</u> involved an unjust enrichment

counterclaim as an offset to the plaintiff's damages on a contractual dispute. No. 13CIV5006PGGHBP, 2017 WL 1063461, at *1 (S.D.N.Y. Mar. 21, 2017). While Monsanto is correct in that a counterclaim can be pleaded on a conditional or a contingent basis, see City of Saint Paul, Alaska v. Evans, 344 F.3d 1029, 1033 n.6 (9th Cir. 2003), Monsanto cannot "assume[] by its argument that a court judgment on damages for [Seattle] would be unjust and inequitable." City of Spokane, No. 2:15-cv-00201-SMJ, Dkt. #87-1 at 17. [20] Monsanto has not made out a plausible unjust enrichment claim.

### F. Contribution

"A right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death or harm, whether or not judgment has been recovered against all or any of them." RCW 4.22.040. Monsanto states that it is entitled to contribution from Seattle for the expenses it has incurred. Countercl. at ¶¶ 231–33. Seattle moves to dismiss the counterclaim because Monsanto failed to allege joint liability. Id. at ¶ 233 ("All or a substantial portion of the expenses … are exclusively the result of the intentional or negligent conduct of the City.").

Monsanto argues that its contribution claim is contingent on the Court finding Monsanto liable in tort to Seattle. Dkt. #99 at 50; see Springs, 835 F.2d at 1296 (finding that "a counterclaim is not barred because recovery will depend on the outcome of the main action."). However, contribution is a "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being

---

[20] None of the cases cited by Monsanto regarding contingent counterclaims suggest otherwise. See City of Saint Paul, 344 F.3d at 1033 n.6 (contingent counterclaims sought relief "in the event the court ruled in favor of the City and declared [an] [a]greement to be valid); Springs v. First Nat. Bank of Cut Bank, 835 F.2d 1293, 1296 (9th Cir. 1988) (finding that "a counterclaim is not barred because recovery will depend on the outcome of the main action" and that the plaintiff's negligence claim was therefore a compulsory counterclaim in a previous action) (quoting Interphoto Corp. v. Minolta Corp., 47 F.R.D. 341, 344 (D.C.N.Y. 1969) (alteration omitted)); Warren, Little & Lund, Inc. v. Max J. Kuney Co., 115 Wn. 2d 211, 212, 216 (1990) (allowing a contingent unliquidated counterclaim for breach of contract to be pleaded as a setoff against the plaintiff's liquidated claim).

determined as a percentage of fault." <u>Mazon v. Krafchick</u>, 158 Wn. 2d 440, 451–52 (2006) (quoting Black's Law Dictionary 353 (8th ed. 2004)). "The right of contribution is limited to parties who have been held jointly and severally liable for the plaintiff's injury." <u>Id.</u> (citing RCW 4.22.070). "Joint and several liability, which gives rise to a claim for contribution, only exists in limited circumstances, including where the plaintiff is free of fault and judgment has been entered against two or more defendants." <u>Id.</u> (citing RCW 4.22.070.); <u>see</u> <u>Khan Air, LLC v. U.S. Aircraft Ins. Grp.</u>, No. C05-0420L, 2005 WL 3466546, at *1 (W.D. Wash. Dec. 19, 2005) ("The controlling statute provides for joint and several liability between defendants and third-party defendants if plaintiff was not at fault."). There is therefore "no basis for a defendant to bring a claim for contribution against the single plaintiff that may secure a judgment against it." <u>City of Spokane</u>, No. 2:15-cv-00201-SMJ, Dkt. #87-1 at 19.

## G. Affirmative Defenses

The Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a Rule 12(f) motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." <u>Sidney-Vinstein v. A.H. Robins Co.</u>, 697 F.2d 880, 885 (9th Cir. 1983).

