1
2

THE HONORABLE RICHARD A. JONES
THE HONORABLE MICHELLE L. PETERSON

3
4
5
6
7
8
9
10
11

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

### AT SEATTLE

12
13
14
15
16
17
18
19

CITY OF SEATTLE, a municipal
corporation, located in the County of King,
State of Washington

                    Plaintiffs,

        v.

MONSANTO COMPANY, SOLUTIA INC.,
and PHARMACIA CORPORATION,

                    Defendants.

CASE NO. 2:16-cv-00107-RAJ-MLP

**DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO
EXCLUDE PROPOSED EXPERT
TESTIMONY BY RICHARD C.
PLEUS (Dkt. #284)**

**Noted for: August 26, 2022**

**Oral Argument Requested**

20
21
22
23
24
25
26
27
28

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP

Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
TEL: (314) 690-0204

1

**TABLE OF CONTENTS**

2   I.     INTRODUCTION ........................................................................1

3   II.    BACKGROUND ........................................................................3

4        A.    Pleus' Qualifications and Reports........................................3

5        B.    Cowan Cannot Provide a Basis on Which to Exclude Pleus'
             Opinions ...............................................................................3

6

7   III.   LEGAL STANDARD..................................................................4

    IV.   ARGUMENT .............................................................................5

8
         A.    The Fish Consumption Estimates on Which Pleus Relies
9            Are Reliable .........................................................................5

10       B.    Pleus Employed Reliable Statistical Methods ....................6

11       C.    Suquamish Consumption Data are More Reliable Than
             Tulalip Data for Purposes of Pleus' Lower Duwamish
12           Tribal Scenario ..................................................................11

13  V.    CONCLUSION........................................................................13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO EXCLUDE EXPERT         i         Shook, Hardy & Bacon L.L.P.
TESTIMONY OF RICHARD C. PLEUS                       190 Carondelet Plaza, Suite 1350
CASE NUMBER: 2:16-CV-00107-RAJ-MLP                     St. Louis, MO 63105
                                                      TEL: (314) 690-0204

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
   738 F.3d 960 (9th Cir. 2013) ..........................................................................................4

*City of Pomona v. SQM N. Am. Corp.*,
   750 F.3d 1036 (9th Cir. 2014) ...............................................................................1, 4, 11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ............................................................1, 2, 4, 5, 10, 11

*Elosu v. Middlefork Ranch Inc.*,
   26 F.4th 1017 (9th Cir. 2022) .........................................................................................4

*Fontana v. City of Fed. Way*,
   No. C11-998 RAJ, 2014 U.S. Dist. LEXIS 6799 (W.D. Wash. Jan. 17,
   2014) ...............................................................................................................................1

*United States v. Washington*,
   626 F. Supp. 1405 (W.D. Wash. 1982).........................................................................12

**Statutes**

EPA (2007) ..........................................................................................................................12

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP

i

Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
TEL: (314) 690-0204

1    Defendants Monsanto Company, Solutia Inc., and Pharmacia LLC (collectively,

2  "Defendants") hereby oppose the City of Seattle's ("City") Motion to Exclude Proposed

3  Expert Testimony ("Motion") by Richard C. Pleus ("Pleus") (Dkt. # 284).

4  **I.     INTRODUCTION**

5    The City's Motion repackages its own theory of the case, as conveyed by its rebuttal

6  expert Charles D. Cowan ("Cowan"), into a *Daubert* motion that improperly seeks to

7  exclude Pleus' opinions in their entirety.  Indeed, the City's Motion even repackages

8  arguments made in a separate motion the City filed to exclude the opinions of David L.

9  Sunding.  In doing so, the City levies unsupported attacks on the reliability of Pleus' data

10  and methodologies simply because it disagrees with his conclusions.  A *Daubert* motion,

11  however, is not a proper avenue for the City to attack the strength of Pleus' conclusions,

12  nor for the Court to determine which of the experts involved are right or wrong.  *See City*

13  *of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1053 (9th Cir. 2014) ("Facts casting

14  doubt on the credibility of an expert witness and contested facts regarding the strength of

15  a particular scientific method are questions reserved for the fact finder.").  Judge Jones'

16  prior rulings consistently hold that *Daubert* motions are proper if an expert lacks the

17  qualifications and experience to support the offer opinions, but they are not an appropriate

18  substitute for expert cross-examination.  *See, e.g., Fontana v. City of Fed. Way*, No. C11-

19  998 RAJ, 2014 U.S. Dist. LEXIS 6799 (W.D. Wash. Jan. 17, 2014) (expert in one field

20  cannot express an opinion relying on data that requires expertise in another field).

