The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CITY OF SEATTLE,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>MONSANTO COMPANY, et al.,<br><br>　　　　　　　　　Defendants. | No. 2:16-cv-00107-RAJ<br><br>**PLAINTIFF'S MOTION TO EXCLUDE PROPOSED EXPERT TESTIMONY BY RICHARD C. PLEUS**<br><br>NOTE ON MOTION CALENDAR:<br>August 26, 2022<br><br>ORAL ARGUMENT REQUESTED |

PL. MOTION EXCLUDE EXPERT TESTIMONY BY RICHARD C. PLEUS (2:16-cv-00107-RAJ)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING
& SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................1

II.  BACKGROUND .........................................................................................................1

     A.   Richard C. Pleus' Reports ...............................................................................2

III. LEGAL STANDARD FOR THE ADMISSIBILITY OF EXPERT
     TESTIMONY ..............................................................................................................2

IV.  ARGUMENT ..............................................................................................................4

     A.   Dr. Pleus Relies on Dr. Sunding's Unreliable Fish Consumption
          Estimates. ........................................................................................................4

     B.   Dr. Pleus Employed Unreliable Statistical Methods in Calculating
          His Non-Tribal Scenario. ................................................................................5

     C.   Dr. Pleus' Tribal Scenario Is Based on Unreliable Data .................................9

V.   CONCLUSION .........................................................................................................12

PL. MOTION EXCLUDE EXPERT
TESTIMONY BY RICHARD C.
PLEUS (2:16-cv-00107-RAJ) – i

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING
& SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cabrera v. Cordis Corp.*,
 134 F.3d 1418 (9th Cir. 1998) ............................................................................................. 3

*City of Pomona v. SQM N. Am. Corp.*,
 750 F.3d 1036 (9th Cir. 2014) ......................................................................................... 2, 3

*Cypress Ins. Co. v. SK Hynix Am., Inc.*,
 No. 2:17-CV-00467-RAJ, 2019 WL 634684 (W.D. Wash. Feb. 14, 2019) .......................... 3

*United States v. Flores*,
 901 F.3d 1150 (9th Cir. 2018) ............................................................................................. 2

*Kumar v. Williams Portfolio 7, Inc.*,
 No. C14-657RAJ 2015 WL 4494126 (W.D. Wash. July 23, 2015) ..................................... 3

*Mooney v. Roller Bearing Co. of Am., Inc.*,
 No. C20-01030-LK, 2022 WL 1430412 (W.D. Wash. May 5, 2022) .................................. 3

*Primiano v. Cook*,
 598 F.3d 558 (9th Cir. 2010), *as amended* (Apr. 27, 2010) .................................................. 3

**Other Authorities**

Federal Rule of Evidence 702 ....................................................................................... 1, 2, 3

PL. MOTION EXCLUDE EXPERT
TESTIMONY BY RICHARD C.
PLEUS (2:16-cv-00107-RAJ) – ii

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING
& SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

## I. INTRODUCTION

Under Federal Rule of Evidence 702, Plaintiff City of Seattle moves to exclude the testimony of Defendants' expert Richard C. Pleus, Ph.D.. Dr. Pleus' opinions are irrelevant to the issues in this litigation, would confuse the jury, and are based on insufficient data and on unreliable methodologies. This Motion is further supported by both the Omnibus Declaration of Michael Woerner in Support of Plaintiff's Motions to Exclude Proposed Expert Testimony and the Declaration of Gary A. Gotto in Support of Plaintiff's Motion to Exclude Proposed Expert Testimony by Richard C. Pleus, filed concurrently. The parties met and conferred to discuss this motion but could not reach agreement.[1]

