The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CITY OF SEATTLE,<br>Plaintiff,<br>v.<br>MONSANTO COMPANY, et al.,<br>Defendants. | No. 2:16-cv-00107-RAJ<br>**PLAINTIFF'S MOTION TO EXCLUDE PROPOSED EXPERT TESTIMONY BY DAVID L. SUNDING**<br>NOTE ON MOTION CALENDAR: August 26, 2022<br>ORAL ARGUMENT REQUESTED |

PL. MOTION EXCLUDE EXPERT TESTIMONY BY DAVID L. SUNDING (2:16-cv-00107-RAJ)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

**TABLE OF CONTENTS**

I. INTRODUCTION ... 1

II. BACKGROUND ... 1

A. The City's case against Monsanto defendants ... 1

B. David L. Sundings's Reports ... 2

III. LEGAL STANDARD FOR THE ADMISSIBILITY OF EXPERT TESTIMONY ... 2

IV. ARGUMENT ... 4

A. A. Dr. Sunding Lacks Sufficient Data to Express a Reliable Opinion on Any Relevant Matter. ... 4

B. Dr. Sunding's Methods and Conclusions Are Unreliable ... 6

1. Dr. Sunding's Avidity Adjustment Is Deeply Flawed. ... 6

2. The Chao Estimator Cannot Be Reliably Employed Here. ... 8

3. Dr. Sunding's Opinion Regarding the Effect of Fish Consumption Advisories Is Contrary to His Data. ... 9

V. CONCLUSION ... 12

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Pomona v. SQM N. Am. Corp.*,
750 F.3d 1036 (9th Cir. 2014) ....................3

*Cypress Ins. Co. v. SK Hynix Am., Inc.*,
No. 2:17-CV-00467-RAJ, 2019 WL 634684 (W.D. Wash. Feb. 14, 2019)....................3

*United States v. Flores*,
901 F.3d 1150 (9th Cir. 2018) ....................3

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010), *as amended* (Apr. 27, 2010) ....................3

**Other Authorities**

Federal Rule of Evidence 702 .................... 1, 2, 3

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

# I. INTRODUCTION

Under Federal Rule of Evidence 702, Plaintiff City of Seattle moves to exclude the testimony of Defendants' expert David L. Sunding, Ph.D. Dr. Sunding's opinions are irrelevant to the issues in the litigation, they would confuse the jury, and are based on insufficient data and on unreliable methodologies. This Motion is further supported by both the Omnibus Declaration of Michael Woerner in Support of Plaintiff's Motions to Exclude Proposed Expert Testimony and the Declaration of Gary A. Gotto in Support of Plaintiff's Motion to Exclude Proposed Expert Testimony by David L. Sunding, filed concurrently. The parties met and conferred to discuss this motion but could not reach agreement.[1]

# II. BACKGROUND

## A. The City's case against Monsanto defendants

The City sued the Monsanto defendants for a public nuisance[2] created by Monsanto's PCB (polychlorinated biphenyl) chemicals that are contaminating the Lower Duwamish Waterway (LDW), the LDW drainage area, and the City's stormwater conveyance system.[3] The Washington State Department of Health (DOH) has determined that, due to PCB contamination, it is unsafe for people to eat *any* amount of fish or shellfish that reside in the LDW.[4] Likewise, the Environmental Protection Agency (EPA) identified PCBs in resident seafood as a risk to human health, and as presenting the greatest risk out of all contaminants in the LDW to people who consume resident fish and crabs.[5] Monsanto's PCBs have impaired the public's free use and comfortable enjoyment of the Lower Duwamish Waterway, including the ability to harvest

---

[1] Omnibus Decl. of Michael Woerner in Supp. Of Pl.'s Mot. To Exclude Proposed Expert Test. ("Omnibus Decl.") ¶ 8.

[2] The City has dropped its negligence claim. *See* Minute Order Granting Stipulated Mot. for Leave to Dismiss Negligence Claim and Amend Compl., Dkt. # 265.

[3] *See* Pl.'s Second Am. Compl., Dkt. # 267.

[4] Omnibus Decl., Ex. A, *Lower Duwamish Waterway Site: Updated Fish Consumption Advisory*, Wash. State Dep't of Health, at 9 (Sept. 7, 2005).

