UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CITY OF SEATTLE,

          Plaintiff,

    v.

MONSANTO COMPANY, *et al.*,

          Defendants.

Case No. C16-107-RAJ-MLP

ORDER

### I.    INTRODUCTION

This matter is before the Court on Plaintiff City of Seattle's ("City") "Motion to Exclude Proposed Expert Testimony by Marc Rogoff" ("City's Motion"). (Pl.'s Mot. (dkt. # 601).) Under Federal Rule of Evidence 702, the City seeks to exclude the testimony of Defendants Monsanto Company, Solutia Inc., and Pharmacia LLC's ("Defendants" or "Monsanto") waste and disposal expert Marc Rogoff, Ph.D. Defendants filed a response (Defs.' Resp. (dkt. # 735)), and the City filed a reply (Pl.'s Reply (dkt. # 707)). The Court heard oral argument from the parties on June 27, 2023. (Dkt. # 745.) Having considered the parties' submissions, oral argument, the balance of the record, and the governing law, the City's Motion (dkt. # 601) is GRANTED in part and DENIED in part, as further explained below.

ORDER - 1

## II. BACKGROUND

This case arises out of Defendants' manufacture and sale of polychlorinated biphenyls ("PCBs"). Through this lawsuit, the City seeks to hold Defendants liable for PCBs that have escaped from their use in industrial and commercial applications into the Lower Duwamish Waterway ("LDW") and the City's stormwater and drainage systems. (*See* Second Am. Compl. (dkt. # 267) at ¶¶ 5-15.)

The City's sole remaining cause of action alleges Defendants intentionally manufactured, distributed, marketed, and promoted PCBs in a manner that created a public nuisance harmful to the health and free use of the LDW and the City's stormwater and drainage systems. (Second Am. Compl. at ¶¶ 91-108.) Defendant Pharmacia LLC (a/k/a "Old Monsanto") was the sole producer of PCBs in the United States from the 1930s until they were banned by Congress in 1977. (*Id.* at ¶ 38.) The City alleges Old Monsanto knew its PCBs would get into the environment and waterbodies, such as the LDW, through their ordinary use, and that Old Monsanto's knowledge was based in part on its sales of PCBs to businesses near the LDW and its own use of PCBs at its vanillin plant that operated adjacent to the LDW. (*Id.* at ¶¶ 61-79.)

Relevant to the instant motion, the City alleges Monsanto instructed customers to dispose of PCB material in local landfills, knowing landfills were not suitable for PCB contaminated waste, because Monsanto had previously determined the only effective method of disposal was incineration. (Second Am. Compl. at ¶ 72.) As a result, the City alleges it has incurred past costs, and will incur future costs, for investigation and remediation of the LDW, its source control efforts in the LDW, and for the design and construction of a stormwater treatment plant to reduce PCBs from one drainage basin adjacent to the LDW. (*Id.* at ¶¶ 8, 10, 15, 104-05.)

Based on the City's allegations, Dr. Rogoff was retained by Defendants to address issues related to their PCB disposal practices. (*See* Hansen Decl., Ex. B (dkt. # 736-2).) Dr. Rogoff is a solid waste management and disposal expert who has a doctorate in resource development from Michigan State University and over 38 years of experience in solid waste management as a manager and consultant. (*Id.* at i, 6-7.) Dr. Rogoff's waste management experience includes consulting assignments on waste collection studies, facility feasibility, site selection, property acquisition, environmental permitting, operation plan development, solid waste facility benchmarking, ordinance development, and solid waste plans. (*Id.* at i.) His experience on solid waste management projects in Seattle and the Pacific Northwest includes involvement with "waste collection programs, special waste collection programs, landfills, transfer stations, and waste-to-energy facilities." (*Id.* at 6.) Per his deposition testimony, "[m]ost of [his] work deals with landfills or transfer stations, with municipal waste streams and some industrial waste streams." (Daniel Decl., Ex. A (Rogoff Dep. (dkt. # 602-1) at 26:6-9).)

Based on his historical review on the evolution of solid waste management practices and technologies from the 1930s to the present, his professional knowledge and experience, and site observations, Dr. Rogoff's report provided the following summary of his opinions:

> Opinion 1. Monsanto's recommendations for the management and disposal of PCB waste were ahead of the standards of the time.
>
> Opinion 2. Landfills are not a source of PCB impacts in the Lower Duwamish Waterway.
>
> Opinion 3. The concept of life-cycle product management was not developed and implemented for more than 30 years after Monsanto voluntarily ceased PCB production in 1977.

