HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CITY OF SEATTLE,

    Plaintiff,

v.

MONSANTO COMPANY, *et al.*,

    Defendants.

Case No. 2:16-cv-00107-RAJ

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

This matter is before the Court on Defendants' Motion for Summary Judgment ("motion"). Dkt. # 326. Having reviewed the briefing on the motion, and the accompanying evidence, the Court **DENIES** the motion.

**II.    Background**

This case arises out of Defendants' manufacture and sale of polychlorinated biphenyls ("PCBs"). Through this lawsuit, the City of Seattle ("City") seeks to hold

ORDER – 1

Defendants liable for PCBs that have escaped from their use in industrial and commercial applications into the Lower Duwamish Waterway ("LDW") and the City's stormwater and drainage systems. (*See* Second Am. Compl. (Dkt. # 267) at ¶¶ 5-15.) The City's sole remaining cause of action alleges Defendants intentionally manufactured, distributed, marketed, and promoted PCBs in a manner that created a public nuisance harmful to the health and free use of the LDW and the City's stormwater and drainage systems. (*Id*. at ¶¶ 91-108.)

Defendant Pharmacia LLC (a/k/a "Old Monsanto") was the sole producer of PCBs in the United States from the 1930s until they were banned by Congress in 1977. Dkt. # 450-14 at 3. Defendants Monsanto Company and Solutia, Inc. are the successors of Old Monsanto. Dkt. # 442 at 39-40 (SOF ¶ 65); Dkt. # 450-9, Dkt. # 450-10; Dkt. # 450-12. Monsanto maintained a plant in Seattle and sold PCBs and PCB-containing products to Seattle customers around and adjacent to the LDW. *See, e.g*., Dkt. # 446-11 at 5-18; Dkt. # 447-12; Dkt. # 447-13; Dkt. # 447-14. PCBs have been detected in seventy-five percent of 1,504 subsurface sediment samples, and in ninety-four percent of 1,390 surface sediment samples collected from sediment in the LDW. Dkt. # 450-15 at 8; Dkt. # 450-16 at 6. The City alleges that PCBs entering the LDW, including through the City's drainage systems, will remain in the LDW until remediated. *See* Dkt. # 450-21 at 3. The City estimates that in most of the environmental compartments analyzed, more than 95% of the PCBs in the LDW are Monsanto's PCBs. Dkt. # 450-17 at 5.

The City alleges Monsanto knew its PCBs would get into the environment and waterbodies, such as the LDW, through their ordinary use, and that Monsanto's knowledge was based in part on its sales of PCBs to businesses near the LDW and its own use of PCBs at its plant adjacent to the LDW. *See, e.g*., Dkt. # 447-2 at 22-24; Dkt. # 448-15 at 8. The City alleges it has incurred past costs, and will incur future costs, for investigation and remediation of the LDW, its source control efforts in the LDW, and for the design and construction of a stormwater treatment plant to reduce PCBs from one

ORDER – 2

drainage basin adjacent to the LDW. *See, e.g.*, Dkt. # 446 at ¶ 3; Dkt. # 450-15 at 4, 29; Dkt. # 451-3 at 21-24; Dkt. # 451-12; Dkt. # 451-14 at 23, 27-28; Dkt. # 452-7.

### III. Legal standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. A material fact is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

The party moving for summary judgment "bears the burden of establishing the basis for its motion and identifying evidence that demonstrates the absence of a genuine issue of material fact." *Davis v. U.S.*, 854 F.3d 594, 598 (9th Cir. 2017) (citing *Celotex*, 477 U.S. at 323); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). For "an issue on which the nonmoving party bears the burden of proof," the movant discharges its summary judgment burden by "pointing out ... an absence of evidence to support the nonmoving party's case"—not by "negating the opponent's claim." *Celotex*, 477 U.S. at 323, 325; *see also Sluimer v. Verity, Inc.*, 606 F.3d 584, 586 (9th Cir. 2010). The burden shifts to the nonmovant to provide admissible evidence, beyond the pleadings, of specific facts showing a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Horphag Res. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007); *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("[A] plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations."). The nonmovant's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See Anderson*, 477 U.S. at 255. A nonmovant

ORDER – 3

"defeat[s] summary judgment" if "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017).