"A defense is insufficient if it is unsupported by any facts that would entitle the defendant to relief." <u>Palmason v. Weyerhaeuser Co.</u>, No. C11-695RSL, 2013 WL 392705, at *1 (W.D. Wash. Jan. 31, 2013) (citing <u>Qarbon.com Inc. v. eHelp Corp.</u>, 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004)). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, and impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." <u>The Chef'n Corp. v. Progressive Int'l Corp.</u>, No. C14-68 RAJ, 2014 WL 2050282, at *1 (W.D. Wash. May 19, 2014) (citing <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993), <u>rev'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 510 U.S. 517 (1994)).

1

1. <u>Relief Sought by Seattle</u>

2

3       Monsanto's Affirmative Defense 53 asserts that punitive damages are not available.

4  Answer at ¶ 53. Seattle did not seek punitive damages in its prayer for relief. They are not

5  allowed in Washington. <u>Steele v. Johnson</u>, 76 Wn. 2d 750, 751–52 (1969) ("This jurisdiction

6  has never had the doctrine of punitive damages, absent statutory authorization.") (citing <u>Maki v.</u>

<u>Aluminum Bldg. Products</u>, 73 Wn. 2d 23 (1968)). This defense should be stricken.

7

8       Defenses 69–72, 74–79, 80–81 and 86 pertain to provisions of CERCLA and MTCA.

9  Answer at ¶¶ 69–72, 74–79, 80–81, 86; <u>see</u> RCW 70.105D.010 <i>et seq</i>. Seattle's FAC alleged

10  five claims of public nuisance, Compl. at ¶¶ 91–108, defective design, <u>id.</u> at ¶¶ 109–118, failure

11  to warn, <u>id.</u> at ¶¶ 119-29, negligence, <u>id.</u> at 130-37, and equitable indemnity, <u>id.</u> at ¶¶ 138-42.

12  The Court dismissed Seattle's claims for defective design, failure to warn and equitable

13  indemnity. Dkt. #60. Seattle did not plead claims under CERCLA or MTCA.

14       In defenses 69, 70, 71 and 76,²¹ Monsanto asserts that Seattle's claims for the recovery of

15  costs and/or natural resource damages are barred because they are premature, <u>see</u> CERCLA §

16  113(g)(2), 42 U.S.C. § 9613(g)(2), because Monsanto is not a "covered person" under CERCLA

17  § 107(a), 42 U.S.C. § 0607(a), or because the costs are not response costs under CERCLA and

18  are not consistent with the NCP. Answer at ¶¶ 69–71, 76. In defense 78, Monsanto asserts that

19  Seattle's claims are barred to the extent that any relevant damage was caused by the act of a

20  third party, an act of god, or an act of war. <u>Id.</u> at ¶ 78, <u>see</u> 42 U.S.C. § 9607(b). In defense 79,

21  Monsanto asserts that Monsanto is exempt from CERCLA liability because the PCBs and PCB-

22  containing products were manufactured and sold only as "useful products" to customers. <u>Id.</u> at ¶

23  79. In defenses 80 and 81, Monsanto asserts that Seattle's claims for natural resources damages

24  are barred because the damages occurred wholly before December 11, 1980, <u>see</u> CERCLA §

25  107(f)(1), 42 U.S.C. § 9607(f)(1), and because there is no injury to natural resources "resulting

26

27       ²¹ Monsanto repeats in both Defenses 71 and 76 that Seattle's costs are not recoverable "response

28  costs" under CERCLA. Answer at ¶¶ 71, 76.

from" a release by Monsanto, <u>see</u> CERCLA § 107(a)(4)(C), 42 U.S.C. § 9607(a)(4)(C). Answer at ¶¶ 80–81. In defense 86, Monsanto asserts that Seattle lacks standing for its natural resources damages claim because it is not the natural resource trustee, <u>see</u> CERCLA § 113(f), 42 U.S.C. § 9613(f). Answer at ¶ 86. However, Seattle has not brought an action under CERCLA, whether for the recovery of response costs, for natural resources damages, or otherwise.