21    *First*, the City claims that Pleus relies on Sunding's unreliable fish consumption

22  estimates. Motion, at 4–5.  Defendants comprehensively rebut the City arguments in great

23  detail in their concurrently filed opposition to the City's Motion to Exclude the Testimony

24  of David L. Sunding.  *See* Dkt. # 347.  In short, the fish consumption estimates on which

25  Pleus relies are the result of reliable, scientifically supported methodologies, and the City's

26  argument displays its fundamental lack of understanding of Sunding's work.

27    *Second*, the City claims that Pleus employs unreliable statistical methods in

28  calculating non-tribal human health risk.  Motion, at 5–9.  The City is wrong.  Pleus' work

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP

1

Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
TEL: (314) 690-0204

uses common and conventional lognormal modeling that is consistent with EPA methodology guidance for fish consumption.  Importantly, the City's arguments are based on its rebuttal expert's claim that Pleus has "substantially understat[ed] risk."  *Id.* at 9.  Cowan is a statistician – not a toxicologist.  As such, he is unqualified to opine on matters concerning human health risks.  *See* Defendants' Motion to Exclude Certain Opinions and Related Testimony of Charles D. Cowan and Declaration in Support Thereof, Dkts. 312–313.  Cowan is not a toxicologist and admits he does not understand EPA risk assessment methodology and is not qualified to distinguish between values as toxicologically relevant or significant.  Omnibus Declaration of Lisa DeBord ("DeBord Decl."), Ex. C, at 19:9–12, 67:22–24 (Cowan testifying he has never conducted a probabilistic risk assessment using relevant EPA guidance); *id.* at 76:21-80:5 (Cowan testifying that he has no knowledge regarding EPA's Reference Doses for Aroclors, which are used by toxicologists to assess the potential for non-carcinogenic effects due to PCB exposure); *id.* at 112:17-113:5 (Cowan testifying he is not familiar with the EPA's cancer slope factors, which are used by toxicologists to assess the potential for carcinogenic effects due to PCB exposure).  Challenges to Pleus' risk assessment methodologies based on Cowan's opinions should be denied on that basis alone.

*Third*, the City takes issue with Pleus' use of data from the 2000 fish consumption survey of the Suquamish Tribe rather than data from a 1996 study of the Tulalip Tribe.  Motion, at 9–12.  In doing so, the City conveniently ignores that which its own rebuttal expert acknowledged:  the Tulalip Tribe does not have usual and accustomed fishing rights in the Lower Duwamish Waterway ("LDW"), while EPA has indicated that the Suquamish Tribe does.  *See* DeBord Decl., Ex. J (T. Deshler Dep.) at 116:13–19, 118:7–23, 128:24–129:23. The City also ignores that the older Tulalip study has no data specific to the LDW, while the more recent Suquamish study does.  The City's litigation-driven *belief* that there *might* be better data does not render the work Pleus did unreliable such that exclusion is appropriate under *Daubert*.

Pleus is a qualified expert offering relevant opinions supported by reliable, accepted

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP

2

Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
TEL: (314) 690-0204

methodologies.  Accordingly, the City's Motion to exclude his opinions should be denied.

## II.   BACKGROUND

### A.   Pleus' Qualifications and Reports

Pleus is a toxicologist with over 25 years of experience in assessing humans exposed to chemical and biological agents, including agents in the environment.  As outlined in his November 21, 2021 Expert Report, Pleus conducted a probabilistic human health risk assessment ("HHRA") of the LDW.  Pleus' HHRA develops estimates of potential PCB exposure to populations that engage in fishing or other recreational activities in the LDW.  Pleus then compared those estimates to U.S. EPA regulatory values protective of human health.  Specifically, Pleus assessed the potential for cancer risk using the EPA's cancer slope factor for PCBs and the potential for non-carcinogenic effects using the EPA's Reference Dose for Aroclor 1254.  *See* Declaration of Gary A. Gotto in Support of Plaintiff's Motion to Exclude Proposed Expert Testimony by Richard C. Pleus ("Gotto Decl."), Dkt. 285, Ex. A (Dkt. 285-1), at vi-vii.

On June 7, 2022, Pleus served a Supplement to his Expert Report.  Gotto Decl., Ex. B.  The Supplement "provide[s] updated noncancer hazard indices (HIs) and lifetime excess cancer risks (LECRs)" necessitated by the coding corrections made by Sunding made to his expert report.  *Id* at 1.  Pleus' Supplement relates to adjustments made to account for Sunding's coding correction with respect to the LDW non-tribal fish consumption rates.  DeBord Decl., ¶ 23; *see also* Gotto Decl., Ex. B, at 1.