## II. BACKGROUND

The City sued the Monsanto defendants for a public nuisance[2] created by Monsanto's PCB (polychlorinated biphenyl) chemicals that are contaminating the Lower Duwamish Waterway (LDW), the LDW drainage area, and the City's stormwater conveyance system.[3] The Washington State Department of Health (DOH) has determined that, due to PCB contamination, it is unsafe for people to eat *any* amount of fish or shellfish that reside in the LDW.[4] Likewise, the Environmental Protection Agency (EPA) identified PCBs in resident seafood as a risk to human health, and as presenting the greatest risk out of all contaminants in the LDW to people who consume resident fish and crabs.[5] Monsanto's PCBs have impaired the public's free use and comfortable enjoyment of the Lower Duwamish Waterway, including the ability to harvest

---

[1] Omnibus Decl. of Michael Woerner in Supp. Of Pl.'s Mot. To Exclude Proposed Expert Test. ("Omnibus Decl.") ¶ 8.
[2] The City has dropped its negligence claim. *See* Minute Order Granting Stipulated Mot. for Leave to Dismiss Negligence Claim and Amend Compl., Dkt. # 265.
[3] *See* Pl.'s Second Am. Compl., Dkt. # 267.
[4] Omnibus Decl., Ex. A, *Lower Duwamish Waterway Site: Updated Fish Consumption Advisory*, Wash. State Dep't of Health, at 9 (Sept. 7, 2005).
[5] S*ee* Omnibus Decl., Ex. B, Excerpts from *ROD*; Omnibus Decl., Ex. C, *EPA issues final Explanation of Significant Differences for cPAHs in the Lower Duwamish Waterway Superfund Site*, U.S. EPA, at 2 (Oct. 2021)

PL. MOTION EXCLUDE EXPERT TESTIMONY BY RICHARD C. PLEUS (2:16-cv-00107-RAJ) – 1

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

and safely consume resident seafood, and have caused people to have a reasonable fear of doing so—that impairment is the public nuisance asserted here.[6]

## A.   Richard C. Pleus' Reports

This motion is directed at Monsanto expert Richard C. Pleus, a toxicologist who prepared an expert report dated November 22, 2021[7] offering opinions based on a human health risk assessment ("HHRA") that he conducted. Dr. Pleus also prepared a June 7, 2022 Supplement[8] to his Report which purports to update his HHRA data; that Supplement should be stricken for the reasons set forth in Plaintiff's separate Motion to Strike Supplement to the Expert Report of Richard C. Pleus. Dr. Pleus' HHRA relies heavily on the fish consumption estimates of David L. Sunding; because those estimates are unreliable for the reasons described in Plaintiff's Motion to Exclude Testimony of David L. Sunding, Dr. Pleus' HHRA is also unreliable as a result. In addition, as discussed below, independent of the flaws in Dr. Sunding's estimates, Dr. Pleus' methods suffer from additional serious flaws that render them unreliable.

## III.   LEGAL STANDARD FOR THE ADMISSIBILITY OF EXPERT TESTIMONY

Under Federal Rule of Evidence 702, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In the case of jury trials, "*Daubert* is meant to protect *juries* from being swayed by dubious scientific testimony." *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018).

---

[6] *Id*; *see also* Omnibus Decl., Ex. A.
[7] Gotto Decl., Ex. A, Expert Report of Dr. Richard C. Pleus, dated 11/21/21.
[8] Gotto Decl., Ex. B, Supplement to the Expert Report of Dr. Richard C. Pleus, dated 06/07/22.

PL. MOTION EXCLUDE EXPERT TESTIMONY BY RICHARD C. PLEUS (2:16-cv-00107-RAJ) – 2

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

"In evaluating proffered expert testimony, the trial court is a gatekeeper . . . ." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (quotation omitted). The court should therefore close the gate to unreliable opinions. *Id.* at 1044. "The court has discretion to make the *Daubert* determination via any procedure that gives it an adequate record." *Kumar v. Williams Portfolio 7, Inc.*, No. C14-657RAJ 2015 WL 4494126, at *2 (W.D. Wash. July 23, 2015) (citation omitted).