[5] *See* Omnibus Decl., Ex. B, Excerpts from *ROD*; Omnibus Decl., Ex. C, *EPA issues final Explanation of Significant Differences for cPAHs in the Lower Duwamish Waterway Superfund Site*, U.S. EPA, at 2 (Oct. 2021).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

and safely consume resident seafood, and have caused people to have a reasonable fear of doing so—that impairment is the public nuisance asserted here.[6]

**B. David L. Sunding's Reports.**

This motion is directed at Monsanto expert David L. Sunding, an agricultural economist who prepared an expert report dated November 22, 2021,[7] ("Sunding Rep."). Dr. Sunding offers opinions estimating the number of recreational anglers on the LDW at certain times, the levels of consumption of resident species of fish caught in the LDW, and the effects of fish consumption advisories. Monsanto has also served a Rebuttal Report prepared by Dr. Sunding dated February 14, 2022,[8] ("Sunding Reb."). Dr. Sunding's opinions therein rely on his November 2021 fish consumption estimates.

At Dr. Sunding's deposition on April 27, 2022, it became clear that certain of his calculations and methodologies were severely flawed. Dr. Sunding served a Supplemental Report dated June 1, 2022,[9] ("Sunding Supp"), that attempted to address certain of those flaws. Plaintiff has separately moved to strike that Supplemental Report because it is an untimely attempt by Dr. Sunding to correct errors and adopt new methods. Even if the Supplemental Report is not stricken, the opinions expressed by Dr. Sunding therein, in his November 22, 2021 report, and the opinions in his Rebuttal Report that rely on his fish consumption estimates, should be excluded for the reasons explained herein.

## III. LEGAL STANDARD FOR THE ADMISSIBILITY OF EXPERT TESTIMONY

Under Federal Rule of Evidence 702, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the

[6] *Id*; *see also* Omnibus Decl., Ex. A.

[7] Decl. of Gary Gotto in Supp. of Pl.'s Mot. to Exclude Proposed Expert Testimony of David L. Sunding ("Gotto Decl."), Ex. A, Expert Report of David L. Sunding, Ph.D., dated 11/22/21.

[8] Gotto Decl., Ex. B, Expert Rebuttal Report of David L. Sunding, Ph.D., dated 2/14/22.

[9] Gotto Decl., Ex. C, Supplemental Report of David Sunding, Ph.D., dated 6/1/22.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

> testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In the case of jury trials, "*Daubert* is meant to protect *juries* from being swayed by dubious scientific testimony." *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018). "In evaluating proffered expert testimony, the trial court is a gatekeeper…." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (quotation omitted). The court should therefore close the gate to unreliable opinions. *Id.* at 1044.

Under Rule 702(a), expert testimony must be relevant; "[w]hat is relevant depends on what must be proved." *Primiano v. Cook*, 598 F.3d 558, 567 (9th Cir. 2010), *as amended* (Apr. 27, 2010). Expert testimony must help the trier of fact but cannot "improperly evade[] the province of the jury." *Cypress Ins. Co. v. SK Hynix Am., Inc.*, No. 2:17-CV-00467-RAJ, 2019 WL 634684, at *3 (W.D. Wash. Feb. 14, 2019).

Under 702(c), a "court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance." *City of Pomona*, 750 F.3d at 1044. The question is whether an expert's methodology can be "challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability." *Id.* at 1046 (quoting Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

## IV. ARGUMENT

### A. Dr. Sunding Lacks Sufficient Data to Express a Reliable Opinion on Any Relevant Matter.

Dr. Sunding's angler population estimates are based entirely on two studies, the "Mayfield Study,"[10] conducted during a 10-week period in June-August, 1997, and the "Windward Study"[11] conducted in 2015-16. Neither study was designed to estimate the number of anglers on the LDW, and neither contains any such estimate.[12] Dr. Sunding's fish consumption estimates are calculated using exclusively data from the Mayfield Study.[13]

The Mayfield Study provided Dr. Sunding with no information regarding persons who fished the LDW outside of its 10-week study period, as acknowledged by Dr. Sunding in his deposition.[14] [15] As a result, the Mayfield data is wholly inadequate to support any reliable, relevant opinion. To the extent the questions of size of angling population or fish consumption are relevant, it is current, year-round populations and consumption by those who fish at any time during the year that matter. A quarter-century old 10-week snapshot, unless credibly shown to be representative of a far broader period, is irrelevant and potentially misleading.