(Hansen Decl., Ex. B at ii, 8-9.)

ORDER - 3

Per his first opinion, Dr. Rogoff opines Monsanto's recommendations for PCB waste disposal conformed with applicable regulations and exceeded waste disposal standards at the time. (Hansen Decl., Ex. B at 8, 10-19.) Dr. Rogoff notes the first federal regulation regarding solid waste management practices was the Solid Waste Disposal Act of 1965, which was implemented approximately 30 years after Monsanto began manufacturing PCBs. (*Id.* at 8, 10-12.) Prior to 1976, Dr. Rogoff opines there were no national standards requiring bulk industrial chemical manufacturers to instruct customers how to dispose of their products or laws or regulations which required it. (*Id.* at 8, 10-12, 18-19.) Despite a lack of such standards, Dr. Rogoff opines Monsanto notified its customers with information sufficient to support informed PCB disposal decisions. (*Id.* at 8, 12-19.)

Per his second opinion, Dr. Rogoff opines historical waste disposal in landfills, and incineration of waste in the City of Seattle, did not result in PCB impacts to the LDW. (Hansen Decl., Ex. B at 9, 19-22.) Based on a U.S. EPA analysis, Dr. Rogoff opines that PCBs' chemical and physical properties result in a low potential for their migration from landfills into soil or groundwater, which is supported by the Lower Duwamish Working Group's assessments at former landfills near the LDW identifying no public health risks at those sites from PCBs. (*Id.* at 9, 20-21.) Dr. Rogoff further notes that there is no record that incinerators contributed to PCB contamination of the LDW because waste incineration was abandoned in the mid-1910s in the Seattle area, which was before Monsanto began manufacturing PCBs. (*Id.* at 9, 21.)

Per his third opinion, Dr. Rogoff opines life-cycle product management, which aids in assessing environmental impacts from a product, was not developed and implemented until 1997. (Hansen Decl., Ex. B at 9, 23-24.) Based on Monsanto's practices beginning in 1971 of customer notification of PCB environmental effects, PCB disposal recommendations, PCB disposal

ORDER - 4

services, and incentivized return of PCB products, Dr. Rogoff opines Monsanto "innovatively employed" aspects of life-cycle product management before its development and regular implementation. (*Id.*)

### III. DISCUSSION

#### A. Legal Standards

Federal Rule of Evidence 702 provides in relevant part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. For expert testimony to be admissible under Rule 702, it must satisfy three requirements: (1) the expert witness must be qualified; (2) the testimony must be reliable; and (3) the testimony must be relevant. *See Daubert v. Merrell Dow Pharms., Inc.* ("*Daubert I*"), 509 U.S. 579, 589-91 (1993). The proponent of expert testimony has the burden of establishing that the admissibility requirements are met by a preponderance of the evidence. *Id.* at 592 n.10; *see also Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

Before admitting expert testimony into evidence, the Court acts as a "gatekeeper" in determining its admissibility under Rule 702 by ensuring the testimony is both "relevant" and "reliable." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (citing *Daubert I*, 509 U.S. at 597). Expert testimony is relevant where "the evidence logically advance[s] a material aspect of the party's case." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (internal quotations and citation omitted), *overruled on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (en banc). Testimony is reliable

where it has "a reliable basis in the knowledge and experience of the relevant discipline." *Id.* (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999)).

The Supreme Court has noted the reliability inquiry is a "flexible one," and while the Supreme Court has suggested several factors helpful in determining reliability, trial courts are generally given "broad latitude in determining the appropriate form of the inquiry."[1] *United States v. Wells*, 879 F.3d 900, 934 (9th Cir. 2018) (quoting *Kumho Tire*, 526 U.S. at 150); *see also Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (finding Rule 702 should be applied with a "liberal thrust" favoring admission) (quoting *Daubert I*, 509 U.S. at 588); *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) (Rule 702 is "construed liberally" in considering admissibility of testimony based on specialized knowledge).

Furthermore, the reliability inquiry favors admission of testimony as "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert I*, 509 U.S. at 596). The reliability inquiry test does not seek to measure "the correctness of the expert's conclusions but the soundness of [his or her] methodology," and therefore, when an expert meets the standards established by Rule 702, "the expert may testify[,] and the fact finder decides how much weight to give that testimony." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014) (quoting *Primiano*, 598 F.3d at 564-65).