## IV.   Analysis

The City alleges that Monsanto created a public nuisance by manufacturing, marketing, and distributing toxic chemicals that have contaminated the LDW, as well as Seattle's drainage lines. RCW 7.48.010 defines an "actionable nuisance" as anything "injurious to health" that "obstruct[s] the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property." An act that "obstructs or tends to obstruct" or "render[s] dangerous for passage, any lake or navigable river, bay, stream, canal or basin," is a nuisance. RCW 7.48.120. RCW 7.48.130 further defines a "public nuisance" as "one which affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal." RCW 7.48.140(2) specifically declares that it is a public nuisance to "in any manner ... corrupt or render unwholesome or impure the water of any such spring, stream, pond, lake, or well, to the injury or prejudice of others." The question at summary judgment is whether there is evidence sufficient to raise an issue of material fact as to the elements of the City's public nuisance claim. The parties have taken 59 depositions, exchanged over 5 million pages of document discovery, and offered 58 expert reports. There is admissible evidence and expert testimony to create an issue of fact as to each element of the City's public nuisance claim. Viewed in the light most favorable to the City, this evidence requires the Court to deny Defendants' motion.

First, Defendants do not dispute that it produced toxic chemicals or that those chemicals are present in Seattle's water. Rather Defendants primarily argue that (i) the City cannot bring claims against New Monsanto and Solutia; (ii) the City cannot establish the requisite intent; (iii) the City cannot show causation; and (iv) the City's damages are either categorical barred, voluntary, speculative, or unripe. Even on these issues, the City

ORDER – 4

provides sufficient factual evidence to create issues of fact requiring the denial of summary judgment as discussed below.

      First, Defendants have not shown that New Monsanto and Solutia should be dismissed as a matter of law. The City asserts direct claims against New Monsanto and Solutia, who are the successors to the original Monsanto Company that manufactured and distributed PCBs. The City points to distribution and separation agreements that expressly state that New Monsanto and Solutia retain and assume liabilities for Old Monsanto's chemical businesses. *See, e.g.*, Dkt. # 442 at 39-40 (SOF ¶ 65); Dkt. # 450-9, Dkt. # 450-10; Dkt. # 450-12. Furthermore, the City points to evidence that those companies obtained substantial goodwill and intangible assets through the asset transfers. *Id.* Even assuming there is some ambiguity regarding Defendants' liability under the agreements, they have failed to offer uncontested evidence as to the proper interpretation. *Wm. Dickson Co. v. Pierce Cnty.*, 128 Wash. App. 488, 494 (2005) ("summary judgment is proper if the written contract, viewed in light of the parties' objective manifestations, has only one reasonable meaning"); *Marshall v. Thurston Cnty.*, 165 Wash. App. 346, 351 (2011) (summary judgment not appropriate where contract terms are "fairly susceptible to two different, reasonable interpretations").

      The next issue is intent. Monsanto argues that the City must prove "Defendants designed, manufactured, marketed, and sold PCBs with the intent to cause the alleged public nuisance in the LDW[.]" Dkt. # 326 at 71. As the City points out, and the Court agrees, this is too exacting a standard. *See* Dkt. # 442 at 89. Under Washington law, if the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. *Bradley v. Am. Smelting & Ref. Co.*, 104 Wash. 2d 677, 682, 709 P.2d 782, 785 (1985). Indeed, the City provides evidence that Monsanto knew for a fact that widespread use of the PCBs it manufactured was contaminating the environment. Dkt. # 447-2 at 22-24; Dkt. # 448-15 at 8. And further, the City presents evidence that when Monsanto

ORDER – 5

conducted research on chronic toxicity related to PCBs, it did so only to evaluate and protect its ability to continue manufacturing and selling PCBs. *See, e.g.*, Dkt. # 448-6 at 2-3. Even with the knowledge of the pollution issue related to certain PCB products, Monsanto instructed its salespeople to avoid returns from its customers, noting "[w]e cannot afford to lose one dollar of business." Dkt. # 449-5 at 3. The City has more than met its burden on intentionality to avoid summary judgment on its public nuisance claim.

The next issue is causation. Monsanto urges the Court to find that other PCB producers caused the contamination of Seattle's water, and/or that the intervening acts of third parties – namely, improper disposal of PCB products – cut off proximate causation. The Court is not persuaded. The City provides evidence that Monsanto's PCBs comprise over 99% of PCBs in LDW sediment, surface water, groundwater, and the tissue of organisms from the LDW, and over 95% of PCBs in stormwater drainage pipes connected to the LDW. *See, e.g.*, Dkt. # 442 at 43 (SOF ¶ 77); Dkt. # 450-17 at 5. Furthermore, Monsanto does not argue that it is responsible for none of the PCBs in Seattle's water; the existence of other PCB sources merely creates a question of fact regarding the amount of damages for which Monsanto is responsible.

Finally, given the potential costs at stake, it is no surprise that the parties briefing on damages spans almost 100 pages. The City seeks four categories of damages and costs in this action: (1) past and future costs to investigate and remediate in-water PCB contamination in the LDW; (2) past and future costs to control ongoing sources of PCBs to the City's drainage systems; (3) past and future costs to treat stormwater to reduce the PCB load sufficiently to prevent recontamination of the LDW after cleanup; and, (4) costs to mitigate the harm from PCBs to members of the public pending permanent abatement of the public nuisance. *See, e.g.*, Dkt. # 442 at 51 (SOF ¶ 111).