In defenses 70, 72 and 77,[22] Monsanto asserts that Seattle's costs are not recoverable under MTCA because Monsanto is not a "liable person," <u>see</u> RCW 70.015D.040, and the costs are not "remedial action costs recoverable from [Monsanto] under MTCA, and otherwise are not the substantial equivalent of a remedial action conducted or supervised by Ecology." Answer at ¶¶ 70, 72, 77; <u>see</u> RCW 70.105D.080 (setting out requirements for a private right of action for the recovery of remedial action costs). In defense 78, Monsanto asserts that Seattle's claims are barred to the extent that any relevant damage was caused by the act of a third party, an act of god, or an act of war. <u>Id.</u> at ¶ 78, <u>see</u> RCW 70.105D.040(3). In defense 79, Monsanto asserts that Monsanto is exempt from MTCA liability because the PCBs and PCB-containing products were manufactured and sold only as "useful products" to customers. <u>Id.</u> at ¶ 79. Seattle has not brought an action under MTCA.

In defenses 74 and 75, Monsanto asserts that Seattle is not entitled to contribution under CERCLA § 113(f)(1), 42 U.S.C. § 9613(f)(1) or RCW 70.105D.080, and that if it is, Monsanto's equitable share of the response costs should be zero or near zero. <u>Id.</u> at ¶¶ 74–75. Seattle has not brought a claim for contribution under CERCLA or MTCA.

Monsanto argues that these defenses have an "important relationship" to the claims and defenses at issue here. <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, 618 F.3d 970, 974 (9th Cir. 2010) (internal citation omitted). The Court disagrees. Under no set of circumstances could these defenses succeed, because they do not respond to any claims brought by Seattle in the first

---

[22] Monsanto repeats in both Defenses 72 and 77 that Seattle's costs are not recoverable "remedial action costs" under MTCA. Answer at ¶¶ 72, 77.

place. See Kerzman v. NCH Corp., No. C05-1820JLR, 2007 WL 765202, at *7 (W.D. Wash. Mar. 9, 2007) (citing California Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1031 (C.D. Cal. 2002)). They are irrelevant and redundant. See Fed. Deposit Ins. Corp. v. Hanson, No. C13-0671-JCC, 2013 WL 12074983, at *4 (W.D. Wash. Dec. 10, 2013) (striking a defense regarding the liability of directors where the complaint only alleged that defendants had taken certain actions as officers).

      2. _Fee Arrangement_

      Monsanto's defense 62 alleges that Seattle's contingency fee arrangement with its outside counsel violates the ethical requirements of Washington state law. Answer at ¶ 62. Monsanto argues that this is material because "[a] municipality's use of a contingency fee counsel in pursuit of public nuisance and natural resource damages has ethical constraints and limitations." Dkt. #99 at 54. The Court has already held that Seattle is not seeking natural resources damages under CERCLA and has struck certain defenses that pertain to that allegation. Answer at ¶¶ 69, 80, 81, 86. Even if proven, the defense would not have any effect on Monsanto's liability. The Supreme Court of California's decision in Cty. of Santa Clara v. Superior Court does not compel a contrary conclusion. 50 Cal. 4th 35, 56 (2010) ("Accordingly, the absolute prohibition on contingent-fee arrangements imported in [another case] from the context of criminal proceedings is unwarranted in the circumstances of the present civil public-nuisance action")..,

## **CONCLUSION**

      For all the foregoing reasons, Seattle's motion to dismiss is GRANTED IN PART and DENIED IN PART. Monsanto's Third Counterclaim under the CWA, Fifth Counterclaim alleging unjust enrichment and Sixth Counterclaim alleging contribution are DISMISSED.

      Seattle's motion to strike is GRANTED. Defenses 53, 62, 69–72, 74–79, 80–81 and 86 are hereby STRICKEN.

1    DATED this 3rd day of May, 2019.

2

3

4                                    _MRS Lasnik_
                                     Robert S. Lasnik
5                                    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER ON PLAINTIFF'S MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS AND STRIKE CERTAIN DEFENSES - 28