### B.   Cowan Cannot Provide a Basis on Which to Exclude Pleus' Opinions

Cowan is admittedly not a toxicologist.  DeBord Decl., Ex. C, at 65:21–66:5; 66:13–18.  He has never published in the field of toxicology.  *Id*. at 25:9–14.  He has never published anything concerning an alleged association between PCB exposure and human health effects.  *Id*. at 28:15–22.  He has never testified or issued any reports regarding PCBs, the EPA's cancer slope factors for PCBs, EPA's Reference Doses for Aroclors, or margin of exposure analysis.  *Id*. at 29:18-20, 30:8-10, 30:20-22, 31:14-32:22.  Cowan testified he does not know what Aroclors are, what Reference Doses are, how Reference

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP

3

Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
TEL: (314) 690-0204

1  Doses are calculated, who calculates Reference Doses, what uncertainty factors are for
2  Aroclor Reference Doses, or anything else about Aroclor Reference Doses. *Id*. at 76:21-
3  80:5.  Cowan is not familiar with the EPA's cancer slope factors and does not know how
4  they are derived.   *Id*. at 112:17-113:5.   Moreover, Cowan has never conducted a
5  probabilistic risk assessment using relevant EPA guidance, nor is he familiar with EPA's
6  definition of deterministic risk assessments. *Id*. at 19:9–12; 67:22–24.

7        For these reasons, Defendants have filed a *Daubert* motion to exclude Cowan's
8  human health and risk-based opinions and conclusions. *See* Dkts. 312–313.  Accordingly,
9  Defendants do not believe that Cowan's report or testimony provide proper bases on which
10  to exclude Pleus' toxicological opinions.

11  **III.    LEGAL STANDARD**

12        Expert testimony that "meets the thresholds of relevance and reliability" goes to the
13  trier of fact.  *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022).   In
14  evaluating expert testimony, the Court is "'a gatekeeper, *not a fact finder*.'"   *City of*
15  *Pomona*, 750 F.3d at 1043 (quoting *Primiano*, 598 F.3d at 565) (emphasized language
16  excluded from the City's legal standard).   Indeed, "the test under *Daubert* is not the
17  correctness of the expert's conclusions but the soundness of his methodology." *Primiano*,
18  598 F.3d at 564–65 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311,
19  1318 (9th Cir. 1995).

20        Evidence that is arguably "[s]haky but admissible" is challenged "by cross
21  examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id*.
22  at 564.  Accordingly, the Court's role is not to "exclude opinions merely because they are
23  impeachable." *City of Pomona*, 750 F.3d at 1044 (quoting *Alaska Rent-A-Car, Inc. v. Avis*
24  *Budget Grp., Inc*., 738 F.3d 960, 969 (9th Cir. 2013)).  For that reason, "[a] district court
25  should not make credibility determinations that are reserved for the jury." *Id*. at 1044.
26  "Simply put, '[t]he district court is not tasked with deciding whether the expert is right or
27  wrong, just whether his testimony has substance such that it would be helpful to a jury.'"
28  *Id*. (quoting *Alaska Rent-A-Car, Inc*., 738 F.3d at 969–70).

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP                4                Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
TEL: (314) 690-0204

## IV.     ARGUMENT

### A.     The Fish Consumption Estimates on Which Pleus Relies Are Reliable

The City first argues that Pleus relies on Sunding's fish consumption estimates for his non-tribal human health risk assessment, estimates which the City believes are unreliable.  Motion, at 4–5.  The City's argument is a summary of those made in its separate *Daubert* motion to exclude Sunding, relying heavily on cross-references thereto.  *Id*.  If the Court denies the City's motion to exclude Sunding, the City's first argument here is moot.

In order to avoid burdening the Court with duplicative arguments and supporting documentation, Defendants similarly provide only a summary of their response to the City's Motion to Exclude Sunding.  For a complete, detailed discussion of their position, Defendants refer the Court to the simultaneously-filed Opposition to Motion to Exclude David L. Sunding.  *See* Dkt. #347.  In short, each of the City's claims regarding the purported unreliability of Sunding's fish consumption estimates is incorrect.

*First*, the Mayfield data on which Sunding relies does not concern only a ten-week period.  Rather, the Mayfield study was *conducted* over a ten-week period, but it elicited information from responding anglers concerning their year-round fishing and consumption behavior.  DeBord Decl., Ex. A (Mayfield, et al., 2007)), at 606.

*Second*, Sunding's fish consumption formula was corrected and is not otherwise "flawed."  *See* Gotto Decl., Ex. F (Supplemental Report of Sunding, June 1, 2022).  In fact, the City fails entirely to acknowledge that Sunding submitted a Supplemental Report correcting the "flaw" in his fish consumption calculations after his deposition.  Motion, at 4–5.  Notable too is the fact that the City quibbles with Sunding's findings rather than the reliability of his methodology, claiming Sunding "understated" consumption.  Questions regarding the credibility of Sunding's findings go the trier of fact and are the proper subject of cross-examination.