Under Rule 702(a), expert testimony must be relevant; "[w]hat is relevant depends on what must be proved…." *Primiano v. Cook*, 598 F.3d 558, 567 (9th Cir. 2010), *as amended* (Apr. 27, 2010). Expert testimony must help the trier of fact but cannot "improperly evade[] the province of the jury." *Cypress Ins. Co. v. SK Hynix Am., Inc.*, No. 2:17-CV-00467-RAJ, 2019 WL 634684, at *3 (W.D. Wash. Feb. 14, 2019). Expert testimony cannot merely restate or summarize facts; testimony is not helpful if "jurors will be able to understand th[e] facts without an expert's opinion." *Mooney v. Roller Bearing Co. of Am., Inc.*, No. C20-01030-LK, 2022 WL 1430412, at *4 (W.D. Wash. May 5, 2022).

Under 702(c), a "court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance." *City of Pomona*, 750 F.3d at 1044. The question is whether an expert's methodology can be "challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability." *Id.* at 1046 (quoting Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments). Opinion based on "unsubstantiated and undocumented information is the antithesis of . . . scientifically reliable expert opinion…." *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998). As this Court has observed, an expert "is not an expert in all fields." *Cypress*, 2019 WL 634684, at *2.

PL. MOTION EXCLUDE EXPERT TESTIMONY BY RICHARD C. PLEUS (2:16-cv-00107-RAJ) – 3

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

## IV.  ARGUMENT

A.    **Dr. Pleus Relies on Dr. Sunding's Unreliable Fish Consumption Estimates.**

Dr. Pleus' HHRA includes a "tribal scenario" and a "non-tribal scenario."[9]  The non-tribal scenario is based upon the fish consumption estimates provided by Dr. Sunding.

Dr. Sunding's fish consumption estimates are utterly unreliable for the reasons discussed in Plaintiff's Motion to Exclude Dr. Sunding's testimony.  Those reasons include the following:

1. Dr. Sunding relies exclusively on data collected during a 10-week period in 1997, but there is no indication that these data are representative of the fish consumption patterns of persons who fished the LDW the other 42 weeks of 1997 (or at any other time, including the current period);[10]
2. The fish consumption formula employed by Dr. Sunding in his November 2021 Report is flawed and understates fish consumption;[11]
3. Dr. Sunding employed an avidity adjustment[12] that is unreliable and likely significantly understates fish consumption.[13]

Each of these reasons constitutes a basis to exclude Dr. Pleus' non-tribal scenario opinions in their entirety.  Perhaps most telling is the first, *i.e.*, that Dr. Sunding's data speaks only to a 10-week period from a quarter-century ago.  Dr. Pleus ignores this issue entirely and provides no basis on which to conclude that this fragmentary data can form a reliable basis for a current LDW human health risk assessment.

---

[9] Gotto Decl., Ex. A, Expert Report of Dr. Richard C. Pleus, at p. 30.

[10] As discussed in Plaintiff's Motion to Exclude Testimony of David L. Sunding, because the data drawn from the 10-week period are not shown (or even claimed) to be representative of year-round (or current) data, any opinions based on that data must be limited to the 10-week period and any such limited opinions would be irrelevant to any issue in this litigation.

[11] Gotto Decl., Ex. C, Expert Report of David L Sunding, dated 11/22/21.

[12] As discussed further in Plaintiff's Motion to Exclude Testimony of David L. Sunding, the purported reason for the avidity adjustment was to reflect the fact that more frequent anglers were more likely to be interviewed; Dr. Sunding therefore weighted responses by the frequency of angling.  But the interviews were conducted only on 30 days within a 10-week period, and therefore only angling during those 30 days was pertinent to the likelihood of being interviewed that Dr. Sunding claimed to be adjusting for.  Dr. Sunding included *annual* fishing frequency in his adjustment, thereby greatly underweighting the responses of the most frequent anglers.