But a non-representative snapshot is the extent of Dr. Sunding's data.[16] If that snapshot was reliable (which it is not for the reasons discussed in Section B1 below), at most it would

[10]Gotto Decl., Ex. D, "Survey of fish consumption patterns of King County (Washington) recreational anglers", ("Mayfield Study"), by Mayfield, Robinson and Simmonds, 1997.

[11]Gotto Decl., Ex. E, Lower Duwamish Waterway Fishers Study Data Report Final ("Windward Study'), 12/23/16.

[12]The Windward Study specifically cautioned against the use of its findings to estimate the number of LDW anglers; its authors stated, "This study was not designed to estimate the total number of fishers on the Duwamish; it is not possible to know how accurately the sample of the population that was surveyed represents the whole Duwamish fisher population." Ex. E at 78. Undaunted, Dr. Sunding choose to use the study to make such an estimate.

[13]Gotto Decl., Ex. A, Expert Report of David L. Sunding, Ph.D., dated 11/22/21, at ¶¶24-30.

[14]Gotto Decl., Ex. F, 04/27/22 Sunding Dep. 181:8-182:16.

[15]Dr. Sunding also acknowledged that he had conducted no comparison of the numbers of non-summer anglers in 1997 and 2015. *Id.* at 181:3 – 7.

[16]Dr. Sunding has no basis to assert that the 10-week snapshot is representative of all of 1997 or of any other time period, and in his deposition he made it clear that he makes no such assertion. *Id.*at 181:21-182:16.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

permit a comparison of summer anglers in 1997 to another cohort (such as Dr. Sunding's 2015 summer angler estimate), which would leave unaddressed the question of a comparison of the total year-round angling population. Nonetheless, Dr. Sunding states that after comparing his 1997 and 2015 angler population estimates he "does not find evidence that fish advisories reduced the LDW resident species angling population".[17] This opinion could easily mislead the jury into believing that Dr. Sunding has somehow conducted a year-round population comparison, which he has not. If it is limited to comparison of summer angler populations, it is irrelevant to any issue in the case.

Dr. Sunding's fish consumption estimates also fail because they are based exclusively on the Mayfield Study 10-week 1997 data.[18] Dr. Sunding assumed "that the species anglers catch on the survey day (by the time of the survey) are representative of what they catch and consume over the year and that reported meals can be divided equally among species caught".[19] But he provides no support for the reasonableness of those assumptions. Moreover, Dr. Sunding's assumptions apply only with respect to the persons who were interviewed as part of the Mayfield Study. In his deposition, he acknowledged that he had no basis on which to conclude that the consumption patterns of Mayfield Study interviewees were representative of people who fished the LDW during the entirety of 1997.[20] This acknowledgement effectively concedes that Dr. Sunding has no basis on which to estimate LDW fish consumption patterns for the (unknown and un-estimated) number of anglers who fished the LDW outside the 10-week window, including current LDW anglers. If Dr. Sunding's fish consumption estimates are

---

[17] Gotto Decl., Ex. C, Supplemental Report of David Sunding, Ph.D., dated 6/1/22, Appendix B.

[18] Gotto Decl., Ex. F, 04/27/22 Sunding Dep. 181:22-182:2.

[19] Gotto Decl., Ex. A, Expert Report of David L. Sunding, Ph.D., dated 11/22/21, at ¶60.

[20] Gotto Decl., Ex. F, 04/27/22 Sunding Dep. 181:21-182:16.



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

limited to the Mayfield interviewees or the 10-week interview period, as they must be, they are irrelevant and potentially misleading, as they pertain only to a non-representative subset of LDW anglers from 25 years ago. Accordingly, Dr. Sunding's fish consumption estimates must be excluded.