\\
\\

---

[1] In relevant part, *Daubert I* suggested several reliability factors a trial court may examine to determine the reliability of expert testimony, including: (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; (4) the existence and maintenance of standards and controls; and (5) whether the theory or technique enjoys general acceptance within the relevant scientific community. *Daubert I*, 509 U.S. at 592-94; *see also Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002).

ORDER - 6

**B. Dr. Rogoff**

    *i.    First Opinion*

First, the City argues that Dr. Rogoff's first opinion should be excluded as not based on sufficient data.[2] (Pl.'s Mot. at 4-7.) Based on several identified portions of his deposition testimony, the City claims Dr. Rogoff's first opinion lacks sufficient basis because he did little to investigate what disposal standards at the time were and because he did not know them from his experience. (*Id.*) The City therefore contends Dr. Rogoff cannot opine Monsanto's disposal recommendations were ahead of standards of the time, whether the information provided to Monsanto's customers was sufficient to allow them to make informed disposal decisions, or whether Monsanto's recommendations were actually communicated to its customers. (*Id.* at 7.)

Defendants argue that Dr. Rogoff's first opinion is sufficiently supported by his experience and review of historical documents of the type customarily relied upon by experts in his field. (Defs.' Resp. at 4-8.) Specifically, Defendants note Dr. Rogoff's review and search for relevant documents determined there was a lack of solid waste disposal standards on federal and state levels until 1965. (Defs.' Resp. at 4-5 (citing Hansen Decl., Ex. B at 12-13).) Despite the dearth of standards, Defendants note Dr. Rogoff's review and reliance upon available industry

---

[2] Though the City also argues Dr. Rogoff's first opinion was unqualified in the introduction to its motion, the City's Motion failed to provide any specific argument regarding this challenge until the submission of its reply. (*See* Pl.'s Mot. at 1, 4-7; Pl.'s Reply at 2.) The Court need not consider bare allegations "unsupported by citations to the record or legal authority." *Cyntegra, Inc. v. IDEXX Laboratories, Inc.*, 322 F. App'x 569, 571 n.2 (9th Cir. 2009); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court . . . We require contentions to be accompanied by reasons.").

In any case, Dr. Rogoff's significant experience in the solid waste disposal industry, including with disposal of other hazardous and regulated compounds, qualifies him to opine in this case. Dr. Rogoff's lack of particularized experience with PCBs in the disposal industry goes to the weight of his testimony and not its admissibility. *See United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993) (citing *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984)).

ORDER - 7

publications and guides, governmental reports, and Old Monsanto documents concerning waste management practices for PCBs during the time period of 1935 to 1977. (Defs.' Resp. at 5-7 (citing Hansen Decl., Ex. B at 12-19).) Based on his consulted materials, Defendants maintain Dr. Rogoff's first opinion is sufficiently supported and that the City's disagreement with his conclusion, and/or documents relied on, is not a proper basis for exclusion. (*Id.* at 4, 7-8.)

Testimony may be excluded under Rule 702(d) where there is "too great an analytical gap between the data and the opinion proffered" to support inclusion of the testimony. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments (noting relevant factors include "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion"). An expert must therefore bridge the analytic gap with more than bald assertions. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) ("It is where expert opinion is 'connected to the existing data only by the *ipse dixit* of the expert' that there may be 'too great an analytical gap between the data and the opinion proffered' to support inclusion of the testimony.") (internal citation and quotations omitted); *see also Provident Life & Accident Ins. Co. v. Fleischer*, 18 F. App'x 554, 556 (9th Cir. 2001) (excluding expert's testimony where report "did little more than baldly state" a conclusion, "offer[ed] absolutely no foundation for the conclusion," and did "not explain what, if any, scientific studies or principles support[ed] that conclusion.").

However, pursuant to Rule 702(b), the requirement that expert testimony be based on "sufficient facts or data" only requires the Court to engage in "an analysis of the sufficiency of underlying facts or data that is quantitative rather than qualitative." *United States v. W.R. Grace*, 455 F. Supp. 2d 1148, 1152 (D. Mont. 2006); *see also* Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments. The requirement "is not intended to authorize a trial

ORDER - 8

court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." *W.R. Grace*, 455 F. Supp. 2d at 1152.