As they did in their motion to dismiss, Defendants argue again that the plain language of RCW 7.48.210 and RCW 7.48.220 only authorize a private person to bring a civil action to remedy a public nuisance in the event the public nuisance is specially

ORDER – 6

injurious to him or her. RCW 7.48.210. This issue was previously addressed by Judge Lasnik in this case, and the Court finds no reason to change its prior ruling, which is consistent with other courts that a municipality's public nuisance case for damages can go forward. *City of Seattle v. Monsanto Co.*, 237 F. Supp. 3d 1096, 1106 (W.D. Wash. 2017); *see also San Diego Unified Port Dist. v. Monsanto Co.,* 2020 WL 1479071, at *10-11 (S.D. Cal. Mar. 26, 2020) (denying motion for summary judgment on Port District's public nuisance claim despite Monsanto's lawful sales of PCBs); *City of Spokane v. Monsanto Co.*, 2016 WL 6275164, at *7 (E.D. Wash. Oct. 26, 2016) ("Spokane unquestionably has a sufficient property interests in its wastewater and stormwater systems to bring a nuisance action based on injurious effects to those systems."). The City has shown that it has standing to bring a suit for damages under Washington law.

As for the categories of damages at issue, the Court ultimately finds that there is sufficient evidence in the record to create a genuine issue as to each. Defendants have made similar arguments in other PCB cases that certain remedies are speculative, barred by federal statutes, or cannot be pursued for lack of standing. *See, e.g.*, *San Diego Unified Port Dist.*, 612 F.Supp.3d 1028, 1050 (S.D. Cal. Mar. 2020) (challenging certain remedies as speculative and unripe); *State v. Monsanto Co.,* 2021 WL 4877501, at *9 (Or. Cir. July 08, 2021) (challenging remedies as barred by CERCLA and barred as double recovery). Defendants' contentions here that the categories of damages sought by the City cannot be recovered are ultimately unavailing.

The record contains more than sufficient factual evidence that the City has suffered past remediation costs related to PCBs from which a jury could award damages. *See, e.g.*, Dkt. # 442 at 43-46 (SOF ¶¶ 79-87). As to the "double recovery" issue, the record neither demonstrates nor proves that City is seeking improper "double recovery" that may be proscribed by CERCLA. To the extent that the City seeks (through presentation of evidence and/or argument) to recover damages that Defendants believe

ORDER – 7

are proscribed by CERCLA, they may move during trial against such a recovery. The Court also finds that the record neither demonstrates or proves that the City improperly seeks to enforce treaty rights or stand in the shoes of tribes or tribal members, or that the City improperly seeks "natural resource" damages under 42 U.S.C. § 9607(f). As the City makes clear, the interests of triable members are relevant to the central question of whether Defendants' PCBs interfere with the public's use and enjoyment of the LDW. Dkt. # 442 at 130. Likewise, evidence about how PCBs get into fish, wildlife, and the environment and how PCBs in these resources present a health risk to humans are directly germane to the City's case for damages. *Id.* at 135. And as to the recovery future remediation costs, the Court finds that the record provides a sufficient evidentiary basis from which a jury could award non-speculative damages that are not aimed at compensating the City for "future damages" it might suffer at a later date but to remediate ongoing harms such as source control within the City's stormwater in drainage basins and other mitigation costs. *See, e.g.*, Dkt. # 442 at 46-47 (SOF ¶¶88-96). While nothing in this order prevents Defendants from making similar arguments during trial, the evidence here is more than sufficient to deny judgment as a matter of law.

       Finally, Defendants claim the City bears the burden to apportioning damages. Dkt. # 326 at 134. This misstates the current law in Washington, where defendants bear the burden of proof as to any apportionment of damages where the injuries were not segregable among tortfeasors. Restatement (Second) of Torts § 433B(2); *Cox v. Spangler*, 141 Wash. 2d 431, 443 (2000); *Hue v. Farmboy Spray Co., Inc.*, 127 Wash. 2d 67, 91 (1995). The City correctly notes that if an apportionment is difficult or impossible, the defendants have the burden of proving their individual contribution. *City of Benton City v. Adrian*, 50 Wash. App. 330, 342 (1988) (citing *W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on Torts* § 52, at 345–46, 350 (5th ed. 1984)). Defendants' motion on this issue is denied.

ORDER – 8

## V. Conclusion

For the reasons above, the Court denies Defendants' motion. Dkt. # 326.

DATED this 2nd day of February, 2024.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 9