*Third*, avidity bias adjustments are common when estimating angler populations, and Sunding's in this case are reliable.  EPA literature confirms that adjustments for fisher frequency is a well-accepted practice, and the City offers no evidence to the contrary.

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP

5

Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
TEL: (314) 690-0204

1   DeBord Decl., Ex. G (EPA Exposure Factors Handbook, Sep. 2011) at 10-3, 10-25.  The

2   City has never understood avidity bias: Cowan had to wholesale withdraw his criticisms of

3   Sunding's avidity bias adjustments because he admitted that he fundamentally

4   misunderstood them.  DeBord Decl., Ex. B (May 17, 2022 Gotto letter withdrawing

5   Cowan's avidity bias opinions); DeBord Decl., Ex. C, at 231:4-232:16, 233:4-234:11

6   (Cowan testifying "it wasn't clear to [him]" that Sunding only applied the avidity bias

7   adjustment to the fish consumption rate).

8        The only new argument the City presents in this Motion is that Pleus' June 2022

9   Supplement to his Expert Report presents updated risk values that are based on Sunding's

10   corrected estimates.  Motion, at 5.  As explained above, and in opposition to the City's

11   motion to exclude Sunding, Sunding's data and methodologies are reliable and

12   scientifically supported, and thus so is Pleus' use of Sunding's estimates in his reports.

13        **B.      Pleus Employed Reliable Statistical Methods**

14        The City claims that Pleus' statistical methodology for calculating human health

15   risks for non-tribal anglers in the LDW was unreliable for two reasons:  Pleus' use of (i) a

16   lognormal distribution for non-tribal fish consumption rates and (ii) fitting this lognormal

17   distribution to the median value of non-tribal fish consumption rate.  Motion, at 5–6.  Once

18   again, the City is mistaken.  The City's lack of support, aside from referring to Cowan's

19   expert reports, is telling.  Defendants note that the City cites Cowan five separate times in

20   this section. Yet, Cowan is admittedly not a toxicologist, not an expert in risk assessment,

21   and Defendants have moved to exclude in part because he is unqualified to opine on matters

22   of toxicological significance and alleged human health risk due to PCB exposure.

23        ***i.      Lognormal distribution***

24        The use of a lognormal distribution is a common and conventional modeling

25   approach for fish consumption rates according to EPA risk assessment guidance.  *See*

26   DeBord Decl., Ex. K (EPA Risk Assessment Guidance for Superfund: Vol. III – Part A,

27   Process for Conducting Probabilistic Risk Assessment) at Appx. B (Selection and Fitting

28   of Distributions).   Specifically, expert judgment—which Cowan admits he does not

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP                    6                    Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
TEL: (314) 690-0204

possess in the field of toxicology—plays a role in selecting a distribution for the underlying data.[1]  *Id.* at B-15 ("When there is uncertainty associated with an input variable … expert judgment may be appropriate for obtaining distributions … Elicitation of expert judgment has been used to obtain distributions for risk assessments.").

Moreover, media contact rates—like fish consumption—are often reasonably modeled via lognormal distributions and are, in fact, identified by EPA as a specific example of such.  Appendix B of EPA's Guidance identifies lognormal distribution as one example of a probability distribution for a probabilistic risk assessment, describing the basis as follows: "Multiplication of a large number of random variables, or equivalently adding the logarithms of those numbers, will tend to yield a distribution with a lognormal shape."  *Id.* at B-18, Table B-2.  The examples EPA's Guidance offers for a lognormal distribution include "[c]hemical concentrations in environmental media; media contact rates; rates and flows in both fate and transport."  *Id.*  EPA's Guidance continues: "Because the basic risk equation is multiplicative, distributions of risk are generally lognormal.  In practice, lognormal distributions often provide good fits to data on chemical concentrations in a variety of media (Gilbert, 1987; Ott, 1990)."  *Id.*  EPA's Guidance provides an example of fish ingestion rates modeled by a lognormal distribution. Id. at B-27, Exhibit B-8.

The City criticizes Pleus, speculating that it "appears" he did not conduct a goodness of fit analysis when selecting a lognormal distribution.  Motion, at 7.  In doing so, the City claims that the absence of a goodness of fit analysis "alone renders [the] conclusion unreliable."  *Id.*  This, again, is a misunderstanding of EPA Guidance.  EPA makes clear that goodness of fit tests "are one tool among several to assess the quality of a distribution."  DeBord, Decl., Ex. K, at B-31.  EPA also notes that, while important, such

---

[1] Cowan likewise sought to fit Sunding's fish consumption rates to a lognormal distribution.  DeBord Decl., Ex. C, at 118:12-20; Gotto Decl., Ex. D, at 44 (Chart 2 and associated table).  However, Cowan erred in fitting Sunding's fish consumption rates to a lognormal distribution and issued errata to Chart 2 of his February 2022 report.  DeBord Decl., Ex. C, at 106:14-24 (testifying the values in Chart 2 of his February 2022 report "are clearly incorrect"); DeBord Decl., Ex. F.  The City is thus quarreling over a methodology employed by Sunding that its own rebuttal expert on statistics unsuccessfully implemented.