[13] All three of these flaws are apparent on the face of Dr. Sunding's November 2021 report (*see* Sunding Rep. ¶26 (time period of Mayfield Study); ¶55 (setting forth flawed fish consumption equation employed by Dr. Sunding), ¶32 (describing flawed avidity adjustment based on annual fishing frequency), and therefore should have been apparent to Dr. Pleus when he chose to rely on Dr. Sunding's data for his non-tribal scenario.

PL. MOTION EXCLUDE EXPERT TESTIMONY BY RICHARD C. PLEUS (2:16-cv-00107-RAJ) – 4

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

In his June 1, 2022 Supplemental Report, Dr. Sunding purported to correct his erroneous fish consumption formula and presented revised fish consumption estimates[14]. In his June 7, 2022 Supplement to the Expert Report of Dr. Richard C. Pleus,[15] Dr Pleus presented updated risk values based on Dr. Sunding's corrected estimates. Because both Dr. Sunding's Supplemental Report and the Pleus Supplement should be stricken for the reasons set forth in Plaintiff's separate Motions to Strike each of them, Dr. Pleus' updated risk values and opinions expressed in the Pleus Supplement should be excluded. Moreover, even if those supplemental reports were not struck, because Dr. Sunding corrected his estimates only with respect to his fish consumption formula, his "corrected" estimates continue to be unreliable because of their reliance on a 10-week period in 1997 and because of Dr. Sunding's misguided avidity adjustment. Dr. Pleus' use of this unreliable data renders unreliable the risk values and opinions expressed in the Pleus Supplement, and that testimony should therefore be excluded.

**B.   Dr. Pleus Employed Unreliable Statistical Methods in Calculating His Non-Tribal Scenario.**

In his non-tribal scenario, Dr. Pleus expresses certain opinions regarding the extent of health risks to non-tribal LDW anglers. Dr. Pleus bases his opinions on a probabilistic risk assessment he performed, critical inputs to which were the fish consumption estimates calculated by Dr. Sunding. In his analysis, Dr. Pleus employed two inappropriate statistical techniques – use of median values rather than mean or decile values, and use of the lognormal

---

[14] Gotto Decl., Ex. F, Supplemental Report of David Sunding, dated June 1, 2022.
[15] Gotto Decl., Ex. B, Supplement to the Expert Report of Dr. Richard C. Pleus, dated June 7, 2022.

PL. MOTION EXCLUDE EXPERT TESTIMONY BY RICHARD C. PLEUS (2:16-cv-00107-RAJ) – 5

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

distribution -- that had the effect of substantially understating risk.[16] As a result, his risk assessment is unreliable and his related testimony should be excluded.

Dr. Pleus used the fish consumption rates provided by Dr. Sunding for resident benthic and pelagic fish and for shellfish. These data are summarized in decile form on Table 5-2 in the Pleus Report.[17] Dr. Sunding's corrected data is similarly summarized on Table C-1 in the Sunding Supplemental Report.[18] In his report, Dr. Pleus noted that the data are "significantly right-skewed."[19] By this he meant that "a small share of respondents consumed significantly more than the remainder of the population."[20] Because the mean ingestion rate exceeded the 80th percentile for all fish types, Dr. Pleus asserted that "use of an average fish ingestion rate to the exposure calculations significantly overestimates the exposure to the "median" (i.e. 50th percentile) angler that consumes their catch."[21]. To avoid this "overexposure to the median angler," Dr. Pleus ignored the mean and decile values reported by Dr. Sunding and used instead the median values in modeling risk.