**B. Dr. Sunding's Methods and Conclusions Are Unreliable.**

1. Dr. Sunding's Avidity Adjustment Is Deeply Flawed.

For his fish consumption estimates, Dr. Sunding weighted the Mayfield survey responses by the inverse of the respondents' reported annual fishing frequency.[21] In his deposition, Dr. Sunding explained the reason for this weighting: "The reason for the adjustment is if one goes out and does an intercept survey . . . you're most likely to run into somebody who fishes a lot, right, just because they're present the most often".[22] Thus, the stated purpose of Dr. Sunding's avidity adjustment was to reflect the fact that certain interviewees had a greater probability of being interviewed than others, based on their respective time fishing. But Dr. Sunding's adjustment method is unreliable for at least two reasons. First, Dr. Sunding ignores the amount of time a person fished per day. Someone who fished 8 hours per day was on the LDW much longer and was, of course, much more likely to be interviewed than someone who fished one hour per day. Dr. Sunding ignored this.[23]

Second, Dr. Sunding adjusted based on year-round fishing activity, when the Mayfield Study was conducted over only 30 survey days during 10 summer weeks in 1997.[24] Thus, the likelihood that someone would be interviewed is unaffected by the amount of time they fished

[21]Gotto Decl., Ex. A, Expert Report of David L. Sunding, Ph.D., dated 11/22/21, at ¶32.
[22]Gotto Decl., Ex. F, 04/27/22 Sunding Dep. 146:19-25.
[23]*Id.* at 153:13-18.
[24]Gotto Decl., Ex. A, Expert Report of David L. Sunding, Ph.D., dated 11/22/21, at ¶32.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

outside of those 30 days. By failing to fit the adjustment to the relevant time period, Dr. Sunding created the potential for gross mis-weighting of the survey responses. And because those who fish most frequently year-round are likely the greatest consumers of fish,[25] this mis-weighting likely resulted in a substantial underestimate of fish consumption.

In his deposition, the following hypothetical was posed to Dr. Sunding: assume Mayfield Interviewee A reported fishing 52 Tuesdays in 1997, while Mayfield Interviewee B reported fishing only the ten Tuesdays of the Mayfield Study period in 1997.[26] Dr. Sunding conceded that he would have weighted Interviewee A's responses by 1/52 and Interviewee B's responses by 1/10, even though they would have had the same probability of having been interviewed.[27] This hypothetical, which highlights the potential for Dr. Sunding to grossly mis-weight Mayfield respondents relative to one another, makes the unreliability of his fish consumption estimates clear.[28]

The unreliability of Dr. Sunding's adjustment is compounded by the fact that the consumption estimates are likely biased significantly downward because of the probability that those who fish year-round are likely the greatest consumers of fish. On Table 4 of his report, Dr. Sunding summarizes the fishing frequency of Mayfield respondents. Fourteen respondents reported fishing over 50 times per year. Those respondents survey cards, along with a summary thereof, are attached to the Gotto Decl. as Ex. H; on those cards, the 14 respondents report

[25]This point is made by the EPA publication cited by Dr. Sunding in support of his avidity adjustment. EPA Guidance for Conducting Fish Consumption Surveys, Gotto Decl. Ex. G, at 42.

[26]Survey card 1654 included in Gotto Decl. Ex. H reports exactly the once per week year-round fishing frequency used in the hypothetical.

[27]Gotto Decl., Ex. F, 04/27/22 Sunding Dep. 156:8-157:20.

[28]Dr. Sunding's mis-weighting is even more severe than the hypothetical indicates. The Mayfield survey was not conducted every weekday but instead on one randomly selected weekday per week. Gotto Decl. Ex. D at 605. The proper weighting for the summer-only angler in the hypothetical would be one over the number of Tuesdays on which surveys were actually conducted.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

eating their catch of resident species an average of 39.7 times per year,[29] while Dr. Sunding reports an average consumption rate of six meals per year.[30] The 14 most frequent annual fishers received an average weighting of approximately 1/90. All other respondents received an average weighting from Dr. Sunding of 1/9.7.[31] Simply put, Dr. Sunding underweighted the most frequent anglers, who had over six times the consumption rate of all anglers, by a factor of nine. For this reason alone, his fish consumption estimates must be excluded.