Here, Dr. Rogoff's cited materials in his report provide adequate support for his first opinion under Rule 702(b). Based on the industry publications and guides, governmental reports, and Old Monsanto historical documents cited, Dr. Rogoff sufficiently supported his opinion that there was a lack of applicable solid waste disposal standards for a large portion of the relevant time period and that Monsanto's recommendations for PCB disposal, management, and communications to its customers were ahead of standards of the time.[3] (*See* Hansen Decl., Ex. B at 10-19; *see also* Daniel Decl., Ex. A (Rogoff Dep. at 46:1-8; 47:1-11, 49:24-50:14).)

Any issues as to what materials may have been more appropriate for Dr. Rogoff to consult in providing this opinion— including what other chemical manufacturers were doing in terms of their disposal or warning practices—would go to the weight, and not the admissibility, of Dr. Rogoff's testimony. *See Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230-31 (9th Cir. 1998) (citation omitted) ("Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of [his] testimony")). The City is free to cross-examine Mr. Rogoff on any of the alleged deficiencies with his report at trial. *See Daubert*, 509 U.S. at 596; *see also Bluetooth SIG, Inc. v. FCA US LLC*, 468 F. Supp. 3d 1342, 1349 (W.D. Wash. 2020) ("[T]he factual basis

---

[3] In short, Dr. Rogoff's first opinion cites and relies upon: (1) a 1972 Interdepartmental Task Force on PCBs, from the Departments of Agriculture, Commerce, Health, Education and Welfare, Interior, and the U.S. EPA; (2) a 1968 National Survey of Community Solid Waste Practices; (3) Manufacturing Chemists' Association ("MCA") Guide to Precautionary Labeling of Hazardous Chemicals from the 1940s through the 1960s; (4) a 1961 MCA Safety Guide with Recommended Safe Practices and Procedures for the Disposal of Hazardous Waste; (5) Old Monsanto product and technical bulletins, marketing and advertising material, and toxicity studies from the relevant time periods; and (6) Old Monsanto inspection and maintenance guides and product manuals from the relevant time periods. (*See* Hansen Decl., Ex. B at 11, 13-18.)

ORDER - 9

of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." (internal quotations and citation omitted)).

Moreover, the City's citation to *Bell v. Boeing Co.* for the proposition that "testimony based in fiction or on materials the expert did not review should be excluded" is also distinguishable. (Pl.'s Mot. at 4 (citing 2022 WL 1206728, at *7 (W.D. Wash. Apr. 22, 2022)).) In that case, the Court found the expert's reports did not "explain the basis or the reasons for any of [his] three diagnoses." *Bell*, 2022 WL 1206728 at *7. Conversely, Dr. Rogoff here plainly identifies the basis and resources he relied upon for his first opinion. (*See* Hansen Decl., Ex. B at 12-19.) In sum, the City's disagreement with Dr. Rogoff's conclusion in his first opinion is an improper basis on which to seek its exclusion. *See United States v. Sanft*, 2021 WL 5278766, at *2 (W.D. Wash. Nov. 13, 2021) ("Defendants may disagree with [an expert's] opinions and challenge the accuracy of the evidence supporting his conclusions, [but] their challenge goes to the weight of his testimony, not its admissibility.").

    ii.  Second Opinion

Next, the City argues Dr. Rogoff's second opinion should be excluded as irrelevant because the City does not contend that landfills are a source of PCBs to the LDW. (Pl.'s Mot. at 7-8 (citing Daniels Decl., Ex. C (dkt. # 602-3)).) Defendants counter that Dr. Rogoff's second opinion remains relevant to rebut the City's allegations regarding Monsanto's conduct, specifically that it should have warned its customers against PCB disposal in landfills. (Defs.' Resp. at 8-9 (citing Second Am. Compl. at ¶ 72).)

As noted above, expert testimony is relevant if it "logically advance[s] a material aspect of the party's case." *Estate of Barabin*, 740 F.3d at 463; *see also Daubert v. Merrell Dow*

1  *Pharms., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1315 (9th Cir. 1995). Expert testimony is not excluded for relevancy where "it speaks clearly and directly to an issue in dispute in the case, and . . . it will not mislead the jury." *Daubert II*, 43 F.3d at 1321 n.17. For a public nuisance claim, the City must establish conduct constituting a nuisance. *See Miotke v. City of Spokane*, 101 Wn.2d 307, 309, 331 (1984), *abrogated on other grounds by Blue Sky Advocs. v. State*, 107 Wn.2d 112 (1986). As such, the City bears the burden of proving the unreasonableness of Monsanto's conduct. *See Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 923 (2013) (citations omitted) (noting that the reasonableness of a defendant's conduct in a nuisance action is determined by "weighing the harm to the aggrieved party against the social utility of the activity"); *see also* Wash. Civil Pattern Jury Instruction 380.03.