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP

7

Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
TEL: (314) 690-0204

1   tests are "less important than mechanistic considerations or graphical data exploration for

2   choosing a candidate distribution." *Id*.  Goodness of fit tests also "do not prove that the

3   population is described by the specific distribution," as the City appears to believe.  *Id*. at

4   B-32.  Rather, per EPA, a goodness of fit tests demonstrates "that this assumption could

5   not be rejected." *Id*.

6        More importantly, however, the fish consumption rate dataset was assessed by

7   Sunding for lognormality.  Sunding applied two common tests of normality:  the

8   Kolmogorov-Smirnov and Shapiro-Wilk tests.  Declaration of D. Sunding, ¶ 3.  Based on

9   these tests, Sunding could not reject lognormality of the total seafood consumption data,

10  resident seafood consumption data, or the resident fish consumption data among adult

11  anglers who consumed the associated species.  Sunding Decl., ¶ 4.  During their two days

12  of depositions of Sunding, the City had the opportunity but failed to ask him whether he

13  conducted a goodness of fit analysis for the fish consumption data.  DeBord Decl., ¶ 22.

14       In addition, Pleus assessed the fish consumption dataset for lognormality using

15  the tests identified by EPA in its Risk Assessment Guidance.  Declaration of R. Pleus, at

16  ¶¶ 3,4; *see also* DeBord Decl., Ex. L (R. Pleus Dep. (July 20, 2022)), at 194:12-196:22

17  (testifying he used EPA guidance in evaluating the goodness of fit of the lognormal

18  distributions used in his HHRA, but could not recall the specific test used).  Specifically,

19  Pleus' use of the Crystal Ball software for his Monte Carlo analyses involved a review of

20  the underlying total fish consumption and resident species consumption data using the

21  Kolmogorov-Smirnov and Anderson Darling tests.  Pleus Decl., at ¶ 3; DeBord Decl., Ex.

22  K, at B-33–B-34; *see also* Gotto Decl., Ex. A at 7–8 ("To conduct the HHRA,

23  methodologies were applied from current U.S. EPA and other risk assessment guidance

24  and policies as appropriate").

25       In other words, Pleus, in his expert toxicological judgment, chose an EPA-

26  sanctioned distribution model for his risk assessment in an area specifically identified as

27  an appropriate example by that same EPA Guidance.  Conversely, Cowan, who is not a

28  toxicologist and has no familiarity with probabilistic risk assessments using EPA

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP

8

Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
TEL: (314) 690-0204

1   Guidance, contends Pleus' method is "inappropriate" and unreliable.   Motion, at 7.

2   Cowan's opinion provides no basis on which this Court should exclude Pleus.

3                              *ii.*        ***Median versus mean values***

4           In addition to criticizing Pleus for fitting the non-tribal fish consumption rate data

5   to a lognormal distribution, the City argues that that Pleus should have fit the lognormal

6   distribution to mean or decile values rather than the median.  Motion, at 6-7.  According to

7   the City, Pleus' fitting of the lognormal distribution to the median "understate[d] the risk

8   to consumers."   Motion, at 6–7.   In doing so, the City once again relies on Cowan's

9   unqualified opinions regarding human risk significance, supported by a chart that Cowan

10  prepared that overstates the difference between median and mean values by manipulating

11  the data it displays.

12          Pleus' Supplement makes clear that the difference between median and mean-based

13  lognormal distributions for this fish consumption data do not amount to a toxicologically

14  significant hazard index.  *See* Gotto Decl., Ex. B, at Table 1 (showing noncancer hazard

15  indices of 1.3 for the median and 2.0 for the mean at the 95th percentile).  This is not a

16  toxicologically significant difference when considered among the various conservative

17  estimates incorporated into EPA Reference Dose for Aroclor 1254, including an safety

18  factor of at least 300.  *Id.* at 1.  Based on these calculations using Sunding's corrected non-

19  tribal fish consumption values, Pleus concluded that the LDW "population's exposure to

20  PCBs via fish ingestion from, and recreational activities in, the LDW does not confer a

21  significant noncancer or cancer health risk."  *Id.*

22          Cowan's graph purporting to identify the differences between Pleus' lognormal

23  distribution and the underlying Sunding data overstates the significance of these

24  differences, as well as the significance of the difference between the median and mean

25  values.  *See* Motion, at 8.  Specifically, his graph's Y-axis focuses on a sliver of benthic

26  fish consumption—0 to 20 grams—rather than depicting the full range of benthic fish

27  consumption.  Gotto Decl., Ex. F, at 8 (Sunding's updated Table C-1).  By manipulating

28  the Y-axis, Cowan's graph depicts a restricted, narrow piece of the benthic fish

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP                    9                    Shook, Hardy & Bacon L.L.P.
                                                                            190 Carondelet Plaza, Suite 1350
                                                                            St. Louis, MO 63105
                                                                            TEL: (314) 690-0204

1   consumption rate reported by Sunding that has the effect of making a non-toxicologically

2   significant difference visually look more significant.  Specifically, Cowan's graph fails to

3   account for the fact that fish consumption rate is just one input into Pleus' HHRA.  Cowan

4   fails to account for other inputs required for a human health risk assessment (e.g., PCB

5   concentrations in benthic fish, EPA's Aroclor 1254 Reference Dose, duration of exposure,

6   etc.).  Despite failing to take into account these other key toxicological considerations,

7   Cowan assumes that consumers of benthic fish from the LDW are at "high risk" and offers

8   what amounts to a lay opinion that Pleus suppresses this "high risk."

9       The City – again relying entirely on Cowan - erroneously states that "Pleus adopted

10   a technique focused on the median consumers" "[r]ather than evaluating the risk exposure

11   of the high consumers in the tail of the distribution."  Motion, at 9.  This is incorrect.  Pleus

12   input the entire fish consumption range distribution into his HHRA using the Monte Carlo

13   simulation.   Gotto Decl., Ex. A, at 6 ("This HHRA incorporates probabilistic risk

14   assessment (PRA) approaches, which provide distributions of possible outcomes rather

15   than single representative doses."); *id.* at 7-8 ("The resulting distributions of dose and

16   hazard or risk are intended to reflect the range of exposure and risk across an exposed

17   population. That is, they reflect exposures to average or typical individuals within the

18   population, as well as more highly and less exposed individuals.").

19       Giving Cowan the benefit of the doubt and assuming that he is not intentionally

20   misrepresenting the data, this is simply another example of Cowan offering opinions

21   admittedly outside of his area of expertise and underscores why the City's *Daubert* motion

22   against Pleus is misplaced and its dispute should be reserved for cross-examination.

23   Cowan does not understand EPA probability risk assessment methodology and is not

24   qualified to distinguish between values as toxicologically relevant or significant.  *Id.*; *see*

25   *also supra*, at 2.  During his deposition, he conceded that he is unable to calculate

26   independently measures of potential risk in the absence of Dr. Pleus' report and back-up

27   materials.  DeBord Decl., Ex. C, at 251:24-252:16.  Yet, these misguided attempts of

28   Cowan to offer opinions about human health risk are the City's sole support for claiming

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP

10

Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
TEL: (314) 690-0204

that Pleus' methodology is unreliable.  Cowan's unqualified opinions should not serve as basis on which to exclude Pleus' qualified opinions.

### C. Suquamish Consumption Data are More Reliable Than Tulalip Data for Purposes of Pleus' Lower Duwamish Tribal Scenario

Lastly, the City claims that Pleus' tribal human health risk assessment is unreliable because it is based on selected data from a 2000 survey of the Suquamish Tribe rather than a 1996 survey of the Tulalip Tribe.  Motion, at 9–10.  In doing so, the City tips its hand, demonstrating that this argument is not appropriate for a *Daubert* motion.  Specifically, the City states that "Pleus offers *no credible explanation* for his selection of data on which to base his tribal scenario."  *Id.* at 10 (emphasis added).  "Credibility" determinations, however, are reserved for the trier of fact, not a court ruling on a *Daubert* motion.  *City of Pomona*, 750 F.3d at 1053 ("Facts casting doubt on the credibility of an expert witness and contested facts regarding the strength of a particular scientific method are questions reserved for the fact finder.").

In fact, Pleus offers a very direct rationale for his decision to use the Suquamish data rather than the Tulalip data:  "Consumption data of resident species of fish and shellfish from the Puget Sound region for the Tulalip Tribe are also available, but the data are not specific to the LDW and so were not used in the HHRA (Toy et al., 1996)."  Gotto Decl., Ex. A, at 21.  That the City and its experts do not like Pleus' explanation does not in and of itself make that explanation not credible.  The City cross-examined Pleus in deposition and will have additional opportunities to do so at trial.  Credibility determinations should not be made at this stage of the litigation.

To the contrary, Pleus had very a credible reason for choosing the Suquamish data; namely, the ability to base his assessment on site-specific information.  The EPA recommends the use of site-specific consumption rates.  DeBord Decl., Ex. A, at 604.  The EPA further recommends use of Tribal-specific surveys where a cleanup site is within that Tribe's usual and accustomed fishing areas:  "Where a Tribal-specific survey exists, and where a cleanup site is within that Tribe's exclusive U&A [usual and accustomed], the fish

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP
11
Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
TEL: (314) 690-0204

1 and shellfish consumption exposure scenarios also should include the consumption rate

2 based on that Tribe's data." DeBord Decl., Ex. N (EPA (2007)), at 13. This attention to

3 site-specific data is precisely what Pleus' human health risk assessment includes.

4       The Tulalip Tribe's adjudicated usual and accustomed fishing rights do not include

5 the LDW. *See United States v. Washington*, 626 F. Supp. 1405, 1530–1532 (W.D. Wash.

6 1982). Conversely, EPA treats the Suquamish as having treaty fishing rights in the LDW.

7 *See* DeBord Decl., Ex. M (EPA Fact Sheet–Who is Who in the Lower Duwamish

8 Waterway) (identifying the Duwamish, Muckleshoot, Suquamish, and Yakama Tribes as

9 having treaty rights to fish in the LDW). The City's own expert rebuttal witness

10 acknowledged both of these facts, and he was unable to identify where within the broader

11 Puget Sound the Tulalip Tribe has fishing rights. DeBord Decl., Ex. J, at 116:13–19,

12 118:7–23, 128:24–129:23. In other words, the City's claim that Pleus "has no data on tribal

13 fishing specific to the LDW" such that "he has no basis to reach a conclusion" regarding

14 LDW fish consumption is plainly untrue and contradictory to the City's own argument.

15 Motion, at 10. The Suquamish Survey data does, in fact, allow Pleus to identify site-

16 specific data while the Tulalip Survey data do not.

17       The City places great weight on EPA Region 10's 2007 guidance document,

18 "Framework for Selecting and Using Tribal Fish and Shellfish Consumption Rates for

19 Risk-Based Decision making at CERCLA and RCRA Cleanup Sites in Puget Sound and

20 the Strait of Georgia" ("Framework"). Motion, at 11. That Framework expresses a "policy

21 decision" that "for sites in Puget Sound … the consumption rate derived by EPA from data

22 from the Tulalip Tribes represents a sustainable consumption rate." *Id*. Thus, Region 10's

23 guidance was explicitly made for policy rather than scientific purposes. That said, the

24 decision makes sense for Puget Sound given that the Tulalip Tribe has treaty rights all over

25 the greater Puget Sound. *U.S. v. Washington*, 626 F. Supp. at 1530–1532. However, the

26 Tulalip Tribe has no such rights in the LDW specifically, which is the only site at issue in

27 this case. Moreover, the City ignores that the Framework makes no specific mention of

28 the LDW. DeBord Decl., Ex. J, at 128:24–129:23. In arguing that Pleus' data selection is

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP

12

Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
TEL: (314) 690-0204

1    unreliable, the City resorts to cherry-picking evidence to support its myopic view of the

2    case.

3    **V.      CONCLUSION**

4           For the foregoing reasons, Defendants respectfully request that the Court deny the

5    City's motion to exclude the aforementioned opinions and testimony of Richard C. Pleus.

6    DATED: August 22, 2022

7

8                                            SHOOK, HARDY & BACON

9                                            By: /s/ Lisa N. DeBord
                                             Adam E. Miller (Admitted *Pro Hac Vice*)
                                             Lisa N. DeBord (Admitted *Pro Hac Vice*)
10                                           Susan L. Werstak (Admitted *Pro Hac Vice*)
                                             Michael W. Cromwell (Admitted *Pro Hac
11                                           Vice*)
                                             Rachel R. Berland (Admitted *Pro Hac Vice*)
12                                           190 Carondelet Plaza, Suite 1350
                                             St. Louis, (Clayton), MO 63105
13                                           Phone:  (314) 690-0200
                                             Email:  amiller@shb.com
14                                                   ldebord@shb.com
                                                     swerstak@shb.com
15                                                   mwcromwell@shb.com
                                                     rberland@shb.com
16

17                                           SCHWABE WILLIAMSON & WYATT

18                                           By: /s/ Connie Sue M. Martin
                                             Jennifer L. Campbell, WSBA No. 31703
19                                           Connie Sue M. Martin, WSBA No. 26525
                                             David F. Stearns, WSBA No. 45357
20                                           1420 5th Avenue, Suite 3400
                                             Seattle, WA 98101
21                                           Phone: (206) 622-1711
                                             Email: jcampbell@schwabe.com
22                                                  csmartin@schwabe.com
                                                    dstearns@schwabe.com
23
                                             KING & SPALDING LLP
24                                           Donald F. Zimmer (Admitted *Pro Hac Vice*)
                                             Megan Nishikawa (Admitted *Pro Hac Vice*)
25                                           Troy D. McMahan (Admitted *Pro Hac Vice*)
                                             Nicholas D. Kayhan (Admitted *Pro Hac
26                                           Vice*)
                                             101 Second Street, Suite 2300
27                                           San Francisco, CA 94105
                                             Phone: (415) 318-1200
28                                           Email: fzimmer@kslaw.com
                                                    mnishikawa@kslaw.com

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP

13

Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
TEL: (314) 690-0204

tmcmahan@kslaw.com
nkayhan@kslaw.com

KING & SPALDING LLP
Peter Hsiao (Admitted *Pro Hac Vice*)
663 West Fifth Street, Ste. 1600
Los Angeles, CA 90071
Phone: (213) 443-4310
Email: phsiao@kslaw.com

SHOOK HARDY & BACON LLP
Richard Campbell (Admitted *Pro Hac Vice*)
Stephen I. Hansen (Admitted *Pro Hac Vice*)
Brandon Arber (Admitted *Pro Hac Vice*)
One Federal Street, Suite 2540
Boston, MA 02110
Phone: (617) 531-1441
Email: rcampbell@shb.com
      shansen@shb.com
      barber@shb.com

SHOOK HARDY & BACON LLP
Thomas M. Goutman (Admitted *Pro Hac Vice*)
David S. Haase (Admitted *Pro Hac Vice*)
Kim Kocher (Admitted *Pro Hac Vice*)
2001 Market Street, Suite 3000
Philadelphia, PA 19103
Phone: (215) 575-3136
Email: tgoutman@shb.com
      dhaase@shb.com
      kkocher@shb.com

LATHAM & WATKINS LLP
Robert M. Howard, CSBA No. 145870
(Admitted *Pro Hac Vice*)
Jason M. Ohta, CSBA No. 211107
(Admitted *Pro Hac Vice*)
Daniel P. Brunton, CSBA No. 218615
(Admitted *Pro Hac Vice*)
Shannon K. Lankenau, CSBA No. 294263
(Admitted *Pro Hac Vice*)
Natalie C. Rogers, CSBA No. 301254
(Admitted *Pro Hac Vice*)
12670 High Bluff Drive
San Diego, California 92130
Phone: (858) 523-5400
Email: robert.howard@lw.com
      jason.ohta@lw.com
      daniel.brunton@lw.com
      shannon.lankenau@lw.com
      natalie.rogers@lw.com

*Attorneys for Defendants Monsanto*
*Company, Solutia Inc., and Pharmacia LLC*

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP

14

Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
TEL: (314) 690-0204

## CERTIFICATE OF SERVICE

The undersigned declares under penalty of perjury, under the laws of the United States, that the following is true and correct:

I hereby certify that on August 22, 2022, I electronically served the foregoing **Defendants' Opposition to Plaintiff's Motion to Exclude Proposed Expert Testimony by Richard C. Pleus** to all counsel of record:

Laura B. Wishik, Esq.
laura.wishik@seattle.gov
**Office of the City Attorney**
701 Fifth Avenue, Suite 2010
Seattle, WA 98104-7097
*Attorneys for Plaintiff City of Seattle*

Elizabeth K. Bailey, Bar No. 172956
ebailey@stollberne.com
Steve D. Larson
slarson@stollberne.com
Jennifer S. Wagner, Bar No. 024470
jwagner@stollberne.com
Keith Ketterling, Bar No. 913368
kketterling@ssbls.com
STOLL BERNE LOKTING &
SHLACHTER P.C.
209 S.W. Oak St, Suite 500
Portland, OR 97204
*Attorneys for Plaintiff City of Seattle*

Lynn L. Sarko, WSBA #16569
lsarko@kellerrohrback.com
Michael D. Woerner, WSBA #15452
mwoerner@kellerrohrback.com
Daniel P. Mensher, WSBA #47719
dmensher@kellerrohrback.com
Alison S. Gaffney
agaffney@kellerrohrback.com
Adele A. Daniel, WSBA #53315
adaniel@kellerrohrback.com
Megan R Nishikawa
mnishikawa@kslaw.com
Yoona Park, Bar No. 077095
ypark@kellerrohrback.com
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
*Attorneys for Plaintiff City of Seattle*

/s/ Lisa N. DeBord

OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF RICHARD C. PLEUS
CASE NUMBER: 2:16-CV-00107-RAJ-MLP

1

Shook, Hardy & Bacon L.L.P.
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
TEL: (314) 690-0204