But by using median values, Dr. Pleus effectively ignored the high consumption levels Dr. Sunding reported for the high decile groups. This makes no sense, because those high consumers are the ones at greatest risk. Given the right-skewing of the data that he commented on, Dr. Pleus' method of using median values to model was bound to understate the risk to

---

[16] Gotto Decl., Ex. D, Expert Rebuttal Report of Charles D. Cowan, Ph.D. 02/14/22 ("Cowan Reb. I") at ¶¶ 107-125; Gotto Decl., Ex. E, Expert Rebuttal Report of Charles D. Cowan, Ph.D. 07/12/22 ("Cowan Reb. II") at ¶¶ 48-50.
[17] Gotto Decl., Ex. A, Expert Report of Dr. Richard C. Pleus dated 11/21/21, at p. 49.
[18] Gotto Decl., Ex. F, Supplemental Report of David Sunding, dated June 1, 2022, at p. 8.
[19] Gotto Decl., Ex. A, Expert Report of Dr. Richard C. Pleus dated 11/21/21., at p. 50.
[20] *Id.* at 49.
[21] *Id.*

PL. MOTION EXCLUDE EXPERT TESTIMONY BY RICHARD C. PLEUS (2:16-cv-00107-RAJ) – 6

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING
& SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

consumers at the upper end of the distribution (the extent of that understatement is depicted in the chart on Page 10 below).

Dr. Pleus' second inappropriate statistical technique – use of the lognormal distribution for his modeling – compounded this understatement of risk. The lognormal distribution is a statistical distribution that uses the logarithmic values of the underlying data. The lognormal distribution was not a good fit for Dr. Sunding's data.[22] The degree of the mis-fitting is demonstrated by the divergence between Dr. Sunding's actual values and Dr. Pleus' plotted curve in the chart on Page 10 below. Although the EPA guidance that Dr. Pleus claims to have followed stresses the importance of a goodness of fit analysis when selecting a probability distribution such as the lognormal distribution,[23] Dr. Pleus appears to have conducted no such analysis. This alone renders his conclusions unreliable.

Dr. Cowan provided the following chart,[24] which compares the levels of consumption modeled by Dr. Pleus' median/lognormal method to that described by a well-fitting regression curve applied to Dr. Sunding's decile data. This chart illustrates the extreme degree of understatement of consumption (and therefore risk) in the upper 25th percentile ignored by Dr. Pleus. The green curve reflects Dr. Sunding's actual decile values of grams of fish consumption, the orange is Dr. Pleus' curve resulting from his use of median values and the lognormal distribution, and the shaded area is the levels of high consumption (and therefore

---

[22] Gotto Decl., Ex. D, Expert Rebuttal Report of Charles D. Cowan, Ph.D. 02/14/22 ("Cowan Reb. I") at ¶ 108.

[23] Gotto Decl., Ex. G U.S. EPA, 2001. Risk Assessment Guidance for Superfund: Volume III - Part A, Process for Conducting Probabilistic Risk Assessment, at B-31-B-34. This EPA publication is listed on the Pleus Rep. at 9 as guidance that Dr. Pleus applied in his analysis.

[24] Gotto Decl., Ex. D, Expert Rebuttal Report of Charles D. Cowan, Ph.D. 02/14/22 ("Cowan Reb. I"), at 44.

PL. MOTION EXCLUDE EXPERT TESTIMONY BY RICHARD C. PLEUS (2:16-cv-00107-RAJ) – 7

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

risk) ignored by Dr. Pleus:



Dr. Pleus' ignoring of the risk reflected in the tail (*i.e.*, the high end) of the distribution of Dr. Sunding's data is counter to EPA guidance that Dr. Pleus claims to have followed. In his November 2021 Report[25], Dr. Pleus states he followed the guidance of several EPA publications, including "U.S. EPA, 2001. Risk Assessment Guidance for Superfund: Volume III - Part A, Process for Conducting Probabilistic Risk Assessment".[26] In that publication at Page B-34, the EPA stated:

---

[25] Gotto Decl., Ex. A, Expert Report of Dr. Richard C. Pleus dated 11/21/21, at p. 9
[26] U.S. EPA, 2001. Risk Assessment Guidance for Superfund: Volume III - Part A, Process for Conducting Probabilistic Risk Assessment

PL. MOTION EXCLUDE EXPERT TESTIMONY BY RICHARD C. PLEUS (2:16-cv-00107-RAJ) – 8

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

> The tails of a distribution (e.g., < 5th and > 95th percentiles) for an input variable are often of greatest interest when characterizing variability in risk. Distributions fit to data may not characterize the tails of the distribution in a way that represents the target population. In general, the importance of uncertainty in the fit of the tails of particular distributions should be determined on a site-specific basis. ***For exposure variables in the numerator of the risk equation, the upper tail is of greatest concern.*** (emphasis supplied).[27]

Dr. Pleus did not follow this guidance, he ignored it. Rather than evaluating the risk exposure of the high consumers in the tail of the distribution, Dr. Pleus adopted a technique focused on the median consumers (i.e., those in the middle of the distribution). But because consumption is concentrated in the high end of the distribution, so is risk, hence the EPA's guidance above.

An example of Dr. Pleus' understatement of consumption (and therefore risk) among high consumers is his 95th percentile benthic fish consumption rate of 3.35 grams. Dr. Sunding's corresponding estimate (which as noted above is itself likely understated as a result of its improper avidity bias), is 18.64 grams.[28] Dr. Pleus does not explain or even comment on this substantial discrepancy.

Dr. Pleus took unreliable data that likely understated consumption and applied to it inappropriate statistical techniques that further greatly understated consumption (and therefore risk). His non-tribal scenario is therefore completely unreliable and all testimony related to it should be excluded.

**C.      Dr. Pleus' Tribal Scenario Is Based on Unreliable Data.**

Dr. Pleus' tribal scenario portion of his HHRA is based on selected data from a 2000 Fish Consumption Survey of the Suquamish Indian Tribe of the Port Madison Indian Reservation, Puget Sound Region ("Suquamish Study").[29] Dr. Pleus acknowledges that the Study does not "represent ingestion patterns specific to the LDW."[30] In fact, the Suquamish

---

[27] *Id.*, at B-34.
[28] Gotto Decl., Ex. D, Expert Rebuttal Report of Charles D. Cowan, Ph.D. 02/14/22 ("Cowan Reb. I") at ¶ 147.
[29] Gotto Decl., Ex. H, The Suquamish Tribe 2000
[30] Gotto Decl., Ex. A, Expert Report of Dr. Richard C. Pleus dated 11/21/21, at p. 49.

PL. MOTION EXCLUDE EXPERT TESTIMONY BY RICHARD C. PLEUS (2:16-cv-00107-RAJ) – 9

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

Study is so anomalous that Dr. Pleus selects only a tiny portion of the data from it. Dr. Pleus chooses to ignore a 1996 study of the Tulalip tribe, even though the EPA directed that the Tulalip study be used in the 2007 LDW human health risk assessment. Dr. Pleus offers no credible explanation for his selection of data on which to base his tribal scenario. His resulting tribal scenario is unreliable and his tribal scenario opinions should be excluded.

Dr. Pleus notes that "[n]o data address tribal fish consumption specifically from the LDW."[31] The Suquamish Study that Dr. Pleus chose to use included fish harvested throughout Puget Sound. Dr. Pleus considered only fish that Suquamish tribal members reported to have harvested and consumed from Elliott Bay and the Puget Sound north of Vashon Island to Whidbey Island, an area that includes (but is much larger than) the LDW.[32] Dr. Pleus claims that because "this broad area of fishing encompasses areas outside the LDW, the fish consumption rates are an overestimate of tribal ingestion patterns specific to the LDW."[33]

Dr. Pleus' "overestimate" assertion is a *non sequitur*. Because he has no data on tribal fishing specific to the LDW, he has no basis to reach a conclusion regarding whether fish consumption rates of a much larger area that includes the LDW would be higher or lower than that specific to the LDW.

An even more serious flaw with Dr. Pleus' approach is that he assumes that tribal fishing on the LDW, which would of course be limited to the species located in the LDW, would result in catches of the LDW resident species at rates equivalent to the rates at which those species are caught in the much larger area of the Suquamish Study, which larger area offers a far different mix of fish and shellfish for potential catch and consumption. The mismatch between the area of the Suquamish Study and the LDW is underscored by the extent to which Dr. Pleus excluded or recategorized species reported in the Suquamish Study for his tribal scenario.[34]

---

[31] *Id.*, at p. 50.
[32] *Id.*
[33] *Id.*
[34] Gotto Decl., Ex. I, Expert Report of Dr. Richard C. Pleus, Appendix at D-5-D-6.

PL. MOTION EXCLUDE EXPERT TESTIMONY BY RICHARD C. PLEUS (2:16-cv-00107-RAJ) – 10

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

In fact, of the 55 species as to which consumption rates are reported in the Suquamish Study,[35] Dr. Pleus uses only five (herring, perch, bull cod, red rock crab and Dungeness crab) for his tribal scenario.[36] Dr. Pleus' own conclusion that over 90% of the species reported in the Suquamish Study should be ignored in modeling LDW tribal fishing speaks volumes as to the inapplicability of the Suquamish Study to any evaluation of LDW tribal fishing.

The flaw in Dr. Pleus' decision to rely entirely on the Suquamish Study and to ignore the Tulalip study is further evidenced by the EPA's 2007 Framework for Selecting and Using Tribal Fish and Shellfish Consumption Rates for Risk-Based Decision Making at CERCLA and RCRA Cleanup Sites in Puget Sound and the Strait of Georgia,[37] which states at Page 13:

> "As part of the Framework, Region 10 recommends, as a policy decision, that for CERCLA and RCRA sites in Puget Sound or the Strait of Georgia with extensive intertidal habitat, the consumption rate derived by EPA from data collected by the Suquamish Tribe represents a sustainable consumption rate suitable for estimating site-related risks. Again, as a policy decision, for sites in Puget Sound and the Strait of Georgia that lack extensive intertidal habitat, the consumption rate derived by EPA from data from the Tulalip Tribes represents a sustainable consumption rate."

As explained by Plaintiff's expert Tad Deshler,[38] EPA directed the Lower Duwamish Waterway Group ("LDWG") to utilize consumption rates from the Tulalip study as the "principal rate to compute health protective tribal seafood consumptions risks," because the LDW does not contain extensive intertidal habitat.[39]

Dr. Pleus does not discuss the EPA Framework and chooses to disregard the Tulalip study data as "not specific to the LDW."[40] But Dr. Pleus himself acknowledges that the Suquamish study is also not specific to the LDW. He offers no explanation as to his decision to

---

[35] Gotto Decl., Ex. H, The Suquamish Tribe 2000, at 29, Table T-3.
[35] Decl., Ex. I, Expert Report of Dr. Richard C. Pleus, Appendix at D-5-D-6.
[37] Gotto Decl., Ex. J, EPA's 2007 Framework for Selecting and Using Fish and Shellfish Consumption Rates for Risk-Based Decision Making at CERCLA and RCRA Cleanup Sites in Puget Sound and the Strait of Georgia.
[38] Gotto Decl., Ex. K, Rebuttal Report on Behalf of City of Seattle, by Tad Deshler, at 7-8;
[39] Gotto Decl., Ex. L, 2007 Lower Duwamish Waterway Remedial Investigation, Baseline Human Health Risk Assessment Final.
[40] Gotto Decl., Ex. A, Expert Report of Dr. Richard C. Pleus, dated 11/21/21, at p. 21.

PL. MOTION EXCLUDE EXPERT TESTIMONY BY RICHARD C. PLEUS (2:16-cv-00107-RAJ) – 11

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

use one non-LDW specific study over another. This is a glaring omission, particularly in light of the EPA guidance favoring the Tulalip study discussed above.

## V. CONCLUSION

Dr. Pleus' opinions are neither supported by adequate data nor based on reliable methods. His non-tribal scenario is based on unreliable statistical techniques applied to Dr. Sunding's limited and unreliable data drawn from a 10-week period in 1997. Dr. Pleus' tribal scenario is based on a fraction of the data contained in a study that has little if any value for estimating LDW tribal fishing, and ignores a different study that has been favored by the EPA. Dr. Pleus' opinions are unreliable and they should be excluded in their entirety.

DATED this 11th day of August, 2022.

KELLER ROHRBACK L.L.P.

By: *s/ Lynn L. Sarko*
By: *s/ Michael D. Woerner*
By: *s/ Daniel P. Mensher*
By: *s/ Alison S. Gaffney*
By: *s/ Adele A. Daniel*
    Lynn L. Sarko, WSBA #16569
    Michael D. Woerner, WSBA #15452
    Daniel P. Mensher, WSBA #47719
    Alison S. Gaffney, WSBA #45565
    Adele A. Daniel, WSBA #53315
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101
    Telephone: (206) 623-1900
    Email: lsarko@kellerrohrback.com
    Email: mwoerner@kellerrohrback.com
    Email: dmensher@kellerrohrback.com
    Email: agaffney@kellerrohrback.com
    Email: adaniel@kellerrohrback.com

PL. MOTION EXCLUDE EXPERT TESTIMONY BY RICHARD C. PLEUS (2:16-cv-00107-RAJ) – 12

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

By: *s/ Gary A. Gotto*
  Gary A. Gotto, Admitted *Pro Hac Vice*
  KELLER ROHRBACK L.L.P.
  3101 North Central Avenue, Suite 1400
  Phoenix, Arizona 85012
  Telephone (602) 248-0088
  Email: ggotto@kellerrohrback.com

By: *s/ Yoona Park*
  Yoona Park, Admitted *Pro Hac Vice*
  KELLER ROHRBACK L.L.P.
  805 SW Broadway, Suite 2750
  Portland, OR 97205
  Telephone (206) 623-1900
  Email: ypark@kellerrohrback.com

By: *s/ Steve D. Larson*
By: *s/ Jennifer S. Wagner*
By: *s/ Keil M. Mueller*
By: *s/ Keith A. Ketterling*
By: *s/ Elizabeth Bailey*
By: *s/ Madeleine C. Homes*
  Steve D. Larson, *Pro Hac Vice*
  Jennifer S. Wagner, *Pro Hac Vice*
  Keil M. Mueller, *Pro Hac Vice*
  Keith A. Ketterling, *Pro Hac Vice*
  Elizabeth K. Bailey, *Pro Hac Vice*
  Madeleine C. Holmes, *Pro Hac Vice*
  STOLL STOLL BERNE LOKTING &
  SHLACHER P.C.
  209 SW Oak Street, Suite 500
  Portland, OR 97204
  Telephone: (503) 227-1600
  Email: slarson@stollberne.com
  Email: jwagner@stollberne.com
  Email: kmueller@stollberne.com
  Email: kketterling@stollberne.com
  Email: ebailey@stollberne.com
  Email: mholmes@stollberne.com

PL. MOTION EXCLUDE EXPERT TESTIMONY BY RICHARD C. PLEUS (2:16-cv-00107-RAJ) – 13

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING
& SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

By: *s/ Ann Davison*
By: *s/ Laura B. Wishik*
    Ann Davison, WSBA #35776
    Laura B. Wishik, WSBA #16682
    OFFICE OF THE CITY ATTORNEY
    701 Fifth Avenue, Suite 2010
    Seattle, WA 98104-7097
    Telephone: (206) 684-8200
    Email: Ann.Davison@seattle.gov
    Email: Laura.Wishik@seattle.gov

**Attorneys for Plaintiff City of Seattle**

PL. MOTION EXCLUDE EXPERT TESTIMONY BY RICHARD C. PLEUS (2:16-cv-00107-RAJ) – 14

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600