2. The Chao Estimator Cannot Be Reliably Employed Here.

The Chao estimator is a statistical technique that Dr. Sunding employed to estimate the size of the LDW angler populations using the Mayfield and Windward data. As Plaintiff's statistics expert Charles Cowan has explained, the Chao estimator is a "capture-recapture" method to estimate the size of a population. There are many such methods which can be applied in various circumstances.[32] The Chao estimator cannot be reliably applied to either the Mayfield, nor Windward data sets for several reasons, set forth below.[33]

First, as Dr. Cowan states, all capture-recapture techniques require that the population be stable (no change in size during the observation period) and stationary (the population does not move in and out of the study area).[34] Neither condition is satisfied here. The number and identity of people fishing the LDW from time to time during the study periods for each of the

[29] Gotto Decl., Ex. H, Tables H.1.

[30] Gotto Decl., Ex. A, Expert Report of David L. Sunding, Ph.D., dated 11/22/21, at ¶56.

[31] Gotto Decl., Ex. H, Tables X.H.

[32] Gotto Decl., Ex. I, Expert Rebuttal Report of Charles D. Cowan, Ph.D., dated 02/14/22, ("Cowan Reb. I"), at 5-14.

[33] Even if the Chao estimator could be applied to the Mayfield data, it is undisputed that Dr. Sunding's November 2021 calculation was botched, resulting in an estimate of 344, 178 less than the estimate of 522 that would have resulted if Dr. Sunding had performed the calculation correctly. Gotto Decl. Ex. L, 07/15/22 Sunding Dep. 212:7-213:25.

[34] Gotto Decl., Ex. I, Expert Rebuttal Report of Charles D. Cowan, Ph.D., dated 02/14/22, ("Cowan Reb. I"), at 12.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

studies can change, potentially dramatically, which can lead to a severe underestimate of population size using a capture-recapture technique such as the Chao estimator.[35]

Second, the Mayfield and Windward data were gathered at varying locations at varying times on varying days. Neither the locations, times nor dates are claimed to be representative of overall LDW fishing activity. The Chao estimator cannot be reliably applied as a result, and it has the potential to severely underestimate the angler population.[36]

Dr. Sunding's estimates of angler population are based entirely on the Chao estimator, which is not a reliable methodology to apply to either the Mayfield or the Windward data. Dr. Sunding's population estimates and all opinions based on those estimates should therefore be excluded.

3. Dr. Sunding's Opinion Regarding the Effect of Fish Consumption Advisories Is Contrary to His Data.

In his November 2021 Report, Dr. Sunding estimated that the number of summer LDW anglers decreased from 344 in 1997 to 254 in 2015.[37] Based on Washington State fishing license data and Pacific regional saltwater angling data, Dr. Sunding determined a general decline in applicable angling activity of 1.79% per year of that period.[38] Based on his original 1997 estimate of 344 anglers, he calculated a 248 "but-for" estimate for 2015,[39] meaning that in the absence of fish consumption advisories, Dr. Sunding would have expected the 344 figure to drop to 248 in 2015 simply as a result of a general decline in angling activity. He concluded

---

35 *Id.* at 15-16.

36 *Id.* at 20-25. Additional reasons that the Chao estimator cannot be reliably used here are set forth at 25 – 36.

37 Gotto Decl., Ex. A, Expert Report of David L. Sunding, Ph.D., dated 11/22/21, at 23-24.

38 Dr. Sunding's use of Washington State and Pacific regional data flies in the face of his statement that "I determined that surveys from outside the LDW are not informative for angling behavior inside that region." Ex. A at ¶ 34. For this reason alone, his asserted general annual rate of decrease in fishing activity is unreliable and should be excluded.

39 Gotto Decl., Ex. A, Expert Report of David L. Sunding, Ph.D., dated 11/22/21, Table 7.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

that, "[b]ecause the but-for angler population is slightly *lower* than the actual angler population [*i.e.*, Dr. Sunding's 2015 estimate of 254], I do not find evidence that fish consumption advisories reduced the LDW resident species angling population."[40]

But Dr. Sunding's original 1997 estimate and 2015 "but-for" estimate were grossly understated. Dr. Sunding's corrected 1997 estimate is 522, and his corrected 2015 "but-for" estimate is 377.[41] His 2015 summer angler population is unchanged as 254, however. After correcting his calculation, Dr. Sunding now has a "but-for" expected 2015 population of 377 and an actual estimated population of 254. The decline in Dr. Sunding's estimates from 522 in 1997 to 254 in 2015 of 268 represents a decline of 3.92% per year, more than *twice* the 1.79% general rate of angling activity decline found by Dr. Sunding.[42] [43]

Nonetheless, Dr. Sunding doggedly clings to his opinion that he does "not find evidence that fish consumption advisories reduced the LDW resident species population." He attempts to justify this by switching to a new comparison methodology. Rather than comparing the 2015 "but-for" estimate to his 2015 actual estimate as he had done in his November report, Dr. Sunding instead now evaluates whether the 2015 "but-for" estimate falls within the 95% confidence interval of 152 - 406 that Dr. Sunding constructed around his 2015 actual estimate. Because the 377 falls within the confidence interval (it is 92.8% of the 406 upper bound of that confidence interval, and 148% of Dr. Sunding's actual estimate of 254), Dr. Sunding purports not to find evidence that the fish consumption advisories reduced LDW angling.

---

[40] *Id.* at ¶52 (emphasis in original).

[41] Gotto Decl., Ex. C, Supplemental Report of David Sunding, Ph.D., dated 6/1/22, at 6.

[42] Gotto Decl., Ex. K, Table A.

[43] Gotto Decl., Ex. L, 7/15/22 Sunding Dep. 258:20-23.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

Dr. Sunding's conclusion cannot be defended, whether as a matter of statistical analysis or common sense. The estimate-to-estimate method used by Dr. Sunding in November would yield a clear answer here: Dr. Sunding's 2015 actual estimate of 254 is far less than his 1997 estimate of 522, or the 377 that results from decreasing 522 by Dr. Sunding's general decline rate of 1.79% annually. Just as this comparison provided an answer for Dr. Sunding in November, it would provide an answer now. But the answer is not the one Dr. Sunding wanted, so Dr. Sunding abandoned his earlier method without explanation.

Nor did Dr. Sunding calculate a confidence interval around his 1997 estimate, as he had as part of his work related to his November 2021 report.[44] Dr. Cowan did calculate the confidence interval, it has upper and lower bounds of 405 – 706.[45] When those bounds are reduced by 1.79% annually through 2015 they become 293 and 510, respectively.[46] [47] Dr. Sunding's estimate of the actual 2015 summer angling population of 254 is substantially below the lower bounds of the adjusted confidence interval, providing strong evidence (assuming the reliability of Dr. Sunding's actual population estimates) that the summer angling activity declined from 1997 to 2015 at a rate far greater than the 1.79% general decline found by Dr. Sunding.

In his deposition, Dr. Sunding failed to justify his conclusion that because the 377 "but-for" estimate falls within his 2015 confidence interval, he can find no evidence that the fish consumption advisories suppressed LDW angling activity. He testified that the 377 "but-for" estimate is "not statistically different" from the 254 actual estimate because it falls within his 2015

[44] Gotto Decl., Ex. J, Expert Rebuttal Report of Charles D. Cowan, Ph.D., 07/12/22, ("Cowan Reb. II").

[45] *Id*. at 10.

[46] Gotto Decl., Ex. K, Tables B and C.

[47] Gotto Decl., Ex. M, 07/26/22 Cowan Dep. 271:15-272:24.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

confidence interval.[48] But he acknowledged that what the confidence interval means is that there is a 95% probability that the actual value (estimated by Dr. Sunding to be 254) falls somewhere within the interval.[49] He further acknowledged that not all values within the confidence interval are equally likely, and that outcomes near the point estimate (*i.e.*, 254) are "more likely than those on the tail".[50] Of course 377 is much closer to the upper bound of Dr. Sunding's confidence interval (406) than is it to his 254 point estimate. Dr. Sunding's testimony therefore confirms that it is *not likely* that the decline in LDW fishing activity that he reported is attributable to the general decline in fishing activity that he described.

Contrary to his stated conclusion, Dr. Sunding had substantial evidence of the effect of the fish consumption advisories. He estimated a decline in LDW fishing activity at a rate more than double the general decline in angling activity that he reported. His 377 "but-for" estimate was far closer to the upper bound of his 2015 confidence interval than it was to his 254 point estimate, indicating that the general decline in angling was not the explanation. This conclusion would have been confirmed had he calculated a confidence interval around his 1997 corrected estimate and brought its bounds forward at a 1.79% annual decrease. If Dr. Sunding truly believes that he "did not find evidence" of the effects of the fish consumption advisories, it is only because he failed to look for it, and he failed to acknowledge it when he was confronted with it. His opinion should be excluded.

## V. CONCLUSION

Dr. Sunding's opinions are neither supported by adequate data nor based on reliable methods. They should be excluded in their entirety.

---

[48] Gotto Decl., Ex. L, 07/15/22 Sunding Dep. 238:6-22.
[49] *Id.* at 247:9-25.
[50] *Id.* at 249:24-251:25.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING & SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

DATED this 11th day of August, 2022.

KELLER ROHRBACK L.L.P.

By: *s/ Lynn L. Sarko*
By: *s/ Michael D. Woerner*
By: *s/ Daniel P. Mensher*
By: *s/ Alison S. Gaffney*
By: *s/ Adele A. Daniel*
Lynn L. Sarko, WSBA #16569
Michael D. Woerner, WSBA #15452
Daniel P. Mensher, WSBA #47719
Alison S. Gaffney, WSBA #45565
Adele A. Daniel, WSBA #53315
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Email: lsarko@kellerrohrback.com
Email: mwoerner@kellerrohrback.com
Email: dmensher@kellerrohrback.com
Email: agaffney@kellerrohrback.com
Email: adaniel@kellerrohrback.com

By: *s/ Gary A. Gotto*
Gary A. Gotto, Admitted *Pro Hac Vice*
KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012
Telephone (602) 248-0088
Email: ggotto@kellerrohrback.com

By: *s/ Yoona Park*
Yoona Park, Admitted *Pro Hac Vice*
KELLER ROHRBACK L.L.P.
805 SW Broadway, Suite 2750
Portland, OR 97205
Telephone (206) 623-1900
Email: ypark@kellerrohrback.com

By: *s/ Steve D. Larson*
By: *s/ Jennifer S. Wagner*
By: *s/ Keil M. Mueller*
By: *s/ Keith A. Ketterling*
By: *s/ Elizabeth Bailey*
By: *s/ Madeleine C. Homes*

PL. MOTION EXCLUDE EXPERT TESTIMONY BY DAVID L. SUNDING (2:16-cv-00107-RAJ) – 13

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**STOLL STOLL BERNE LOKTING & SHLACHER P.C.**
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

Steve D. Larson, *Pro Hac Vice*
Jennifer S. Wagner, *Pro Hac Vice*
Keil M. Mueller, *Pro Hac Vice*
Keith A. Ketterling, *Pro Hac Vice*
Elizabeth K. Bailey, *Pro Hac Vice*
Madeleine C. Holmes, *Pro Hac Vice*
STOLL STOLL BERNE LOKTING &
SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Email: slarson@stollberne.com
Email: jwagner@stollberne.com
Email: kmueller@stollberne.com
Email: kketterling@stollberne.com
Email: ypark@stollberne.com
Email: ebailey@stollberne.com
Email: mholmes@stollberne.com

By: *s/ Ann Davison*
By: *s/ Laura B. Wishik*
   Ann Davison, WSBA #35776
   Laura B. Wishik, WSBA #16682
   OFFICE OF THE CITY ATTORNEY
   701 Fifth Avenue, Suite 2010
   Seattle, WA 98104-7097
   Telephone: (206) 684-8200
   Email: Ann.Davison@seattle.gov
   Email: Laura.Wishik@seattle.gov

***Attorneys for Plaintiff City of Seattle***

PL. MOTION EXCLUDE EXPERT TESTIMONY BY DAVID L. SUNDING (2:16-cv-00107-RAJ) – 14

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STOLL STOLL BERNE LOKTING
& SHLACHER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600