On this issue, Defendants read the import of Dr. Rogoff's second opinion too broadly. Dr. Rogoff's second opinion does not address Monsanto's conduct, *i.e.*, its PCB disposal recommendations to its customers. Instead, Dr. Rogoff's second opinion merely provides that "[l]andfills are not a source of PCB impacts in the [LDW]." (*See* Hansen Decl., Ex. B at 9 ("It is my opinion that historical waste disposal in landfills and incineration of waste in the City of Seattle did not result in PCB impacts to the LDW."), 19-22.) The City also agrees. (*See* Daniels Decl., Ex. C.) Because Dr. Rogoff's second opinion does not clearly and directly address an issue at dispute in this case, and otherwise runs the risk of confusing issues before the jury, it is excluded. *See Daubert II*, 43 F.3d at 1321 n.17; *see also Daubert I*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").

        iii.    Third Opinion

Finally, the City argues Dr. Rogoff's third opinion is irrelevant to the extent it implies Monsanto could not have understood potential environmental impacts of PCBs because

ORDER - 11

life-cycle product management analysis had not been developed, which it contends does not speak to whether Monsanto acted reasonably, and that Dr. Rogoff provides an insufficient basis to opine Monsanto "innovatively employed" aspects of such analysis. (Pl.'s Mot. at 8-9; Pl.'s Reply at 4-6.) Defendants argue that Dr. Rogoff's third opinion is relevant to counter the City's allegations concerning the post-sale environmental effects of PCBs because, though life-cycle product management was not established until 1997, Old Monsanto incorporated aspects of its approach thirty years earlier. (Defs.' Resp. at 10.) Defendants further contend Dr. Rogoff appropriately considered alternatives to life-cycle product management and that his opinion is sufficiently supported based on his expertise, experience in solid waste management, and reliance on historical documents routinely relied upon by experts in his field. (*Id.* at 10-11.)

Here, Dr. Rogoff's third opinion regarding Defendants' disposal practices is relevant to addressing the reasonableness of Monsanto's production, marketing, and distribution of PCBs. *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 709 F.3d 872, 883 (9th Cir. 2013) ("The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.") As the City's Second Amended Complaint notes, the City's claims are premised in part on allegations related to Monsanto's PCB disposal recommendations to its customers. (*See* Second Am. Compl. at ¶ 72.) Dr. Rogoff's third opinion, similar to his first, opines that Monsanto's notification to its customers of the environmental effects of PCBs, disposal recommendations and services, and incentivized return of PCB products were all implemented before such approaches were standardized and/or common in the manufacturing industry. (*See* Hansen Decl., Ex. B at 9, 23-24.) Dr. Rogoff's third opinion is therefore relevant given the City's alleged wrongful conduct.

Finally, the City's challenge as to whether Dr. Rogoff provided a sufficient basis to opine that Monsanto "innovatively employed" certain aspects of life-cycle product management given his lack of consideration of alternative environmental analysis tools, or whether such aspects were in fact "innovative" due to his lack of consideration of what other chemical manufacturers of the time were doing, is more appropriately addressed on cross-examination. *Primiano*, 598 F.3d at 564 (citing *Daubert I*, 509 U.S. at 596); *Bluetooth SIG, Inc.*, 468 F. Supp. 3d at 1349. Dr. Rogoff's cited materials in his report provide adequate factual support for his third opinion. (*See* Hansen Decl., Ex. B at 12-19.) Contested facts or countervailing considerations concerning the materials relied on for an opinion are not a basis for its exclusion. *See City of Pomona*, 750 F.3d at 1053 ("Facts casting doubt on the credibility of an expert witness and contested facts regarding the strength of a particular scientific method are questions reserved for the fact finder."); *see also Sanft*, 2021 WL 5278766 at *2.

### IV.   CONCLUSION

For the foregoing reasons, the City's Motion (dkt. # 601) is GRANTED in part and DENIED in part. The City's Motion is granted in part as to Dr. Rogoff's second opinion but otherwise denied.

Dated this 30th day of June, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge